KEITH ALTMAN (SBN 257309)
THE LAW OFFICE OF KEITH ALTMAN
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*Attorney For Plaintiff John Lema*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Lema,<br><br>           Plaintiff,<br><br>      v.<br><br>The Board of Trustees of the California State University System, through its subdivision San Diego State University, Andrea Parashos (in her Individual Capacity), Lee Mintz (in her Individual Capacity), and Does 1-20 (in Their Individual Capacities),<br><br>           Defendants. | CASE NO.: '21CV2131 JAH  KSC<br><br>COMPLAINT FOR:<br><br>1. Due Process Violations (42. U.S.C.S. § 1983)<br>2. Negligence<br>3. Negligent Infliction of Emotional Distress<br>4. Negligent Misrepresentation<br>5. Fraudulent Misrepresentation<br><br>JURY TRIAL DEMANDED |

NOW COMES Plaintiff, John Lema, by and through his attorney, The Law Office of Keith Altman, and filing his Complaint against Defendants, hereby states the following.

COMPLAINT                                          - 1 -

**BACKGROUND**

1.      Plaintiff John Lema, while enrolled as a student at San Diego State University was falsely accused of hazing by the Defendants.

2.      This action is seeking damages pursuant to 42 U.S.C.S. § 1983 for Defendants' violations of Plaintiff's due process rights under the Fifth and Fourteenth Amendments of the U.S. Constitution. Plaintiff also seeks damages for Negligence, Negligent Infliction of Emotional Distress, Negligent Misrepresentation, and Fraudulent Misrepresentation.  In addition, Plaintiff seeks injunctive relief to ensure that any hazing-related disciplinary charges are cleared from Plaintiff's academic record.

**THE PARTIES**

3.      Plaintiff John Lema ("LEMA") is a citizen and domiciliary of the State of California. At all times relevant to this action, LEMA was a Student at San Diego State University ("SDSU").

4.      Defendant The Board of Trustees of the California State University System ("BOT") is a public entity operating and

administrating San Diego State University, an academic institution located in San Diego, California.

5. Defendant Andrea Parashos ("PARASHOS") is and was at all times relevant to this action employed by SDSU as a Title IX/ Student Conduct investigator.

6. Defendant Lee Mintz ("MINTZ") is and was at all times relevant to this action employed by SDSU as the Director for the Center for Student Rights and Responsibilities and Title IX Coordinator.

7. Doe Defendants ("DOE DEFENDANTS") are, or were, at all times relevant to this action employed by SDSU.

## **JURISDICTION AND VENUE**

8. This action arises under the laws of the United States, and therefore this Court has jurisdiction pursuant to 28 U.S.C.S §1331 (federal question jurisdiction).

9. This Court also has jurisdiction pursuant to 42 U.S.C.S § 1983, which prohibits the deprivation of constitutional rights or rights secured by the laws of the United States by persons acting under the color of state law.

10.    In accordance with 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's state law claims. This is because the state law claims are so closely related to the federal question claims that it forms the same case or controversy under Article III of the United States Constitution.

11.    This Court properly exercises personal jurisdiction over Defendant BOT on the grounds that at all times relevant to this action, BOT did business within the Southern District of California through its subdivision SDSU. Furthermore, a significant portion of the events occurred within the Southern District of California.

12.    This Court properly exercises personal jurisdiction over Defendant PARASHOS on the grounds that PARASHOS works or worked at SDSU, which is located within the Southern District of California and a significant portion of the events occurred within the Southern District of California.

13.    This Court properly exercises personal jurisdiction over Defendant MINTZ on the grounds that MINTZ works or worked at SDSU, which is located within the Southern District of

California and a significant portion of the events occurred within the Southern District of California.

14.     This Court properly exercises personal jurisdiction over DOE DEFENDANTS on the grounds that they work or worked at SDSU, which is located within the Southern District of California and a significant portion of the events occurred within the Southern District of California.

15.     This action is properly venued in the Southern District of California pursuant to 28 U.S.C.S. § 1391 because a significant portion of the events occurred within the division.

16.     Plaintiff has substantially complied with all requirements of California Government Code § 945.4 and California Government Code § 810 *et seq*.


## FACTS

17.     In the 2019-2020 Academic year, LEMA was a student attending SDSU and majoring in Biology. LEMA was a strong student. He had been placed on the Dean's List several times during his time at SDSU.

