CORRIE J. KLEKOWSKI (SBN 251338)
cklekowski@paulplevin.com
HEATHER C. DAVIS (SBN 307850)
hdavis@paulplevin.com
**PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile:  619-615-0700

Attorneys for Defendants The Board of
Trustees of the California State
University; Andrea Parashos; and Lee
Mintz

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Lema,<br><br>Plaintiff,<br><br>v.<br><br>The Board of Trustees of the California State University System, through its subdivision San Diego State University, Andrea Parashos (in her Individual Capacity), Lee Mintz (in her Individual Capacity), and Does 1-20 (in Their Individual Capacities),<br><br>Defendants. | Case No. 21CV2131 JAH KSC<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE [C.C.P. § 425.16] AND FOR ATTORNEYS' FEES**<br><br>Hearing Date: June 29, 2022<br>Time: 10:30 a.m.<br>District Judge: Hon. John A. Houston<br>Crtrm.: 13B<br><br>Mag. Judge: Hon. Karen S. Crawford<br>Crtrm: Suite 1010<br>Trial Date: Not Set<br><br>**EXEMPT FROM FEES<br>GOVT. CODE § 6103** |

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................... 1

II.     CSU IMPLEMENTS STATE MANDATES ........................................... 2

III.    STATEMENT OF FACTS ....................................................................... 3

        A.   Lema Attends SDSU and Joins Phi Gamma Delta Fraternity ............... 3

        B.   SDSU Investigates Reports of Hazing at Phi Gamma Delta
             Under Executive Order 1098 ................................................................ 3

        C.   Mr. Lema is Notified of Hazing Allegations Against Him but
             Refuses to Participate in the Investigation ........................................... 4

        D.   The Hazing Investigation Reveals Serious Historic Hazing
             Practices and Student Conduct Violations ............................................ 5

        E.   Mr. Lema Does Not Contact the Center Until After the
             Investigation Has Been Completed ...................................................... 6

        F.   Mr. Lema is Charged with Violating the Student Code of
             Conduct and Offered an Opportunity to Settle the Charges
             Before a Hearing ................................................................................. 6

        G.   Mr. Lema Chooses to Not Settle and the University Drops the
             Charge Against Mr. Lema .................................................................... 7

IV.     LEMA'S CAUSES OF ACTION ............................................................ 8

V.      STANDARD AND BURDEN OF PROOF ............................................. 8

        A.   A Special Motion to Strike Under California Code of Civil
             Procedure Section 425.16 is Properly Filed in this Court ..................... 8

        B.   The Anti-SLAPP Statute is Broadly Construed to Eliminate
             Litigation at an Early Stage ................................................................. 9

        C.   The Anti-SLAPP Statute Creates a Special, Shifting Burden of
             Proof .................................................................................................. 10

VI.     PRONG ONE: LEMA'S CLAIMS ARISE UNDER THE ANTI-
        SLAPP STATUTE ............................................................................... 11

        A.   Student Misconduct Investigations are Part of an "Official
             Proceeding Authorized by Law" Protected Under the Anti-
             SLAPP Statute .................................................................................. 11

        B.   Lema's Claims Against Defendants Arise from Their Protected
             Conduct ............................................................................................. 12

             1.   Lema's Negligence Claim is Based on the Protected 1098
                  Proceeding and Related Communications ................................. 13

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

2. Lema's Misrepresentation Claims are Based on Protected Communications about the EO 1098 Proceeding ...................... 13

3. Lema's Negligent Infliction of Emotional Distress Claim Arises from the Same Protected Conduct ................................... 14

VII. PRONG TWO: LEMA CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS ............................................................................................ 14

A. Government Code Section 821.6 Provides an Absolute Privilege for All Defendants' Alleged Actions ...................................................... 15

B. Lema's State Law Claims are Barred by the Tort Claims Act because He Failed to Timely Present His Tort Claims ........................ 15

C. CSU Cannot Be Sued for Common Law Claims ................................ 16

D. Mintz and Parashos are Immune for Their Discretionary Acts ........... 16

E. Defendants are Immune from Misrepresentation Claims .................... 17

VIII. DEFENDANTS ARE ENTITLED TO THEIR ATTORNEY'S FEES AND COSTS ............................................................................................ 17

IX. CONCLUSION ...................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Garcia v. City of Merced*
637 F.Supp.2d. 731 (E.D. Cal. 2008) ................................................................ 15

*Herring Networks, Inc. v. Maddow*
445 F.Supp.3d 1042 (S.D. Cal. 2020) ............................................................... 18

*Herring Networks, Inc. v. Maddow*
8 F.4th 1148 (9th Cir. 2021) ............................................................................. 10

*Hilton v. Hallmark Cards*
599 F.3d 894 (9th Cir. 2010) ......................................................................... 9, 10

*Manufactured Home Communities, Inc. v. County of San Diego*
655 F.3d 1171 (9th Cir. 2011) ........................................................................... 18

*New.Net, Inc. v. Lavasoft*
356 F.Supp.2d 1090 (C.D. Cal 2004) .................................................................. 9

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.*
190 F.3d 963 (9th Cir.1999) ............................................................................... 9

*Nicole M By and Through Jacqueline A1 v. Martinez Unified School Dist.*
964 F.Supp. 1369 (N.D. Cal. 1997) .................................................................... 16

*Robinson v. County of Shasta*
384 F.Supp.3d 1137 (E.D. Cal. 2019) ................................................................ 16

*Thomas v. Fry's Electronics, Inc.*
400 F.3d 1206 (9th Cir. 2005) ............................................................................. 9