18.     LEMA was a member of the Phi Gamma Delta Fraternity while enrolled at SDSU. However, LEMA's involvement with the fraternity was minimal. His attendance at fraternity parties was infrequent. He never held a leadership position within the fraternity. Also, LEMA had rare association with new pledges to the fraternity since he never was assigned a "little"[1].

19.     LEMA was scheduled to graduate in August of 2020.

20.     Until the Summer of 2020, LEMA had a spotless disciplinary record while enrolled at SDSU.

21.     On July 8, 2020, LEMA received an email from MINTZ. ("July 8, 2020, email").

22.     The July 8, 2020, email contained the following accusations against LEMA:

> Reportedly, during the 2018-2019 and 2019-2020 academic years, you engaged in and conspired to engage in hazing activities that endangered the health and safety of California State University students. In addition, reportedly, you provided alcohol to minors,

---

[1] The term "little" colloquially refers to prospective fraternity member that is in a mentor relationship with a counterpart "big" fraternity member.

physically assaulted members of the campus community, interfered with the orderly progress of a student discipline proceeding, attempted to influence the impartiality of any participant in a student discipline matter, and encouraged, permitted, or assisted another to do any act that could subject them to discipline.

23.    The July 8, 2020, email further stated that LEMA was alleged to have violated the following specific Subsections of Title V, Section 41301 of the California Code of Regulations:

A. (b.7.A) Conduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, or harassment.

B. (b.8) Hazing, or conspiracy to haze.

C. (b.10) Use, possession, manufacture, or distribution of alcoholic beverages (except as expressly permitted by law and University regulations), or public intoxication while on campus or at a university-related activity.

D. (b.16) Violation of any published University policy, rule, regulation, or presidential order (e.g., computer policy, alcohol policy, campus residence halls rules, student organization policies, etc.)

E. (b.19.B) Violations of the Student Conduct Procedures, including Disruption or interference with the orderly progress of a student discipline proceeding.

F. (b.20) Encouraging, permitting, or assisting another to do any act that could subject him or her to discipline.

24.   The July 8, 2020, email contained no documentary evidence to substantiate the allegations made against LEMA.

25.   As the Director for the Center of Student Rights and Responsibilities and Deputy Title IX Coordinator for SDSU, MINTZ had supervisory authority over the disciplinary proceedings initiated against LEMA.

26.   On July 10, 2020, a hold was placed on LEMA's graduation.

27.   In August 2020, LEMA retained undersigned counsel to advise him in the disciplinary matter.

28.   On or about August 30, 2020, LEMA had a phone conversation with PARASHOS, an SDSU Title IX investigator,

regarding the disciplinary charges leveled against him. During this conversation, Andrea PARASHOS LEMA that he was "guilty by association" due to his association with the Phi Gamma Delta Fraternity. At no point during the conversation did PARASHOS reference any evidence that directly implicated LEMA in the disciplinary charges leveled against him referenced in the July 8, 2020, email.

29.     On November 23, 2020, after months of silence, LEMA received an email containing a settlement agreement with respect to the disciplinary charges ("SETTLEMENT AGREEMENT").

30.     In a conclusory manner and without any corroborating evidence, the SETTLEMENT AGREEMENT stated that LEMA had been found responsible for the following specific hazing-related offenses:

> A. "Compelled physically demanding activities (including calisthenics and body-weight workouts)"
>
> B. "Compelled forced alcohol consumption"
>
> C. "Compelled individuals to drink foreign or unusual substances"

D. "Compelled acts of servitude including personal

servitude"

E. "blindfolding"

F. "paddling"

G. "bullying"

H. "intimidation"

I. "Physical and emotional degradation and humiliation of

other students"

J. "Compelled pledges to contribute money to pay for

alcohol that would be/was consumed during events"

31.    In a similarly conclusory manner, the SETTLEMENT

AGREEMENT stated that LEMA had violated the following

specific Subsections of Title V, Section 41301 of the California

Code of Regulations:

A. (b.7.A) Conduct that threatens or endangers the health

or safety of any person within or related to the

University community, including physical abuse,

threats, intimidation, or harassment.