*Wormuth v. Lammersville Union School District*
305 F.Supp.3d 1108 (E.D. Cal. 2018) ................................................................ 16

**California Cases**

*A.F Brown Elec. Contractor, Inc. v. Rhino Elec. Supply, Inc.*
137 Cal.App.4th 1118 (2006) ............................................................................. 12

*Amylou R. v. County of Riverside*
     28 Cal.App.4th 1205 (1994) ............................................................................ 15

*Ascherman v. Natanson*
     23 Cal.App.3d 861 (1972) .............................................................................. 11

*Baral v. Schnitt*
     1 Cal.5th 376 (2016) ...................................................................................... 10

*Baughman v. State of California*
     38 Cal.App.4th 182 (1995) ............................................................................ 15

*Berman v. Regents of University of California*
     229 Cal.App.4th 1265 (2014) ......................................................................... 11

*Briggs v. Eden Council for Hope & Opportunity*
     19 Cal.4th 1106 (1999) .................................................................................... 9

*City of Cotati v. Cashman*
     29 Cal.4th 69 (2002) ...................................................................................... 10

*County of Kern v. Sparks*
     149 Cal.App.4th 11 (2007) ............................................................................ 17

*Fox Searchlight Pictures, Inc. v. Paladino*
     89 Cal.App.4th 294 (2001) ............................................................................ 10

*Gensburg v. Miller*
     31 Cal.App.4th 512 (1994) ............................................................................ 15

*Goldberg v. Regents of University of Cal.*
     248 Cal.App.2d 867 (1967) ........................................................................... 11

*Graham v. Bank of America, N.A.*
     226 Cal.App.4th 594 (2014) .......................................................................... 13

*Gupta v. Stanford Univ.*
     124 Cal.App.4th 407 (2004) .......................................................................... 11

*Hecimovich v. Encinal School PTO*
     203 Cal.App.4th 450 (2012) .......................................................................... 10

*Hunter v. CBS Broadcasting, Inc.*
     221 Cal.App.4th 1510 (2013) ......................................................................... 12

*Hydro-Mill Co., Inv. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.*
   115 Cal.App.4th 1145 (2004) ................................................................ 13

*Ketchum v. Moses*
   24 Cal.4th 1122 (2001) ........................................................................ 17

*Kibler v. Northern Inyo County Local Hosp. Dist.*
   39 Cal.4th 192 (2006) .................................................................... 9, 12

*Ladd v. County of San Mateo*
   12 Cal.4th 913 (1996) .......................................................................... 13

*Laker v. Board of Trustees of California State University*
   32 Cal.App.5th 745 (2019) .................................................................. 12

*McAllister v. Los Angeles Unified School District*
   216 Cal.App.4th 1198 (2013) .............................................................. 16

*McCarty v. State of California Dept. of Transp.*
   164 Cal.App.4th 955 (2008) ................................................................ 16

*Molien v. Kaiser Foundation Hospitals*
   27 Cal.3d 916 (1980) ............................................................................ 14

*Moore v. Liu*
   69 Cal.App.4th 745 (1999) .................................................................. 17

*Park v. Board of Trustees of California State University*
   2 Cal.5th 1057 (2017) .......................................................................... 12

*Robertson v. Rodriquez*
   36 Cal.App.4th 347 (1995) .................................................................. 18

*Rogers v. Centrone*
   261 Cal.App.2d 361 (1968) ................................................................. 15

*Vergas v. McNeal*
   146 Cal.App.4th 1387 (2007) .............................................................. 12

*Wood v. Riverside General Hospital*
   25 Cal.App.4th 1113 (1984) ................................................................ 15

*Zamos v. Stroud*
   32 Cal.4th 958 (2004) .......................................................................... 14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Zumwalt v. Trustees of Cal. State Colleges*
  33 Cal.App.3d 665 (1973) ....................................................................... 2

**State: Statutes, Rules, Regulations, Constitutional Provisions**

Cal. Civ. Code § 47 ................................................................................... 12

Cal. Code Civ. Proc. § 425.16 .......................................................... *passim*

Cal. Code Regs. tit. 5 § 41301 .................................................... 2, 5, 6, 7

Cal. Code Regs. tit. 5 § 41302 ................................................................... 2

Cal. Ed. Code § 66017 ............................................................................... 2

Cal. Ed. Code § 66300 ............................................................................... 2

Cal. Gov't. Code § 815 ............................................................................. 16

Cal. Gov't Code § 815.2 ........................................................................... 15

Cal. Gov't Code § 818.8 ........................................................................... 17

Cal. Gov't Code § 820.2 ........................................................................... 16

Cal. Gov't Code § 821.6 ........................................................................... 15

Cal. Gov't Code § 822.2 ........................................................................... 17

Cal. Gov't. Code § 911.2 .......................................................................... 16

Cal. Gov't. Code § 911.4 .......................................................................... 16

Cal. Gov't. Code § 945.4 .......................................................................... 15

Cal. Gov't. Code § 950.2 .......................................................................... 15

Penal Code § 245.6 ..................................................................................... 5

# I.   INTRODUCTION

In July 2020, following a student's death, San Diego State University ("SDSU") opened a student misconduct investigation to look into reports of hazing by members of the Phi Gamma Delta fraternity.  The investigation was conducted by defendants Dr. Lee Mintz and Andrea Parashos pursuant to Executive Order 1098, the University's official quasi-judicial procedures for investigating and disciplining student misconduct.  As part of the official proceeding, plaintiff John Lema, a then-student and Phi Gamma Delta member, was notified of the investigation and the allegations of hazing against him.  Mr. Lema was given the opportunity to provide information as part of the investigation but did not respond to the notice.