B. (b.8) Hazing, or conspiracy to haze.

C. (b.10) Use, possession, manufacture, or distribution of alcoholic beverages (except as expressly permitted by law and University regulations), or public intoxication while on campus or at a university-related activity.

D. (b.16) Violation of any published University policy, rule, regulation, or presidential order (e.g., computer policy, alcohol policy, campus residence halls rules, student organization policies, etc.)

E. (b.20) Encouraging, permitting, or assisting another to do any act that could subject him or her to discipline.

32.    Despite the specificity and numerosity of these charges, the SETTLEMENT AGREEMENT contained *not a single piece* of documentary evidence that corroborates LEMA's responsibility for them.

33.    The SETTLEMENT AGREEMENT sought to compel LEMA into accepting the following punishments:

A. Suspension in Abeyance until November 4, 2022. This sanction would have been reflected on LEMA's academic transcript and would have prevented LEMA

from being able to hold certain leadership positions within student organizations.

B. An intensive counseling program. LEMA would have been forced to pay for, and participate in, counseling services. The failure to do so would result in immediate suspension.

34.   The finding of LEMA's responsibility was in fact so cursory and conclusory in nature, that the SETTLEMENT AGREEMENT did not even state the dates of the supposed violations by LEMA nor the locations where the supposed violations took place.

35.   While the SETTLEMENT AGREEMENT does state "neither the express nor implied consent of a victim of hazing, nor the lack of active participation in a particular hazing incident is a defense," there is no evidence to suggest that LEMA was even physically present at any event where these purported violations occurred.

36.   On December 19, 2020, PARASHOS sent LEMA a report that she had prepared which she represented as "documentary evidence" corroborating LEMA's guilt. This report contained several accounts of Phi Gamma Delta describing hazing

experiences. However, at *no point* in this document does LEMA's name appear.

37.    After substantial pressure was applied on SDSU by the undersigned counsel, all disciplinary proceedings against LEMA were dropped, and was able to graduate in May of 2021.

38.    However, the ordeal inflicted on LEMA by the Defendants caused LEMA immense emotional suffering and hardship. Defendants' actions of also forced LEMA to expend a significant amount of money in attorney's fees to obtain the degree for which he had worked so hard.

**CAUSES OF ACTION**

**FIRST CAUSE OF ACTION**
**VIOLATION OF 42 U.S.C. § 1983**
**FIFTH AND FOURTEENTH AMENDMENTS- DUE PROCESS**

39.    LEMA realleges and incorporates herein by this reference paragraphs 1 through 36 of this Complaint as though set forth in full.

40.    The Fifth and Fourteenth Amendments of the U.S. Constitution provide, in pertinent part, that "no person shall be deprived of life, liberty, or property without due process of law."

41.   With respect to his enrollment at SDSU, LEMA had a constitutionally protected interest in pursuing his degree at SDSU as well as pursuing his chosen career path. LEMA had expended a significant amount of money in the form of tuition payments to secure an opportunity to pursue a degree at SDSU. Furthermore, LEMA's future career plans of becoming a Physician's Assistant depended on his ability to secure his SDSU degree.

42.   LEMA could not be deprived of the opportunity to pursue his degree from SDSU nor his chosen career path without due process.

43.   The false accusations and subsequent erroneous finding of responsibility of hazing made against LEMA jeopardized LEMA's ability to pursue his degree from SDSU as well as pursue his chosen career path. Therefore, LEMA is entitled to a fair and impartial process to determine whether the accusations of his hazing were true based on evidence of LEMA's culpability. As University Officials, all Defendants were well- aware of the gravity of the accusations levied against LEMA. Moreover, the Defendants were aware that LEMA's pursuit of an SDSU degree, as well as his chosen career path, were jeopardized by the false

accusations and subsequent erroneous finding of his alleged responsibility of hazing.

44.    Defendant MINTZ deprived LEMA of due process as follows:

A. As the Director for the Center of Student Rights and Responsibilities and Deputy Title IX Coordinator for SDSU, MINTZ had supervisory authority over the disciplinary proceedings initiated against LEMA.

B. In the July 8, 2020, email, MINTZ accused LEMA of hazing and accused LEMA of violating six specific subsections of Title V, Section 41301 of the California Code of Regulations. MINTZ made these accusations despite having no evidence to substantiate LEMA's culpability.