Based on information received from others in the investigation, Mr. Lema was charged with violating the student code of conduct.  He was provided with a letter containing the University's findings and given an opportunity to settle the charge and accept a proposed disciplinary action.  He declined to settle, and the University elected to drop the charge against him.  Mr. Lema received his bachelor's degree in December 2020 and was never disciplined.

Mr. Lema now sues the University, along with Dr. Mintz and Ms. Parashos personally, for merely informing him of the investigation and later of the charges against him.  Each of Mr. Lema's claims directly arise from these communications that were part of the official Executive Order 1098 proceeding.  Specifically, he sues defendants because he was told he was being investigated and later told that he was charged with violating the student code of conduct.

Importantly, Mr. Lema does not sue to challenge the ultimate outcome of the University's disciplinary proceeding.  No ultimate decision was ever reached because the charges against him were dropped.  Mr. Lema sues the University and two of its employees merely because they initiated and participated in the proceeding.  The University's response to reports of student misconduct, like

hazing, is regulated and mandated through a comprehensive statutory scheme.  Mr. Lema's complaint attacks these proceedings that, for important public policy reasons, are regulated to ensure public protection, without fear of expensive second-guessing litigation.  Instead, the California Legislature protects defendants, through the anti-SLAPP statute (Cal. Civ. Proc. § 425.16), against meritless claims premised on "official proceedings authorized by law," such as those alleged here.  It has been established that this special "anti-SLAPP" motion to strike is available to defendants being sued in federal court for violations of California law.

Once under the rubric of the anti-SLAPP law, the burden shifts to Mr. Lema to show a likelihood of success on his state law claims.  He cannot do so because defendants are immune, as a matter of well-established law, from liability for their acts in instituting and prosecuting the quasi-judicial disciplinary proceeding.  Because his claims are not legally viable and they attack defendants' protected activity, defendants request that this motion be granted and Mr. Lema's second, third, fourth, and fifth causes of action dismissed.

## II.   CSU IMPLEMENTS STATE MANDATES

The California Legislature requires CSU to adopt procedures that govern student behavior and implement appropriate disciplinary action against students.  Cal. Ed. Code §§ 66300, 66017, see also Cal. Code Regs. tit. 5 §§ 41301 and 41302.  CSU's Executive Orders 1095, 1097, and 1098 codify this comprehensive scheme of state laws.  CSU's executive orders have the force and effect of law.  *Zumwalt v. Trustees of Cal. State Colleges*, 33 Cal.App.3d 665, 675 (1973).

Under Executive Order 1098 ("EO 1098"), complaints of student misconduct are directed to the student conduct administrator for investigation.  Notice of Lodgment ("NOL"); Exhibit ("Ex.") A – EO 1098, Article III (A).  Following investigation, the student conduct administrator determines whether it is appropriate to charge a student with a violation of the student conduct code and initiate student conduct proceedings.  *Id.*  If a student conduct proceeding is initiated, the accused

will receive notice, access to the disciplinary file, and an opportunity to respond in a conference with the administrator.  NOL, Ex. A, Article III(B).  If not resolved at the conference, there is a recorded hearing before an impartial hearing officer where the student, accompanied by an attorney or other representative, is allowed to question witnesses and present evidence.  *Id.* at  Article III(D).  The hearing officer then submits a written findings report to the President who issues the University's final discipline decision.  *Id.* at Article III(E).  The University is authorized by EO 1098 to place administrative holds on registration transactions and withhold awarding degrees otherwise earned until completion of the EO 1098 investigative process.  *Id.* at Article V(D).

### III.   STATEMENT OF FACTS

**A.   Lema Attends SDSU and Joins Phi Gamma Delta Fraternity**

Plaintiff John Lema attended San Diego State University ("SDSU") as an undergraduate student during the 2019-2020 academic year.  Complaint ("Compl.") ¶ 17.  SDSU is operated by Defendant Board of Trustees of the California State University ("CSU" or "University").  While enrolled at SDSU, Mr. Lema was a member of the Phi Gamma Delta Fraternity.  Compl. ¶ 18.

**B.   SDSU Investigates Reports of Hazing at Phi Gamma Delta Under Executive Order 1098**

During the 2019-2020 academic year, SDSU campus police received numerous reports of egregious hazing practices involving the Phi Gamma Delta Fraternity during their investigation into the death of a student pledging the fraternity.  Mintz Decl. 3:1-4.  The campus police referred the reports of hazing to the SDSU Center for Student Rights and Responsibilities (the "Center") for further investigation.  *Id.* at 3:4-6.

Shortly thereafter, the Center opened an investigation into alleged student misconduct pursuant to EO 1098.  Mintz Decl. 3:4-6.  Its investigation reviewed reports of hazing at Phi Gamma Delta during the 2018-2019 and 2019-2020

academic years.  Mintz Decl. 3:7-8.  All members of the fraternity from 2018 to 2020 who were currently enrolled at SDSU were investigated.  *Id.* at 3:8-10.  This comprised of approximately 98 students, including Mr. Lema.  *Id.* at 3:10-11.  To allow the Center to complete its investigation, graduation holds were issued, pursuant to EO 1098, to all students who were expected to graduate at the end of the 2019-2020 academic year, such as Mr. Lema.  *Id.* at 3:11-14.