C. MINTZ allowed the hazing-related disciplinary proceedings against LEMA to move forward despite the lack of any evidence that could substantiate his involvement.

D. Despite the nonexistence of evidence that could substantiate LEMA's culpability in hazing, MINTZ allowed PARASHOS to send LEMA the SETTLEMENT

AGREEMENT in LEMA was found responsible for hazing.

45. PARASHOS deprived LEMA of due process as follows:

A. PARASHOS allowed hazing-related disciplinary proceedings against LEMA to move forward despite the lack of any evidence that could substantiate his involvement in any hazing.

B. In the August 30, 2020, phone call with LEMA, PARASHOS stated that LEMA was "guilty by association" because of his association with the Phi Gamma Delta Fraternity.

C. In the SETTLEMENT AGREEMENT, PARASHOS summarily concluded that LEMA had engaged in ten specific hazing-related activities which amounted to five specific subsections of Title V, Section 41301 of the California Code of Regulations.  Despite the numerosity and specificity of the supposed hazing activities that LEMA had purportedly engaged in. At no point did PARASHOS produce any evidence that could corroborate LEMA's involvement in those activities.

D. When the SETTLEMENT AGREEMENT was sent, PARASHOS was aware that there was no evidence that could corroborate LEMA's involvement in hazing.

46.   DOE DEFENDANTS participated in and facilitated the due process violations of MINTZ and PARASHOS as follows:

A. Allowed hazing-related disciplinary proceedings against LEMA to move forward despite the lack of any evidence that could substantiate his involvement in any hazing.

B. Failed to conduct a sufficient investigation before bringing disciplinary charges against LEMA.

47.   Had the Defendants successfully pressured LEMA into accepting the SETTLEMENT AGREEMENT, LEMA would have had a suspension in abeyance sanction reflected his academic record that was entirely based on false accusations. This false charge on LEMA's academic record would have been viewable by potential graduate schools and employers. Moreover, the suspension would have caused a change in LEMA's legal status as his enrollment status in SDSU (a California State School) would have been terminated by the suspension.

48.    As a direct and proximate result of Defendants' actions, LEMA has suffered from emotional injury and humiliation. Furthermore, Defendants' actions forced LEMA to expend a significant amount of money in attorney's fees to obtain the degree for which he had worked so hard.

49.    The aforementioned violations of LEMA's due process rights were undertaken by employees of BOT Defendants within the scope of their employment. Accordingly, LEMA is also entitled to injunctive relief from the BOT Defendants to ensure that any hazing-related disciplinary charges are cleared from his academic record.

## SECOND CAUSE OF ACTION
## NEGLIGENCE

50.    LEMA realleges and incorporates herein by this reference paragraphs 1 through 36 of this Complaint as though set forth in full.

51.    MINTZ, PARASHOS, and THE DOE DEFENDANTS owed LEMA a duty of reasonable care. In conformity with the duty of reasonable care, Defendants:

A. Had a duty to not levy disciplinary charges against LEMA that Defendants knew or should have known lacked evidence.

B. Had a duty to ensure that any disciplinary charges levied against LEMA were well-founded before they concluded that he was responsible for them.

52. MINTZ breached her duty of reasonable care to LEMA when:

A. As the Director for the Center of Student Rights and Responsibilities and Deputy Title IX Coordinator for SDSU, MINTZ had supervisory authority over the disciplinary proceedings initiated against LEMA.

B. In the July 8, 2020, email, MINTZ, despite having no evidence to substantiate his culpability, she accused LEMA

C. MINTZ allowed hazing-related disciplinary proceedings against LEMA to move forward despite the lack of any evidence that could substantiate his involvement in any hazing.

D. Despite the nonexistence of evidence that could LEMA's culpability in hazing, MINTZ allowed PARASHOS to send LEMA the SETTLEMENT AGREEMENT in which LEMA was found responsible for hazing.

53.     PARASHOS breached her duty of reasonable care to LEMA when:

A. PARASHOS allowed hazing-related disciplinary proceedings against LEMA to move forward despite the lack of any evidence that could substantiate his involvement in any hazing.