**C.      Mr. Lema is Notified of Hazing Allegations Against Him but Refuses to Participate in the Investigation**

Lee Mintz, the Director for the Center and Deputy Title IX Coordinator, was tasked with notifying Mr. Lema of the Center's investigation and interviewing him. Mintz Decl. 3:15-16.  On July 8, 2020, Dr. Mintz sent Mr. Lema a letter informing him that he and other members of his fraternity were reported to have participated in hazing activities which endangered the health and safety of CSU students and violated the standard for student conduct.  Mintz Decl. 3:16-19, 21-23; NOL, Ex. B. Dr. Mintz asked Mr. Lema to attend a mandatory investigative meeting on July 21, 2020, and informed him that if he should not attend the meeting, a decision could be rendered in his case without his input.  Mintz Decl. 3:19-21; NOL, Ex. B.

On July 13, 2020, Mr. Lema was sent an email reminding him to attend the investigative meeting with Dr. Mintz on July 21, 2020.  Mintz Decl. 3:24-25. However, he did not attend the meeting or respond to any of the communications from Dr. Mintz.  *Id.* at 3:26-27.

On July 28, 2020, Dr. Mintz provided Mr. Lema with a letter indicating he had failed to attend his scheduled investigatory meeting and stating that his meeting had been rescheduled for July 31, 2020.  Mintz Decl. 4:1-3, 5-6; NOL, Ex. C. Again, Dr. Mintz informed Mr. Lema that failing to attend the meeting could result in a decision being made without his input.  Mintz Decl. 4:3-4; NOL, Ex. C.  Mr. Lema failed to attend this meeting as well.  Mintz Decl. 4:7-8.  As a result, he did

1  not have an investigative interview regarding the hazing allegations against him and

2  other members of his fraternity.  Mintz Decl. 4:8.

3  **D.    The Hazing Investigation Reveals Serious Historic Hazing Practices and**

4  **Student Conduct Violations**

5          Although Mr. Lema did not attend his investigative interview, the Center was

6  able to interview many other members of his fraternity.  Mintz Decl. 4:9-10.  Many

7  individuals described historic hazing practices that had been used during the

8  pledging process and which had been passed down to each pledge class, including

9  Mr. Lema's pledge class.  *Id.* at 4:10-12.  This had also been corroborated by

10  information gathered and provided to the Center by the campus police.  *Id.* at 4:12-

11  13.

12          By the end of September 2020, the Center had completed the interview

13  process and moved into the decision-making phase of its investigation.  Mintz Decl.

14  4:14-15.  Fraternity members who had either been hazed or participated in hazing

15  others were considered to have violated the student conduct standards.  *Id.* at 4:15-

16  21; Cal. Code Regs. tit. 5 § 41301 (b)(8) [hazing or conspiracy to haze is not

17  consistent with the Student Conduct Code and constitutes grounds for student

18  discipline].[1]  Under Section 41301, "[n]either the express or implied consent of a

19  victim of hazing, nor the lack of active participation in a particular hazing incident is

20  a defense.  Apathy or acquiescence in the presence of hazing is not a neutral act, and

21  is also a violation of this section."  *Id.*

22  _____

23  [1] The California Code of Regulations defines hazing as "any method of initiation or
    pre-initiation into a student organization or student body … which is likely to cause

24  serious bodily injury to any former, current, or prospective student of any school,
    community college, college, university or other educational institution in this state

25  (Penal Code § 245.6), and in addition, any act likely to cause physical harm,

26  personal degradation or disgrace resulting in physical or mental harm, to any former,
    current, or prospective student of any school, community college, college, university

27  or other educational institution."  Cal. Code of Reg. tit 5 § 41301 (b)(8).

28

**E.     Mr. Lema Does Not Contact the Center Until After the Investigation Has Been Completed**

It was not until October 1, 2020, that Mr. Lema first reached out to the Center about the investigation.  Mintz Decl. 4:22-23.  Mr. Lema emailed that he was not at the fraternity event investigated by campus police and did not know the student who passed away following the event.  *Id.* at 4:23-25.  He inquired into the status of his graduation hold and asked what he could do to rectify the situation.  *Id.* at 4:25-26.

On October 7, 2020, Andrea Parashos, Title IX and Student Conduct Investigator for the Center, emailed Mr. Lema and offered to meet with him regarding his graduation hold and the Center's investigation.  Mintz Decl. 4:27-5:2. They subsequently met over video-conferencing, and Ms. Parashos explained that the fact-finding stage of the investigation had closed and charges against students would be issued soon.  *Id.* at 5:2-4.  Mr. Lema indicated he would wait for the outcome of the investigation.  *Id.* at 5:4-5.

**F.     Mr. Lema is Charged with Violating the Student Code of Conduct and Offered an Opportunity to Settle the Charges Before a Hearing**

Mr. Lema was charged with violating CSU's student code of conduct, based on the information the Center had received during the investigation.  Mintz Decl. 5:6-7.  Specifically, he was charged with violating the following standards for student conduct codified in the California Code of Regulations:

- Subsection (b)(7) – Conduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, harassment, or sexual misconduct;

- Subsection (b)(8) – Hazing, or conspiracy to haze;

- Subsection (b)(10) – Use, possession, manufacture, or distribution of alcoholic beverages (except as expressly permitted by law and University regulations), or public intoxication while on campus or at a University related activity;

/ / /

- Subsection (b)(16) – Violation of any published University policy, rule, regulation or presidential order; and

- Subsection (b)(20) – Encouraging, permitting, or assisting another to do any act that could subject him or her to discipline.