B. In the August 30, 2020, phone call with LEMA, PARASHOS stated that LEMA was "guilty by association" because of his association with the Phi Gamma Delta Fraternity

C. In the SETTLEMENT AGREEMENT, PARASHOS summarily concluded that LEMA had engaged in ten specific hazing-related activities which amounted to five specific subsections of Title V, Section 41301 of the California Code of Regulations.  Despite the numerosity and specificity of the supposed hazing activities that

LEMA had purportedly engaged in. At no point did PARASHOS produce any evidence that could corroborate LEMA's involvement in those activities.

D. When the SETTLEMENT AGREEMENT was sent, PARASHOS was aware that there was no evidence that could corroborate LEMA's involvement in hazing.

54.   DOE DEFENDANTS breached his duty of reasonable care to LEMA when:

A. DOE DEFENDANTS allowed hazing-related disciplinary proceedings against LEMA to move forward despite the lack of any evidence that could substantiate his involvement in any hazing.

B. DOE DEFENDANTS failed to conduct a sufficient investigation before bringing disciplinary charges against LEMA.

55.   As a direct and proximate result of Defendants' actions, LEMA has suffered emotional injury and humiliation. Furthermore, Defendants' actions forced LEMA to expend a significant amount of money in attorney's fees in order to obtain his degree.

### THIRD CAUSE OF ACTION
### <u>NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS</u>

56.     LEMA realleges and incorporates herein by this reference paragraphs 1 through 36 of this Complaint as though set forth in full.

57.     MINTZ, PARASHOS, and DOE DEFENDANTS owed LEMA a duty of reasonable care.

58.     It was foreseeable to the Defendants that making false accusations of hazing against LEMA would cause him serious emotional distress given the gravity of such accusations.

59.     It was also foreseeable to the Defendants that finding LEMA responsible for hazing despite having no evidence to substantiate this finding would cause LEMA serious emotional distress. Such a finding would cause an imminent threat to LEMA's future career plans as well as his personal reputation.

60.     MINTZ, DEFENDANT PARASHOS, and DOE DEFENDANTS all participated in wrongful conduct that foreseeably damaged LEMA's wellbeing as follows:

A. In the July 8, 2020, email, MINTZ accused LEMA despite having no evidence to substantiate LEMA's culpability.

B. In the August 30, 2020, phone call with LEMA,
PARASHOS stated that LEMA was "guilty by
association" because of his association with the Phi
Gamma Delta Fraternity.

C. In the SETTLEMENT AGREEMENT, PARASHOS
summarily concluded that LEMA had engaged in ten
specific hazing-related activities which amounted to five
specific subsections of Title V, Section 41301 of the
California Code of Regulations.  Despite the numerosity
and specificity of the supposed hazing activities that
LEMA had purportedly engaged in. At no point did
PARASHOS produce any evidence that could corroborate
LEMA's involvement in those activities. When the
SETTLEMENT AGREEMENT was sent, PARASHOS was
aware that there was no evidence that could corroborate
LEMA's involvement in hazing.

D. DOE DEFENDANTS allowed hazing-related disciplinary
proceedings against LEMA to move forward despite the
lack of any evidence that could substantiate his
involvement in any hazing.

E. DOE DEFENDANTS failed to conduct a sufficient investigation before bringing disciplinary charges against LEMA.

61.   As a direct and proximate result of Defendants' actions, LEMA has suffered emotional injury and humiliation.

## FOURTH CAUSE OF ACTION
## NEGLIGENT MISREPRESENTATION

62.   LEMA realleges and incorporates herein by this reference paragraphs 1 through 36 of this Complaint as though set forth in full.

63.   With respect to the July 8, 2020, email,

A. MINTZ stated the following: "Reportedly, during the 2018-2019 and 2019-2020 academic years, you engaged in and conspired to engage in hazing activities that endangered the health and safety of California State University students." This statement clearly indicated to LEMA that there existed evidence that he had participated in hazing and that he was being accused of hazing based on this evidence. However, this was false. In fact, there was no evidence.

B. Because there in fact existed no evidence that LEMA engaged in hazing, there was no reasonable basis for MINTZ to represent to LEMA that such evidence existed.

C. The July 8, 2020, email was clearly sent with the intent of inducing LEMA to believe that the statements contained therein were true. The email does not contain any qualifying language that might suggest that the reader should not take the contents of the letter at face value.

D. LEMA justifiably believed that the contents of the July 8, 2020, email were true. The email was presented with SDSU letterhead and was signed by MINTZ. There would be no indication to LEMA based on the July 8, 2020, email that the contents of it were untrue.