NOL, Ex. D; Cal. Code Regs. tit. 5 § 41301(b)(7), (8), (10), (16), and (20).

On November 23, 2020, he was provided with a letter detailing the Center's investigative finding and proposed disciplinary action, a settlement agreement related to his charge, and notice of his rights. Mintz Decl. 5:8-11, 13-15; NOL, Ex. D. Mr. Lema's proposed discipline, should he choose to settle his charge, was suspension in abeyance, a minor discipline. Mintz Decl. 5:11-13; Ex. D.

Per Mr. Lema's request, on November 30, 2020, Mr. Lema, his mother, and Ms. Parashos attended an informal conference to discuss the Center's finding and the proposed discipline offered in the settlement agreement. Mintz Decl. 5:16-19. Following the conference, Mr. Lema requested a copy of his investigation file, which was provided to him on December 18, 2020. *Id.* at 5:19-20.

## G.     Mr. Lema Chooses to Not Settle and the University Drops the Charge Against Mr. Lema

After the Center's investigation ended, the University lifted Mr. Lema's graduation hold. Mintz Decl. 5:21-22. Mr. Lema received his bachelor's degree on December 31, 2020. *Id.* at 5:22. Mr. Lema never signed the settlement agreement and so the proposed discipline in the settlement agreement was never issued. *Id.* at 5:23-24. Because Mr. Lema had graduated, the University elected to dismiss the charge against him. *Id.* at 5:24-25. As a result, Mr. Lema did not have a hearing related to his charge and no final discipline decision was ever issued for him. *Id.* at 5:25-27. Mr. Lema's academic record does not reflect any disciplinary charges or any other references to the hazing investigation. *Id.* at 5:27-28.

/ / /

/ / /

## IV.   LEMA'S CAUSES OF ACTION

On December 28, 2021, Mr. Lema filed the instant lawsuit against CSU, Dr. Mintz, and Ms. Parashos (collectively "Defendants") alleging claims related to the EO 1098 proceeding.  He asserts five causes of action against Defendants, including: (1) Due Process Violations under Section 1983; (2) Negligence; (3) Negligent Infliction of Emotional Distress; (4) Negligent Misrepresentation; and (5) Fraudulent Misrepresentation.

Mr. Lema contends that Dr. Mintz deprived him of due process by accusing him of violating student misconduct standards without evidence when she sent him her July 8, 2020 letter notifying him of the hazing allegations and EO 1098 proceeding.  Compl. ¶ 44.  Mr. Lema also asserts that Ms. Parashos deprived him of due process by providing him with the November 23, 2020 letter and settlement agreement detailing the EO 1098 investigation findings and proposed disciplinary action as part of the settlement agreement.  Compl. ¶ 45.

Mr. Lema's remaining claims are based on his belief that Dr. Mintz and Ms. Parashos charged him with misconduct violations before they concluded he was responsible and that he suffered emotional distress as a result.  Compl. ¶¶ 50-61. Mr. Lema also claims that Dr. Mintz and Ms. Parashos made statements during the EO 1098 proceeding that he had reportedly or actually participated in hazing which he contends were untrue and therefore constituted negligent or fraudulent misrepresentations.  Compl. ¶¶ 62-68.

## V.   STANDARD AND BURDEN OF PROOF

### A.   A Special Motion to Strike Under California Code of Civil Procedure Section 425.16 is Properly Filed in this Court

Under California Code of Civil Procedure section 425.16, a defendant can bring a special motion to strike when the plaintiff files a lawsuit that violates the defendant's right to free speech or petition.  Cal. Code. Civ. Pro. § 425.16(b)(1). This is called an "anti-SLAPP" motion (for "strategic lawsuit against public

policy"). While there is no federal procedural equivalent to the California anti-SLAPP statute, a defendant can bring an anti-SLAPP motion in federal court as to any pendant state claims. *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-973 (9th Cir.1999); *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206, 1206-1207 (9th Cir. 2005); *New.Net, Inc. v. Lavasoft*, 356 F.Supp.2d 1090, 1099 (C.D. Cal 2004).

**B.      The Anti-SLAPP Statute is Broadly Construed to Eliminate Litigation at an Early Stage**

California enacted Code of Civil Procedure section 425.16 to combat "a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights" and authorized special motions to eliminate meritless litigation at an early stage in the proceedings. Cal. Code Civ. Proc. § 425.16 (a). "Because these meritless lawsuits seek to deplete the defendant's energy and drain his or her resources, the Legislature sought to prevent SLAPPs by ending them early and without great cost to the SLAPP target." *Kibler v. Northern Inyo County Local Hosp. Dist.*, 39 Cal.4th 192, 197 (2006). The California Legislature affirmed that the statute "shall be construed broadly," and both California and Federal courts have emphasized an expansive application. Cal. Code Civ. Proc. § 425.16(a); *see also Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010); *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106, 1119 (1999).

The statute provides that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech … in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." Cal. Code Civ. Proc. § 425.16 (b)(1). An "act in furtherance of a person's right of petition or free speech" includes:

/ / /

(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law;

(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law;

(3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; and

(4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

*Id*. at. 425.16(e).  An anti-SLAPP motion may be used to strike a single cause of action, or parts of a count.  *Baral v. Schnitt,* 1 Cal.5th 376, 393 (2016).