64. With respect to the SETTLEMENT AGREEMENT:

1. PARASHOS falsely stated that LEMA had committed the following specific hazing-related activities:

A. "compelled physically demanding activities (including calisthenics and body-weight workouts)"

B. "compelled forced alcohol consumption"

C. "compelled individuals to drink foreign or unusual substances"

D. "compelled acts of servitude including personal servitude"

E. "blindfolding"

F. "paddling"

G. "bullying"

H. "intimidation"

I. "physical and emotional degradation and humiliation of other students"

J. "compelled pledges to contribute money to pay for alcohol that would be/was consumed during events"

2. At the time that the SETTLEMENT AGREEMENT was sent to LEMA, PARASHOS was aware that there existed no evidence that could corroborate LEMA's involvement in the hazing activities mentioned in the Settlement agreement.  Therefore, PARASHOS had no reasonable grounds to believe that LEMA had in fact undertaken those hazing activities.

3. The express purpose of the SETTLEMENT AGREEMENT was to convey to LEMA that he had been found responsible for the hazing activities mentioned within the SETTLEMENT AGREEMENT.

4. LEMA justifiably believed that the contents of the SETTLEMENT AGREEMENT were true.  The email was presented with SDSU letterhead and was signed by PARASHOS.  There would be no indication to LEMA based on the SETTLEMENT AGREEMENT that the contents of it were not true.

65.   As a direct and proximate result of Defendants' misrepresentations, LEMA has suffered emotional injury and humiliation.  Furthermore, these misrepresentations also forced LEMA to expend a significant amount of money in attorney's fees to obtain his degree.

**FIFTH CAUSE OF ACTION**
**FRAUDULENT MISREPRESENTATION**

66.   LEMA realleges and incorporates herein by this reference paragraphs 1 through 36 of this Complaint as though set forth in full.

67.   With respect to the SETTLEMENT AGREEMENT:

A. PARASHOS falsely stated that LEMA had committed the following specific hazing-related activities:

1. "Compelled physically demanding activities (including calisthenics and body-weight workouts)"

2. "Compelled forced alcohol consumption"

3. "Compelled individuals to drink foreign or unusual substances"

4. "Compelled acts of servitude including personal servitude"

5. "blindfolding"

6. "paddling"

7. "bullying"

8. "intimidation"

9. "Physical and emotional degradation and humiliation of other students."

10.   "Compelled pledges to contribute money to pay for alcohol that would be/was consumed during events."

B. At the time that the SETTLEMENT AGREEMENT was sent to LEMA, PARASHOS was aware that there existed

no evidence that could corroborate his involvement in the hazing activities mentioned in the SETTLEMENT AGREEMENT. Therefore, PARASHOS knew that LEMA had in fact never undertaken those hazing activities.

C. The express purpose of the SETTLEMENT AGREEMENT was to convey to LEMA that he had been found responsible for the hazing activities mentioned within the SETTLEMENT AGREEMENT.

D. LEMA justifiably believed that the contents of the SETTLEMENT AGREEMENT were true.  The email was presented with SDSU letterhead and was signed by PARASHOS.  There would be no indication to LEMA based on the SETTLEMENT AGREEMENT that the contents of it were not true.

68.   As a direct and proximate result of Defendants' misrepresentations, LEMA has suffered emotional injury and humiliation.  Furthermore, these misrepresentations forced LEMA to expend a significant amount of money in attorney's fees to obtain his degree.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests that this Court grant him relief as follows:

1.    Compensatory damages for humiliation, mental anguish, and emotional distress.

2.    Punitive damages against the Defendants.

3.    Attorneys' fees.

4.    Costs of the suit.

5.    Injunctive relief as follows:

a.  ensuring that any hazing-related disciplinary charges are cleared from LEMA's academic record; and,

6.    Such other relief as the Court may deem proper

///

///

///

///

//

//

//

//

COMPLAINT                                    -30-

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury on all issues stated in this action.

Dated:December 28, 2021     Respectfully submitted,
THE LAW OFFICE OF KEITH ALTMAN

Keith Altman (SBN 257309)
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
Telephone: (248) 987-8929
keithaltman@kaltmanlaw.com
*ATTORNEY FOR PLAINTIFF*