## C.    The Anti-SLAPP Statute Creates a Special, Shifting Burden of Proof

Ruling on a special motion to strike is a two-step process: first, the court determines whether the moving party has demonstrated that the claim arises from protected activity.  *Hecimovich v. Encinal School PTO*, 203 Cal.App.4th 450, 463 (2012); *Hilton, supra,* 599 F.3d at 903.  If an adequate step-one showing is made, the court must then consider whether the plaintiff demonstrated a probability of success on the challenged claim.  Cal. Code Civ. Proc. § 425.16 (b)(1); *see also City of Cotati v. Cashman*, 29 Cal.4th 69, 76 (2002).  Thus, the defendant must only show that the plaintiff's cause of action "arises from" defendant's free speech exercise or petition rights.  *Fox Searchlight Pictures, Inc. v. Paladino*, 89 Cal.App.4th 294, 307 (2001).

Once the defendant shows that the cause of action at issue arises from protected conduct, the burden shifts to the plaintiff to establish "a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal."  *Herring Networks, Inc. v. Maddow*, 8 F.4th 1148, 1155 (9th Cir. 2021).

/ / /

1    As detailed below, each of Mr. Lema's state law claims (negligence,

2  negligent infliction of emotional distress, negligent misrepresentation, and

3  fraudulent misrepresentation) fall within the anti-SLAPP statute, and Mr. Lema will

4  not be able to show a probability of prevailing on any of these claims.

5  **VI.    PRONG ONE: LEMA'S CLAIMS ARISE UNDER THE ANTI-SLAPP**

6  **STATUTE**

7    Mr. Lema's claims for negligence, negligent infliction of emotional distress,

8  negligent misrepresentation, and fraudulent misrepresentation each arise from

9  Section 425.16 protected conduct.  Investigations into reports of student misconduct

10  pursuant to EO 1098, as well as any statements made in connection with the 1098

11  investigation, are protected under subsection (e)(1) and (e)(2) as communications

12  made in connection with an official proceeding, and by subsection (e)(4) as conduct

13  in furtherance of the right to petition.

14  **A.    Student Misconduct Investigations are Part of an "Official Proceeding**

15  **Authorized by Law" Protected Under the Anti-SLAPP Statute**

16    The EO 1098 proceeding into Mr. Lema, the charges against Mr. Lema,

17  offering Mr. Lema a proposed disciplinary action as part of a settlement agreement,

18  and all communications related to the EO 1098 proceedings are protected by the

19  anti-SLAPP statute as communications made in connection with an official

20  proceeding authorized by law.  Cal. Code Civ. Proc. § 425.16 (e)(2) and (4).

21    California state law and CSU's executive orders, as detailed above, create a

22  comprehensive statutory scheme for student misconduct investigations and

23  discipline.  A public university's student discipline proceedings are viewed as quasi-

24  judicial proceedings subject to judicial review by mandamus proceedings. *Berman v.*

25  *Regents of University of California*, 229 Cal.App.4th 1265, 1272 (2014); *Goldberg*

26  *v. Regents of University of Cal.*, 248 Cal.App.2d 867, 873 (1967); *see also Gupta v.*

27  *Stanford Univ.*, 124 Cal.App.4th 407, 411 (2004).  The phrase "other official

28  proceeding authorized by law" encompasses quasi-judicial proceedings. *Ascherman*

1  *v. Natanson*, 23 Cal.App.3d 861, 865 (1972) [analyzing same "official proceeding"

2  language in Cal. Civ. Code § 47]; *A.F Brown Elec. Contractor, Inc. v. Rhino Elec.*

3  *Supply, Inc.*, 137 Cal.App.4th 1118, 1125 (2006) [Section 425.16's "official

4  proceeding" clause is coextensive with Cal. Civ. Code § 47].

5      Because the anti-SLAPP statute must be broadly interpreted, courts regularly

6  hold that similar quasi-judicial proceedings are covered by the "other official

7  proceedings" clause.  *Kibler*, *supra*, 39 Cal.4th at 200; *Vergas v. McNeal*, 146

8  Cal.App.4th 1387, 1396 (2007) [public university's internal grievance procedures

9  were protected "official proceedings"]; *Laker v. Board of Trustees of California*

10  *State University*, 32 Cal.App.5th 745, 765 (2019) [University's investigations under

11  EO 1096 and EO 1097 were protected as "official proceeding[s] authorized by law"

12  within the meaning of section 425.16, subdivision (e)].

13      All aspects of the 1098 proceeding of which Mr. Lema complains are

14  protected.  This includes the decision to investigate Mr. Lema as part of the official

15  hazing investigation, as well as any communications with Mr. Lema about the

16  investigation process, findings, and proposed compromised discipline as part of a

17  settlement agreement.  Thus, Dr. Mintz's July 8, 2020 email providing Mr. Lema

18  with notice of the hazing allegations and Ms. Parashos' November 23, 2020 letter

19  informing him of the investigation findings and charges are both protected

20  communications made in connection with an official proceeding authorized by law.

21  **B.**    **Lema's Claims Against Defendants Arise from Their Protected Conduct**

22      Each of Mr. Lema's state claims arises directly from Defendants' protected

23  1098 proceeding.  Courts look to the "core injury-producing conduct upon which the

24  plaintiff's claim is premised" to determine whether the claim arises from protected

25  conduct.  *Hunter v. CBS Broadcasting, Inc.*, 221 Cal.App.4th 1510, 1520 (2013).

26  "In ruling on an anti-SLAPP motion, courts should consider the elements of the

27  challenged claim and what actions by defendant supply those elements and

28  consequently form the basis for liability."  *Park v. Board of Trustees of California*

*State University*, 2 Cal.5th 1057, 1063 (2017).  Here, Mr. Lema sues Defendants for negligence, negligent infliction of emotional distress, negligent misrepresentation, and fraudulent misrepresentation.

### 1.    Lema's Negligence Claim is Based on the Protected 1098 Proceeding and Related Communications

To determine whether Mr. Lema's negligence claim arises from protected conduct, the Court considers the following elements of the claim: (1) the defendant had a legal duty to use due care; (2) the defendant breached its duty; and (3) its breach caused plaintiff harm.  See *Ladd v. County of San Mateo*, 12 Cal.4th 913, 917 (1996).

Mr. Lema alleges that Defendants had a duty to only issue disciplinary charges which were well-founded and corroborated by evidence.  Compl. ¶ 51.  He contends that Dr. Mintz and Ms. Parashos breached this duty by accusing him of student misconduct and moving forward with disciplinary proceedings against him.  Compl. ¶¶ 52B 52C, 53A.  He also specifically complains that the November 23, 2020 letter sent to him with the investigation findings did not contain corroborating evidence.  Compl. ¶¶ 52D, 53 B-D.  Because this alleged conduct was all made as part of the ongoing EO 1098 proceeding, it is protected by the anti-SLAPP statute as a communication in connection with the official proceeding authorized by law.

### 2.    Lema's Misrepresentation Claims are Based on Protected Communications about the EO 1098 Proceeding

The gravamen of a misrepresentation claim is that a representation was made to the plaintiff which was not true.  Negligent misrepresentation occurs where a defendant makes a representation that is not true without reasonable grounds for believing it to be true.  *Hydro-Mill Co., Inv. v. Hayward, Tilton & Rolapp Ins. Associates, Inc.*, 115 Cal.App.4th 1145, 1154 (2004).  Fraudulent misrepresentation occurs where a defendant makes a representation that is not true knowing it to be false.  *Graham v. Bank of America, N.A.*, 226 Cal.App.4th 594, 605-606 (2014).

Mr. Lema alleges that Dr. Mintz and Ms. Parashos negligently and/or fraudulently made false statements to him in their July 8, 2020 and November 23, 2020 communications to him.  Thus, both of Mr. Lema's misrepresentation claims are based on protected communications made in furtherance of the EO 1098 proceeding.

### 3.    Lema's Negligent Infliction of Emotional Distress Claim Arises from the Same Protected Conduct

The elements of negligent infliction of emotional distress are: (1) defendant was negligent; (2) plaintiff suffered serious emotional distress; and (3) causation. *Molien v. Kaiser Foundation Hospitals,* 27 Cal.3d 916, 928 (1980).  Mr. Lema's negligent infliction of emotional distress claim is derivative of his other claims and is based on the same underlying conduct (i.e., the letters accusing him of misconduct, moving forward with disciplinary proceedings, communicating with him about the investigation and findings).  As all of this conduct occurred in furtherance of the EO 1098 proceeding, it is protected by the anti-SLAPP statute.

## VII.   PRONG TWO: LEMA CANNOT DEMONSTRATE A LIKELIHOOD OF SUCCESS

Once Defendants establish the action arises from protected conduct, the burden shifts to Mr. Lema to show that he is likely to prevail on each challenged claim.  Cal. Code Civ. Proc. § 425.16(b)(1); *Zamos v. Stroud*, 32 Cal.4th 958, 965 (2004).  Mr. Lema cannot make such a showing.[2]

/ / /

/ / /

---

[2] It is Mr. Lema's burden to prove each element of his claims.  By pointing out some of the more obvious deficiencies of the claims, Defendants do not imply that Mr. Lema can maintain his burden on elements or defenses not specifically mentioned in this memorandum.  Defendants further reserve the right, if necessary, to provide additional evidence in reply once Mr. Lema puts forth his evidence, if any.

**A.      Government Code Section 821.6 Provides an Absolute Privilege for All Defendants' Alleged Actions**

Mr. Lema cannot succeed on any claim in this case, because Defendants' are immune as a matter of law for their conduct in instituting and prosecuting the EO 1098 Proceeding.  Government Code section 821.6 provides:

> A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause.

Section 821.6 immunity applies to all public employees who institute, investigate, or are otherwise involved in a criminal or administrative investigation or proceeding.  *Garcia v. City of Merced*, 637 F.Supp.2d 731, 751 (E.D. Cal. 2008); *Baughman v. State of California*, 38 Cal.App.4th 182, 191-92 (1995); *Gensburg v. Miller*, 31 Cal.App.4th 512, 518 (1994).  Section 821.6 immunizes actions taken in preparation for such proceedings, such as investigations, even if charges are never actually filed.  *Amylou R. v. County of Riverside*, 28 Cal.App.4th 1205, 16 1209-1211 (1994).  The public policy behind immunity from civil liability for public officials is to free them from any fear of litigation or harassment while performing essential duties.  *Garcia, supra,* 637 F.Supp.2d at 751.

CSU and its officials, Dr. Mintz and Ms. Parashos, are therefore immune under Section 821.6.  Cal. Gov't Code § 815.2(b).

**B.      Lema's State Law Claims are Barred by the Tort Claims Act because He Failed to Timely Present His Tort Claims**

Under the California Tort Claims Act, no suit for "money or damages" may be brought against a public entity or public entity employee until a written claim describing the violations has been presented to the public entity.  Cal. Gov't. Code §§ 945.4, 950.2; *Rogers v. Centrone*, 261 Cal.App.2d 361, 363 (1968).  Timely filing of such a claim is a mandatory element of a claim against a public entity. *Wood v. Riverside General Hospital*, 25 Cal.App.4th 1113, 1119 (1984).  In no

circumstance does a plaintiff have more than one year from the accrual of his cause of action to present his claim to the public entity.  Cal. Gov't. Code §§ 911.2, 911.4.

Here, Mr. Lema has not alleged any facts indicating that he presented a claim to CSU.  Additionally, the latest potential date for an accrual of a cause of action as alleged by Mr. Lema was December 2021, after the EO 1098 proceeding had closed. Compl. ¶¶ 29-36.  Therefore, it is too late for Mr. Lema to now present a tort claim and his state law claims are therefore barred.

## C.    CSU Cannot Be Sued for Common Law Claims

Mr. Lema's state law claims are all common law claims: negligence, negligent infliction of emotional distress, negligent misrepresentation, and fraudulent misrepresentation.  As a matter of well-established law, a public entity, such as the University, cannot be liable for common law claims.  Cal. Gov't. Code § 815(a); *Robinson v. County of Shasta*, 384 F.Supp.3d 1137, 1163 (E.D. Cal. 2019) [dismissing negligence claim under Section 815(a)]; *see also Wormuth v. Lammersville Union School District*, 305 F.Supp.3d 1108, 1130 (E.D. Cal. 2018); *McCarty v. State of California Dept. of Transp.*, 164 Cal.App.4th 955, 977 (2008); *McAllister v. Los Angeles Unified School District,* 216 Cal.App.4th 1198, 1218 (2013).  Mr. Lema cannot succeed on his state law claims for this additional reason.

## D.    Mintz and Parashos are Immune for Their Discretionary Acts

Government Code section 820.2 states:

> Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused.

Decisions by school administrators, such as Dr. Mintz and Ms. Parashos, to discipline students and investigate complaints are discretionary acts entitled to Section 820.2 immunity.  *Nicole M By and Through Jacqueline A1 v. Martinez Unified School Dist.*, 964 F.Supp. 1369, 1389-90 (N.D. Cal. 1997).  Dr. Mintz and Ms. Parashos are immune for their discretionary decisions related to initiating and

1  conducting a 1098 proceeding into Mr. Lema.  As a result, CSU is also immune.

2  Cal. Gov't Code§ 815.2(b).  For this additional reasons, Mr. Lema's state law claims

3  fail.

4  **E.      Defendants are Immune from Misrepresentation Claims**

5          Mr. Lema will also be unable to succeed on his misrepresentation claims,

6  because Defendants are immune under Government Code sections 822.2 and 818.8.

7          Government Code section 822.2 states:

8              A public employee acting in the scope of his employment
               is not liable for an injury caused by his misrepresentation,
9              whether or not such misrepresentation be negligent or
               intentional, unless he is guilty of actual fraud, corruption or
10             actual malice.

11         Similarly, Government Code section 818.8 states:

12             A public entity is not liable for an injury caused by
               misrepresentation by an employee of the public entity,
13             whether or not such misrepresentation be negligent or
               intentional.

14

15         Public employees and entities are entitled to immunity against

16  misrepresentation claims where the alleged misrepresentation involves an

17  interference with financial or commercial interests.  *County of Kern v. Sparks*, 149

18  Cal.App.4th 11, 20, (2007).  Here, Mr. Lema contends that the statements made to

19  him by Dr. Mintz and Ms. Parashos during the EO 1098 proceeding interfered with

20  his financial interests because he was forced to spend a significant amount of money

21  on attorney's fees to obtain his degree.  Compl. ¶¶ 65, 68.  However, under Sections

22  822.2 and 818.8, CSU, Dr. Mintz, and Ms. Parashos are immune from these claims.

23  **VIII.  DEFENDANTS ARE ENTITLED TO THEIR ATTORNEY'S FEES**

24                          **AND COSTS**

25         The prevailing defendant on a motion to strike "shall be entitled" to recover

26  its attorneys' fees and costs.  Cal. Code Civ. Proc. § 425.16(c); *Ketchum v. Moses*,

27  24 Cal.4th 1122, 1131 (2001).  Fees are awarded even if the plaintiff dismisses the

28  claim before the motion is ruled on.  *Moore v. Liu*, 69 Cal.App.4th 745, 751 (1999).

Recovery compensates defendants for the expense of responding to a lawsuit intended to squelch free speech. *Robertson v. Rodriquez*, 36 Cal.App.4th 347, 362 (1995). The Ninth Circuit has found that the attorney fee provisions of section 425.16(c) apply in federal court. *Manufactured Home Communities, Inc. v. County of San Diego*, 655 F.3d 1171, 1181 (9th Cir. 2011); *Herring Networks, Inc. v. Maddow*, 445 F.Supp.3d 1042, 1054 (S.D. Cal. 2020). Defendants will submit their requested fees and costs with their reply brief or in a separate motion, and requests that the Court award their fees and costs incurred in bringing this motion.

## IX.   CONCLUSION

Because Mr. Lema's state law claims are all barred as a matter of law, and because they are premised on Defendants' protected conduct and speech in connection with an official proceeding authorized by law, Defendants respectfully request that their special motion to strike be granted, and the Court issue an order entitling them to attorneys' fees in an amount to be established.

Dated:  April 19, 2022

PAUL, PLEVIN, SULLIVAN &
CONNAUGHTON LLP


By:      *s/Corrie J. Klekowski*
CORRIE J. KLEKOWSKI
HEATHER C. DAVIS
Attorneys for Defendants The Board of
Trustees of the California State University;
Andrea Parashos; and Lee Mintz