1  CORRIE J. KLEKOWSKI (SBN 251338)
   cklekowski@paulplevin.com
2  HEATHER C. DAVIS (SBN 307850)
   hdavis@paulplevin.com
3  **PAUL, PLEVIN, SULLIVAN &**
   **CONNAUGHTON LLP**
4  101 West Broadway, Ninth Floor
   San Diego, California 92101-8285
5  Telephone: 619-237-5200
   Facsimile:  619-615-0700
6
7  Attorneys for Defendants The Board of
   Trustees of the California State
   University; Andrea Parashos; and Lee
8  Mintz

9              **UNITED STATES DISTRICT COURT**

10             **SOUTHERN DISTRICT OF CALIFORNIA**

11

12 | John Lema,

13 |            Plaintiff,

14 |        v.

15 | The Board of Trustees of the California
   | State University System, through its
16 | subdivision San Diego State University,
   | Andrea Parashos (in her Individual
17 | Capacity), Lee Mintz (in her Individual
   | Capacity), and Does 1-20 (in Their
18 | Individual Capacities),

19 |            Defendants.

20

Case No. 21CV2131 JAH KSC

**DEFENDANTS' NOTICE OF LODGMENT OF EXHIBITS IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT [C.C.P. § 425.16] AND FOR ATTORNEYS' FEES**

Hearing Date:  June 29, 2022
Time:          10:30 a.m.
District Judge: Hon. John A. Houston
Crtrm.:        13B

Mag. Judge:    Hon. Karen S. Crawford
Crtrm:         Suite 1010
Trial Date:    Not Set

**EXEMPT FROM FEES**
**GOVT. CODE § 6103**

21

22

23

24

25

26

27

28

PAUL, PLEVIN,
SULLIVAN &
CONNAUGHTON LLP

Case No. 21CV2131 JAH KSC

1    TO THE COURT, PLAINTIFF JOHN LEMA AND HIS ATTORNEYS OF

2  RECORD:

3    Defendants Board of Trustees of the California State University ("CSU" or

4  the "University"), Andrea Parashos and Lee Mintz (collectively "Defendants")

5  hereby lodge the following Exhibits in support of their Special Motion to Strike

6  Plaintiff's Complaint [C.C.P. § 425.16] and for Attorneys' Fees.  Authentication for

7  the exhibits is contained in the parenthetical following each reference below:

8    **Exhibit A:**   A true and correct copy of the University's Executive Order

9  1098.  (Authenticated by the Declaration of Lee Mintz ("Mintz Decl.") at 2:22-27.)

10    **Exhibit B:**   A true and correct copy of a July 8, 2020 letter Lee Mintz sent to

11  John Lema.  (Authenticated by Mintz Decl. at 3:15-23.)

12    **Exhibit C:**   A true and correct copy of a July 28, 2020 letter Lee Mintz sent

13  to John Lema.  (Authenticated by Mintz Decl. at 4:1-6.)

14    **Exhibit D:**   A true and correct copy of a November 23, 2020 letter the

15  University sent to John Lema.  (Authenticated by Mintz Decl. at 5:6-15.)

16

17  Dated:  April 19, 2022            PAUL, PLEVIN, SULLIVAN &
                                      CONNAUGHTON LLP
18

19

20                          By:    _____*s/Corrie J. Klekowski*_____
                                   CORRIE J. KLEKOWSKI
21                                 HEATHER C. DAVIS
                                   Attorneys for Defendants The Board of
22                                 Trustees of the California State University;
                                   Andrea Parashos; and Lee Mintz
23

24

25

26

27

28

# EXHIBIT A

| Current Status: *Active* | PolicyStat ID: *6742449* |
|---|---|



| | |
|---|---|
| **Origination:** | *6/23/2015* |
| **Last Revised:** | *3/29/2019* |
| **Owner:** | *Luoluo Hong: Assoc VC Stdnt Affairs&Enrl Mg* |
| **Area:** | *Academic and Student Affairs* |
| **Codes:** | *EO 1098* |

# Student Conduct Procedures

Executive Order 1098 (Revised March 29, 2019) supersedes Executive Order 1098 (Revised June 23, 2015).

This executive order has been revised in response to a recent California court of appeal decision, and includes an addendum that applies to cases where a student has been accused of sexual misconduct as defined by CSU policy.[1] **The addendum supersedes Article III.B.7-9 and Article IV of this executive order with respect to cases (i) alleging sexual misconduct by a student that, (ii) if substantiated, could result in a severe sanction (suspension or expulsion), and (iii) where credibility of any party or witness is central to the finding.**

Complaints of student misconduct are governed by the following CSU policies.

| Alleged Misconduct | Applicable Policy |
|---|---|
| Sexual misconduct by student that could result in severe sanction (suspension or expulsion), where credibility is central to finding | Executive Order 1097 (Revised March 29, 2019) (except Article III.B.7-9 and ArticleIV) and Addendum -- Investigation and Hearing Process for Students Accused of Sexual Misconduct |
| Discrimination, harassment or retaliation based on protected status (including sexual misconduct by student that, if substantiated, would not result in suspension or expulsion) | Executive Order 1097 (Revised March 29, 2019) and Executive Order 1098 (Revised March 29, 2019) (Article IV) re sanctions process |
| All other student misconduct prohibited by CSU Standards for Student Conduct (5 California Code of Regulations, Section 41301) | Executive Order 1098 (Revised March 29, 2019) |

Complaints that are in process as of the effective date of this executive order will be processed in accordance with the *procedures* outlined herein, however utilizing the *policy and definitions* set forth in the executive order in place at the time of the alleged misconduct. A Complaint is "in process" if the time to appeal to the Chancellor's Office under Executive Orders 1096, 1097, or 1098 has not expired.

If you have questions regarding this executive order, please call systemwide Equal Opportunity and Compliance at (562) 951-4400.

***[NOTE: ARTICLE IV OF THIS EXECUTIVE ORDER DOES NOT APPLY IN CASES (I) ALLEGING SEXUAL MISCONDUCT BY A STUDENT THAT, (II) IF SUBSTANTIATED, COULD RESULT IN A SEVERE SANCTION (SUSPENSION OR EXPULSION), AND (III) WHERE CREDIBILITY OF ANY PARTY OR WITNESS IS CENTRAL TO THE FINDING. SEE ADDENDUM -- INVESTIGATION AND HEARING***

*PROCESS – FOR STUDENTS ACCUSED OF SEXUAL MISCONDUCT.]*

# Article I. Authority and Purpose

These procedures are established pursuant to 5 California Code of Regulations Section 41301, and govern all Student disciplinary matters systemwide.

Procedures specifically for allegations involving Discrimination, Harassment, Retaliation, Sexual Misconduct, Domestic and Dating Violence, and Stalking are set forth in Article IV.[2]

# Article II. General Provisions

A.  **Student Conduct Administrator**

Each Campus president shall assign an MPP employee to be the Student Conduct Administrator, whose responsibilities are to perform duties as prescribed in these procedures.

1.  All Student Conduct Administrators shall receive appropriate training regarding: (a) the student discipline process (including investigation skills and procedures); (b) the law governing Discrimination, Harassment and Retaliation; (c) Student and witness privacy rights; and, (d) the Family Educational Rights and Privacy Act of 1974 (FERPA).

2.  All Student Conduct Administrators shall also receive annual training on issues related to: (a) Title IX, VAWA/Campus SaVE Act, and other related state and federal laws prohibiting Discrimination, Harassment and Retaliation based on Gender, including Sex Discrimination, Sexual Harassment, Sexual Misconduct, Domestic Violence, Dating Violence, and Stalking; and, (b) how to conduct an investigation and hearing process that protects the safety of victims and promotes accountability.

B.  **Hearing Officers**

1.  Each Campus president shall appoint one or more persons to serve as Hearing Officers. They may be University employees with MPP appointments (current or retired); managers or directors (current or retired) of a recognized campus auxiliary organization; attorneys licensed to practice in California; or administrative law judges from the Office of Administrative Hearings. Student Conduct Administrators and all persons working under or reporting to them, persons with a conflict of interest in the matter, and percipient witnesses to the events giving rise to the matter are ineligible to serve as Hearing Officers.

2.  Except as provided in Article IV, the Hearing Officer conducts the hearing, determines whether a Student has violated the Student Conduct Code, and prepares a report that includes findings and conclusions about whether the Student violated the Student Conduct Code and any recommended sanctions.

3.  All Hearing Officers shall receive appropriate training regarding: (a) the student discipline process; (b) the law governing Discrimination, Harassment and Retaliation; (c) student and witness privacy rights; and, (d) FERPA.

4.  All Hearing Officers shall also receive annual training on issues related to: (a) Title IX, VAWA/ Campus SaVE Act, and other related state and federal laws prohibiting Discrimination, Harassment and Retaliation based on Gender, including Sex Discrimination, Sexual Harassment, Sexual Misconduct, Domestic Violence, Dating Violence, and Stalking; and, (b) the duties of the Hearing Officer (including impartiality, confidentiality and the duty to conduct hearings in a manner that protects the safety of victims and promotes accountability).

C. **Advisors**

Both the Complainant and the Student charged may elect to be accompanied by an Advisor of their choice, subject to the limitations set forth in this section, to any meetings, conferences, interviews or hearings.

Any witnesses who are alleged to be victims of the Discrimination, Harassment, Retaliation, Sexual Misconduct, Domestic or Dating Violence, or Stalking at issue may likewise elect to be accompanied by an Advisor of their choice.

In cases involving Discrimination, Harassment and Retaliation based on Gender, including Sex Discrimination, Sexual Harassment, Sexual Misconduct, Domestic Violence, Dating Violence, and Stalking, the Complainant may elect to have a Sexual Assault Victim's Advocate or an attorney as an Advisor. Likewise, in such matters, the Student charged may elect to have an attorney as an Advisor.

Student conduct proceedings are not meant to be formal court-like trials. Although University-related sanctions may be imposed, the process is intended to provide an opportunity for learning. Whoever is selected as an Advisor is limited to observing and consulting with, and providing support to, the Complainant, witness, or Student charged. An Advisor may not speak on a Student's or Complainant's behalf.

In proceedings that do not involve allegations of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking, each Campus president determines by Campus directive whether attorneys are permitted to be present in all or some Student conduct proceedings. Except as otherwise provided in this section, in the absence of a president's directive, attorneys shall be excluded from acting as an Advisor in disciplinary conferences and hearings.

Notwithstanding any Campus directive, attorneys may attend hearings as Advisors: (a) where there are pending criminal (felony) charges arising out of the same facts that are the subject of the disciplinary proceeding; or (b) where the recommended sanction is expulsion.

The Advisor may not be a person with information relevant to the allegations who may be interviewed or called upon to testify during any related investigation or hearing.

Any person who wishes to have an attorney present at the hearing as an Advisor must notify the Student Conduct Administrator in writing of the attorney's name, address and phone number at least **5 Working Days** prior to the hearing.

D. **Correspondence**

The Student Conduct Administrator (who may act through designees) shall deliver all correspondence to Students (including the Student charged) at the University-assigned, or other primary email address linked to the Student's account in the Office of the Registrar.

E. **Interpretation of the Student Conduct Code and this Executive Order**

All issues regarding the hearing described in Article III. D or Article IV. H except those specifically noted are within the purview of the Hearing Officer for final determination. Questions of interpretation of the

Student Conduct Code or this Executive Order are outside the purview of the Hearing Officer and are determined by the Campus vice president for Student Affairs or designee.

F. **Delegation of Duties**

The duties of the president in these proceedings may be delegated to an appropriate vice president.

G. **Timelines**

The Campus may (but is not required to) extend timelines set forth in this Executive Order. Extensions shall be determined by the Campus president, vice president for Student Affairs, or a designee. The Student Conduct Administrator shall notify the Student charged, Complainant, and involved Campus administrators of any revised timeline.

H. **Parallel Judicial Proceedings**

Student Conduct Code proceedings are independent from court or other administrative proceedings. Discipline may be instituted against a Student also charged in civil or criminal courts based on the same facts that constitute the alleged violation of the Student Conduct Code. The Campus may proceed before, simultaneously with, or after any judicial or other administrative proceedings, except in cases involving Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking. In such cases, the Campus shall proceed without delay pursuant to Article IV below.

I. **Cases Involving Academic Dishonesty**

Academic dishonesty cases that occur in the classroom shall be handled by faculty members according to applicable Campus procedures. After action has been taken in any such case, the faculty member shall promptly notify the vice president for Student Affairs (or designee) and the Student Conduct Administrator of the matter so that the circumstances of the misconduct can be considered in their totality. A department's procedure for responding to cases of academic dishonesty is, by its nature, limited to the instance presented in a particular class. The Student Conduct Code process provides the Campus with an opportunity to consider the Student's entire circumstances, including whether the reported instance is part of a larger pattern of misconduct.

# Article III. Proceedings In Cases Not Involving Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking

This Article sets forth the procedures that govern all student disciplinary matters systemwide not involving allegations of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking.

A. **Complaint Intake/Investigation**

1. Whenever it appears that the Student Conduct Code has been violated, an oral or written complaint should be directed to the Student Conduct Administrator as soon as possible after the event takes place.

2. The Student Conduct Administrator shall promptly: investigate each complaint submitted; determine

whether it is appropriate to charge a Student with violation of the Student Conduct Code; and consider whether the University should implement an interim suspension (pursuant to Article VI), withdrawal of consent to remain on Campus,[3] or no contact orders concerning one or more members of the University community.

3. Investigations shall be concluded within **40 Working Days** after a complaint has been made.

B. **Notice of Conference and Conference**

1. Within **10 Working Days** after the investigation is complete, the Student Conduct Administrator shall notify the Student in writing that a conference has been scheduled or that the Student is directed to promptly schedule a conference with the Student Conduct Administrator.

2. The Notice of Conference shall include the following information:

   a. The sections of the Student Conduct Code and other Campus policies that are the subject of the charges;

   b. A factual description of the Student's alleged conduct that forms the basis for the charges;

   c. The proposed sanction or range of sanctions;

   d. The location on the Campus where the Student can view his or her discipline file, including the location (or copies) of the Campus policies that were violated;

   e. Notification of any immediate, interim suspension (see Article VI) and/or withdrawal of consent to remain on Campus;[4]

   f. Notification of the Student's right to be accompanied at the conference by an Advisor and the Campus policy regarding use of attorneys; and

   g. A copy of this Executive Order or notice of where the Student may obtain a copy. If an interim suspension has been imposed or consent to remain on Campus has been withdrawn by the time the Notice of Conference is sent, a copy of this Executive Order shall be enclosed, along with any other Campus policy referenced in the Notice of Conference.

3. The conference with the Student shall be conducted as follows:

   a. The conference shall not be recorded.

   b. The Student Conduct Administrator controls the conference and may exclude any Advisor who materially disrupts the conference.

   c. The conference requirement is waived if the Student fails to attend the conference or otherwise declines to cooperate.

4. The Student shall respond to the charges of misconduct at the conference. The Student Conduct Administrator shall determine which cases are appropriate for resolution (via written resolution agreement), taking into consideration the results of the investigation and any additional information provided by the Student during any conferences. If agreement can be reached with the Student as to an appropriate disposition, the matter shall be closed and the terms of the disposition shall be put in writing and signed by the Student and the University after the Student has been given a reasonable opportunity to review the proposed resolution agreement with an Advisor of the Student's choice. Suspension of one academic year or more, expulsion, withdrawal in lieu of suspension or expulsion, and withdrawals with pending misconduct investigations or disciplinary proceedings shall be entered on the Student's transcript permanently, without exception; this requirement shall not be waived in connection with any resolution agreement.

5. If the Student admits violating the Student Conduct Code, but no agreement can be reached with respect to the sanction, the Student may request a hearing on the sanction only.

6. Nothing in this Executive Order shall prevent the Student and the University from entering into a voluntary resolution of an actual or anticipated student disciplinary case at any time, provided that the Student is first given a reasonable opportunity to review any proposed resolution agreement with an Advisor of their choice.

C. **Notice of Hearing**

1. The Student Conduct Administrator shall issue a Notice of Hearing within **10 Working Days** after the conference has concluded.

2. The Notice of Hearing shall be issued under the following circumstances:

   a. If the Student fails to attend the conference or otherwise declines to cooperate;

   b. If the matter is not closed or the disposition is not memorialized in writing promptly after the conference; or

   c. If the Student admits violating the Student Conduct Code, but no agreement can be reached with respect to the sanction.

3. The Notice of Hearing shall include the following information:

   a. The sections of the Student Conduct Code and other Campus policies that are the subject of the charges;

   b. A factual description of the Student's alleged conduct that forms the basis for the charges;

   c. The proposed sanctions;

   d. Notification that neither the Hearing Officer nor the president is bound by the proposed sanction, and that the Hearing Officer may recommend, and/or the president may set, a more severe sanction;

   e. The date, time and place of the hearing;

   f. The location on the Campus where the Student may view his or her discipline file, including the location (or copies) of the Campus policies that were violated and any related investigation report;

   g. Notification that the Student may be accompanied at the hearing by an Advisor, and the Campus policy regarding use of attorneys. If attorneys are allowed, notification shall be given that any person who intends to bring an attorney as their Advisor must inform the Student Conduct Administrator of the attorney's name, address and phone number at least **5 Working Days** before the hearing. Failure to provide this notice in a timely manner will result in exclusion of the attorney from the hearing;

   h. Notification that the Student can waive the right to a hearing by accepting the proposed sanction;

   i. Notification of any immediate, interim suspension (see Article VI) and/or withdrawal of consent to remain on Campus;[5] and,

   j. A copy of this Executive Order or notice of where the Student may obtain a copy. If an interim suspension has been imposed or consent to remain on Campus has been withdrawn by the time the Notice of Hearing is sent, a copy of this Executive Order shall be enclosed, along with any other Campus policy referenced in the Notice of Hearing.

4. The Student Conduct Administrator shall schedule the hearing promptly, but in any event no sooner than **10 Working Days** after, and no later than **20 Working Days** after, the date of the Notice of Hearing.

5. A notice to appear at hearing shall be sent to any University-related witnesses at least **5 Working Days** before the hearing at the University-assigned or other primary e-mail addresses linked to these persons' University accounts.

6. The Notice of Hearing may be amended at any time, and the Student Conduct Administrator may (but is not required to) postpone the hearing for a reasonable period of time. If the notice is amended after a hearing is underway, the Hearing Officer may (but is not required to) postpone the hearing for a reasonable period of time.

D. **Hearing**

1. The hearing is closed to all persons except the Student Conduct Administrator; the Student charged; an Advisor; the Hearing Officer; and one person to assist the Hearing Officer in recording the hearing. Any party or witnesses who will be testifying shall attend the hearing in person unless the Student Conduct Administrator permits an exception (e.g., participation via videoconference or telephone). A police or security officer may also be present if deemed appropriate or necessary by the vice president for Student Affairs or Hearing Officer. The University will cooperate in providing University witnesses wherever possible, provided that they are identified at least **5 Working Days** before the hearing.

2. Hearings are intended to be educational rather than adversarial. The Hearing Officer controls the hearing. The Student Conduct Administrator and the Student charged each put on the evidence in their case and may each ask questions of the witnesses in whatever manner the Hearing Officer deems appropriate.

3. The Hearing Officer may ask questions of any witness, the Student charged, the Complainant, or the Student Conduct Administrator.

4. Formal rules of evidence applied in courtroom proceedings (e.g., California Evidence Code) do not apply in the hearing. All information that responsible persons are accustomed to rely upon in the conduct of serious affairs is considered. Hearsay may be considered and will be given the weight appropriate under all of the circumstances. Unduly repetitive information may be excluded.

5. The Hearing Officer shall make an official audio recording of the hearing (with assistance, at the Hearing Officer's discretion). The recording is University Property. No other recording of the hearing is permitted. The audio recording shall be retained by the Student Conduct Administrator in accordance with the Campus records/information retention and disposition schedule.

6. If the Student charged or Complainant fails to appear at the hearing without good cause, the hearing shall nevertheless proceed. The Student charged may not be found to have violated the Student Conduct Code solely because the Student charged failed to appear at the hearing. Nor may the Student charged be found not to have violated the Student Conduct Code solely because a Complainant or witness failed to appear at the hearing.

7. The Hearing Officer is responsible for maintaining order during the hearing and makes whatever rulings are necessary to ensure a fair hearing. Abusive or otherwise disorderly behavior that causes a material disruption is not tolerated. The Hearing Officer may eject or exclude anyone (including the Student charged and/or the Student's Advisor) whose behavior causes a material disruption.

8. The Hearing Officer's decisions regarding procedural issues are final.

9. Where there is more than one Student charged with misconduct in connection with a single occurrence or related multiple occurrences, the Student Conduct Administrator and the Students charged may agree to a single hearing. A Student may request consolidation of his or her case with others, or the Student Conduct Administrator may initiate the consolidation (subject to FERPA and other applicable privacy laws). The Student Conduct Administrator makes consolidation decisions, which are subject to review by the Hearing Officer and thereafter are final.

10. At any time during the hearing, the Student may waive the right to a hearing and accept the proposed sanction. Such a waiver must be in writing.

E. **Standard of Proof; Report and Recommendations of the Hearing Officer**

1. After the hearing, the Hearing Officer shall make findings of fact and conclusions about whether the Student violated the Student Conduct Code. The standard of proof the Hearing Officer shall use is whether the University's charge is sustained by a Preponderance of the Evidence. It is the University's burden to show that it is "more likely than not" that the Student violated the Student Conduct Code.

2. The Hearing Officer's report shall be based only on the information received at the hearing. The Hearing Officer shall not, prior to preparing the report, have substantive communications about the facts of the case with the Student Conduct Administrator, the Complainant, the Student charged, or the witnesses, unless both the Student Conduct Administrator and the Student charged are present.

3. The Hearing Officer shall submit a written report of findings and conclusions to the president, along with any recommended sanctions. The report shall be submitted to the Campus president within **10 Working Days** after the hearing.

F. **Final Decision/Notification**

The president shall review the Hearing Officer's report and issue a final decision.

1. The president may impose the recommended sanctions, adopt a different sanction or sanctions, reject sanctions altogether, or refer the matter back for further findings on specified issues. If the president adopts a different sanction than what is recommended by the Hearing Officer, the president must set forth the reasons in the final decision letter. The president's final decision letter shall be issued within **10 Working Days** after receipt of the Hearing Officer's report.

2. The president shall send his or her decision electronically to the Student at the University-assigned or other primary e-mail address linked to the Student's University account.

# Article IV. Proceedings in Cases involving Allegations of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking

*[NOTE: ARTICLE IV OF THIS EXECUTIVE ORDER DOES NOT APPLY IN CASES (I) ALLEGING SEXUAL MISCONDUCT BY A STUDENT THAT, (II) IF SUBSTANTIATED, COULD RESULT IN A SEVERE SANCTION (SUSPENSION OR EXPULSION), AND (III) WHERE CREDIBILITY OF ANY PARTY OR WITNESS IS CENTRAL TO THE FINDING. SEE ADDENDUM -- INVESTIGATION AND HEARING PROCESS – FOR STUDENTS ACCUSED OF SEXUAL MISCONDUCT.]*

This Article sets forth the procedures that govern all student disciplinary matters systemwide involving allegations of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking.

A. **DHR Administrator**

In accordance with Executive Orders 1096 and 1097, the DHR Administrator investigates complaints of Discrimination, Harassment, and Retaliation based on all Protected Statuses except Gender, determines whether a Student violated the Student Conduct Code, and prepares a report that includes findings and conclusions about whether the Student violated the Student Conduct Code. Unless the determination is appealed as provided in Executive Orders 1096 or 1097, it is final and binding in all subsequent proceedings.

B. **Title IX Coordinator**

The Title IX Coordinator (or designee) is responsible for investigating Complaints of Gender Discrimination, Harassment and Retaliation, including Sex Discrimination and Sexual Harassment, as well as Complaints of Sexual Misconduct, Domestic and Dating Violence, and Stalking. (See Executive Orders 1095, 1096 and 1097.) In accordance with Executive Orders 1096 and 1097, the Title IX Coordinator investigates those Complaints, determines whether a Student violated the Student Conduct Code, and prepares a report that includes findings of facts and conclusions about whether the Student violated the Student Conduct Code. Unless the determination is appealed as provided in Executive Orders 1096 or 1097, it is final and binding in all subsequent proceedings.

C. **Confidentiality**

Information provided to University employees in connection with any Complaint shall be considered private and may be shared with other University employees and law enforcement exclusively on a "need to know" basis. The University shall endeavor to honor any Complainant's or alleged victim's request for confidentiality; however, it must also weigh requests for confidentiality against its duty to provide a safe and nondiscriminatory environment for all members of the Campus community. Confidentiality, therefore, cannot be ensured. The Title IX Coordinator or DHR Administrator will determine whether confidentiality is appropriate given the circumstances of each incident. Executive Order 1095 identifies those categories of University employees who are required by law to maintain near or complete confidentiality (for example, in connection with allegations of Sexual Misconduct). Questions about rights and options with respect to confidentiality should be directed to the Campus Title IX Coordinator or DHR Administrator.

D. **Complaint/Investigation/Findings**

1. Complaints by Students against Students shall be investigated according to the procedures set forth in Executive Order 1097. The DHR Administrator or the Title IX Coordinator shall notify the Student Conduct Administrator of the status of any such Complaint, including any appeal to the Chancellor's Office (CO), as well as the investigation results (including findings, conclusions, and any Interim Remedies afforded to the Complainant). Where the investigative report finds a violation or the finding of a violation is sustained after appeal, the Student Conduct Administrator will initiate student conduct proceedings. The Student Conduct Administrator and the DHR Administrator or Title IX Coordinator will consult with respect to appropriate sanctions and Remedies.

2. Complaints by California State University (CSU) employees or Third Parties, as defined in Executive Order 1096 (e.g., vendors, auxiliary employees or Campus visitors) against Students shall be investigated according to the procedures set forth in Executive Order 1096. The DHR Administrator

or the Title IX Coordinator shall notify the Student Conduct Administrator of the status of any such Complaint, including any appeal to the CO, as well as the investigation results (including findings, conclusions, and any Interim Remedies afforded to the Complainant). Where the investigative report finds a violation or the finding of a violation is sustained after appeal, the Student Conduct Administrator will initiate student conduct proceedings. The Student Conduct Administrator and the DHR Administrator or Title IX Coordinator will consult with respect to appropriate sanctions and Remedies.

3. Unless the CO notifies the Campus that an appeal has been filed, investigative findings pursuant to Executive Orders 1096 or 1097 become final **11 working days** after the date of the final Notice of Investigation Outcome issued pursuant to those Executive Orders. If an appeal is filed, the investigative findings do not become final until the appeal has been exhausted.

E. **Conference with Complainant**

The Student Conduct Administrator shall offer the Complainant(s) the opportunity to confer with the Student Conduct Administrator. Any conference with the Complainant(s) shall occur within **10 Working Days** after the Student Conduct Administrator receives the final investigation report – or, if an appeal was filed, the final appeal outcome. The purpose of the conference is to provide an opportunity for the Complainant to provide input concerning appropriate sanctions and Remedies in light of the investigative findings. Therefore, it should take place before the Notice of Conference, described in section F, is served on the Student charged. The Complainant may be accompanied by an Advisor.

F. **Notice of Conference and Conference with the Student Charged**

1. Within **10 Working Days** after the Student Conduct Administrator receives the final investigation report – or, if an appeal was filed, the final appeal outcome, and after the Complainant has been given 10 Working Days to have a Conference with the Student Conduct Administrator, the Student Conduct Administrator shall notify the Student charged in writing that a conference has been scheduled or that the Student is directed to promptly schedule a conference with the Student Conduct Administrator.

2. The Notice of Conference shall include:

   a. The sections of the Student Conduct Code and other Campus policies that are the subject of the proposed discipline;

   b. The proposed sanction or range of sanctions, including sanctions designed to provide Remedies to the Complainant(s);

   c. The location on the Campus where the Student can view his or her discipline file, including the location (or copies) of the Campus policies that were violated;

   d. Notification of any immediate, interim suspension (see Article VI) and/or withdrawal of consent to remain on Campus[7];

   e. Notification of the Student's right to be accompanied at the conference by an Advisor; and

   f. A copy of this Executive Order or notice of where the Student may obtain a copy. If an interim suspension has been imposed or consent to remain on Campus has been withdrawn by the time the Notice of Conference is sent, a copy of this Executive Order shall be enclosed, along with any other Campus policy referenced in the Notice of Conference.

3. Conference with Student charged and/or Complainant

The conference with the Student and any conference with the Complainant(s) shall be conducted as follows:

   a. The conference shall not be recorded.

   b. The Student Conduct Administrator controls the conference and may exclude any Advisor who materially disrupts the conference.

   c. The conference requirement is waived if the Student or Complainant(s) fails to attend the conference or otherwise declines to cooperate.

4. The Student Conduct Administrator shall, in consultation with and agreement from the DHR Administrator or Title IX Coordinator, determine which cases are appropriate for resolution (via written resolution agreement), taking into consideration the investigation report and any additional information provided by the Student charged and the Complainant(s) during any conferences. If a proposed resolution agreement can be reached with the Student charged as to an appropriate disposition, the terms of the proposed disposition shall be put in writing and signed by the Student and the University after the Student has been given a reasonable opportunity to review the proposed resolution agreement with an Advisor of the Student's choice. The Student charged must be informed that any proposed resolution may be appealed by the Complainant and is not final until any such appeal is exhausted. Suspension of one academic year or more or expulsion, withdrawal in lieu of suspension or expulsion, and withdrawal with pending misconduct investigation or disciplinary proceedings shall be entered on the Student's transcript permanently without exception; this requirement shall not be waived in connection with any resolution agreement.

5. The Student Conduct Administrator shall promptly notify the DHR Administrator or the Title IX Coordinator of the outcome of the conferences with the Student and the Complainant(s). If the case does not proceed to hearing, the DHR Administrator (or the Title IX Coordinator) shall at that time:

   a. Notify the Complainant(s) of the outcome of the conference, including any proposed resolution agreement as well as the Complainant's right to appeal any proposed resolution agreement to the CO pursuant to Article IV. J.

   b. Take any appropriate further steps to address the effects of any Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking.

   c. Identify and address any remaining systemic or other patterns of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating or Domestic Violence, or Stalking at the Campus.

6. Discipline cases may be resolved through the conference process. It is, however, not appropriate for a Complainant to be required to "work out the problem" directly with the Student charged, and in no event should any meeting between Complainant and the Student be required.

G. **Notice of Hearing on Sanctions**

1. If not resolved, the Student Conduct Administrator shall issue a Notice of Hearing promptly after the conference. Simultaneous notice shall also be provided to the Complainant and the DHR Administrator or the Title IX Coordinator. The Notice of Hearing shall be issued within **5 Working Days** after the conference has concluded.

2. The Notice of Hearing shall be issued under the following circumstances:

   a. If the Student charged fails to attend the conference or otherwise declines to cooperate;

   b. If the matter is not closed or the disposition is not memorialized in writing promptly after the conference; or

   c.  No agreement can be reached with respect to the sanction.

3. The Notice of Hearing shall include the following information:

   a.  The sections of the Student Conduct Code and other Campus policies that are the subject of the proposed sanctions;

   b.  The proposed sanctions, including sanctions designed to provide protection/Remedies to the Complainant(s);

   c.  Notification that neither the Hearing Officer nor the president is bound by the proposed sanction, and that the Hearing Officer may recommend, and/or the president may set, a more severe sanction;

   d.  The date, time and place of the hearing;

   e.  The location on the Campus where the Student may view his or her discipline file, including the location (or copies) of the Campus policies that were violated, and any related investigation report;

   f.  Notification that the Student charged and the Complainant each may be accompanied at the hearing by an Advisor. Notification shall be given that any person who intends to bring an attorney must inform the Student Conduct Administrator of the attorney's name, address and phone number at least **5 Working Days** before the hearing. Failure to provide this notice in a timely manner will result in exclusion of the attorney from the hearing;

   g.  Notification that the Student can waive the right to a hearing by accepting the proposed sanction, subject to the Complainant's right to appeal (subject to the approval of the DHR Administrator or Title IX Coordinator);

   h.  Notification of any immediate, interim suspension (see Article VI) and/or withdrawal of consent to remain on Campus[6]; and

   i.  A copy of this Executive Order or notice of where the Student and/or Complainant may obtain a copy. If an interim suspension has been imposed or consent to remain on Campus has been withdrawn by the time the Notice of Hearing is sent, a copy of this Executive Order shall be enclosed, along with any other Campus policy referenced in the Notice of Hearing.

4. The Student Conduct Administrator shall schedule the hearing promptly, but in any event no sooner than **10 Working Days** after, and no later than **20 Working Days** after, the date of the Notice of Hearing.

5. A notice to appear at hearing shall be sent to any University-related witnesses and to the Complainant(s) at least **5 Working Days** before the hearing at the University-assigned or other primary e-mail addresses linked to these persons' University accounts.

6. The Notice of Hearing may be amended at any time, and the Student Conduct Administrator may (but is not required to) postpone the hearing for a reasonable period of time. If the notice is amended after a hearing is underway, the Hearing Officer may (but is not required to) postpone the hearing for a reasonable period of time.

7. The DHR Administrator or Title IX Coordinator retain ultimate authority regarding whether a proposed resolution agreement may be entered into after the Notice of Hearing has been issued, or after the Hearing has commenced. Factors to consider will vary based on the facts and circumstances of the specific case.

H.  **Hearing on Sanctions**

The findings and conclusions of the investigations conducted in accordance with Executive Orders 1096 and 1097, once any appeals are exhausted, are final and binding. The hearing is limited to determining appropriate sanctions; the findings of the investigation are not under review.

1. The hearing is closed to all persons except the Student Conduct Administrator; the Student charged; the Complainant(s); their respective Advisors; appropriate witnesses while they are testifying; any other alleged victims while they are testifying, together with their Advisors; the Hearing Officer; and one person to assist the Hearing Officer in recording the hearing. All parties and witnesses who will testify must attend the hearing in person unless the Student Conduct Administrator permits an exception (e.g., participation via videoconference or telephone). A police or security officer may also be present if deemed appropriate or necessary by the vice president for Student Affairs or Hearing Officer. The University will cooperate in providing University witnesses wherever possible, provided that they are identified at least **5Working Days** before the hearing.

2. The Hearing Officer controls the hearing. Except as provided in Article IV. H, sections 6-8 below, the Student Conduct Administrator and the Student charged each put on the evidence in their case and may each ask questions of the witnesses in whatever manner the Hearing Officer deems appropriate.

3. The Hearing Officer may ask questions of any witness, the Student, the Complainant, Student Conduct Administrator, the Title IX Coordinator or the DHR Administrator.

4. The Complainant(s) may be present while evidence is being presented concerning the charges that relate to him/her, unless the Hearing Officer grants a request that the Complainant(s) be excused during certain testimony to protect privacy rights and/or pursuant to FERPA.

5. The DHR Administrator or the Title IX Coordinator may attend the hearing in its entirety.

6. Questions may not be posed to Complainants about their past sexual behaviors involving any persons other than the Student charged.

7. The Hearing Officer shall ask any questions of the Complainant and other witnesses on behalf of the Student charged (who shall give the Hearing Officer a written list of questions), unless the Complainant(s) or witness expressly waives this requirement and consents to questioning directly by the Student.

8. The Hearing Officer shall ask any questions of the Student and other witnesses on behalf of the Complainant (who shall give the Hearing Officer a written list of any such questions), unless the Complainant in question expressly waives this requirement.

9. The investigation report and any CO Appeal Response prepared pursuant to Executive Orders 1096 or 1097 shall be entered into evidence at the hearing, redacted as appropriate to protect private (e.g. contact) information or as otherwise required by law.

10. Formal rules of evidence applied in courtroom proceedings (e.g., California Evidence Code) do not apply in the hearing. All information that responsible persons are accustomed to rely upon in the conduct of serious affairs is considered. Hearsay may be considered and will be given the weight appropriate under all of the circumstances. Unduly repetitive information may be excluded.

11. The Hearing Officer shall make an official audio recording of the hearing (with assistance, at the Hearing Officer's discretion). The recording is University Property. No other recording of the hearing is permitted. The audio recording shall be retained by the Student Conduct Administrator in accordance with the Campus records/information retention and disposition schedule.

12. If the Student charged fails to appear at the hearing without good cause, the hearing shall nevertheless proceed.

13. The Hearing Officer is responsible for maintaining order during the hearing and makes whatever rulings are necessary to ensure a fair hearing. Abusive or otherwise disorderly behavior that causes a material disruption is not tolerated. The Hearing Officer may eject or exclude anyone (including the Student, the Complainant, and Advisors) whose behavior causes a material disruption.

14. Where there is more than one Student facing sanctions in connection with a single occurrence or related multiple occurrences, the Student Conduct Administrator and the Students charged may agree to a single hearing. A Student may request consolidation of his or her case with others, or the Student Conduct Administrator may initiate the consolidation (subject to FERPA and other applicable privacy laws). The Student Conduct Administrator makes consolidation decisions, which are subject to review by the Hearing Officer and thereafter are final.

15. At any time during the hearing, and subject to the approval of the DHR Administrator or Title IX Coordinator, the Student charged may waive the right to a hearing and accept the proposed sanction, subject to the Complainant's right to appeal. Such a waiver must be in writing. The DHR Administrator or Title IX Coordinator retain ultimate authority regarding whether a proposed resolution agreement may be entered into after the Notice of Hearing has been issued, or after the Hearing has commenced. Factors to consider will vary based on the facts and circumstances of the specific case.

16. The Hearing Officer shall submit a written report to the president recommending sanctions, if any, as well as any recommendations regarding additional Remedies, including but not limited to restricting the Student's contact with, or physical proximity to, the Complainant or other persons. The report shall include any mitigating or aggravating factors relied upon by the Hearing Officer in reaching the recommendations. The report shall be submitted within **10 Working Days** after the hearing.

   The Hearing Officer's report shall be based only on the investigative report and the information received at the hearing. The Hearing Officer shall not, prior to preparing the report, have substantive communications about the facts of the case with the Student Conduct Administrator, the Complainant, the Student, the witnesses, or DHR Administrator or the Title IX Coordinator, unless both the Student Conduct Administrator and the Student are present.

I. **President's Sanction Decision/Notification**

The president shall review the investigative report and the Hearing Officer's report and issue a decision concerning the appropriate sanction.

1. The president may impose the recommended sanctions, adopt a different sanction or sanctions, or reject sanctions altogether. If the president adopts a different sanction than what is recommended by the Hearing Officer, the president must set forth the reasons in the decision letter. The president's decision letter shall be issued within **10 Working Days** after receipt of the Hearing Officer's report.

2. The president shall simultaneously send the decision electronically to the Student charged and Complainant(s) at the University-assigned or other primary e-mail address linked to their University accounts. The decision shall also be sent to the Student Conduct Administrator and the Hearing Officer.

3. The decision letter shall include:

   a. The outcome of the hearing on sanctions, including any sanction imposed and the name of the

Student charged; and

    b. A copy of the Hearing Officer's report, redacted as appropriate or as otherwise required by law.

    c. Notice of the Complainant's and Student's right to appeal to the CO.

4. The president shall also send the decision to the DHR Administrator or the Title IX Coordinator so that they may determine whether any additional Remedies or steps shall be afforded or undertaken in order to maintain a safe and nondiscriminatory University environment.

5. Unless the CO notifies the campus that an appeal has been filed, the president's sanction decision become final **11 Working Days** after the date of the decision letter.

J. **Appeal of Sanction to the Chancellor's Office**

The Complainant and Student charged each may file an appeal of the president's decision of appropriate sanctions to the CO no later than **10 Working Days** after the date of the president's decision letter. The Complainant may also appeal any proposed sanctions agreed to as part of a proposed resolution agreement with the Student charged either in the conference procedure described above or at any time thereafter. Such an appeal must be filed within **10 Working Days** after the date of notice to the Complainant of the proposed resolution agreement.

1. The appeal request shall be in writing and shall indicate the basis of the appeal. Sanction appeals are limited to a determination as to whether the sanction is reasonable under the facts and circumstances as determined by the investigation and whether any prejudicial procedural errors occurred during the hearing. The CO may conduct an interview with the appealing party to clarify the written appeal, at the CO's discretion.

2. A sanction decision appeal shall be addressed to:

Equal Opportunity and Whistleblower Compliance Unit
Systemwide Human Resources
Office of the Chancellor
401 Golden Shore, 4th Floor
Long Beach, California 90802
eo-wbappeals@calstate.edu

3. Acknowledgement of Appeal. The CO shall provide prompt written acknowledgement of the receipt of the appeal to the appealing party, and will provide written notification of the appeal to the other party, the campus DHR Administrator or Title IX Coordinator, and the Campus president (or designee).

4. Reasonable Accommodations. The CO will provide reasonable accommodations to any party or witness with a qualified Disability during the appeal process upon request by the person needing the accommodation. A reasonable accommodation may include an extension of time to file or respond to an appeal. The timeframe for CO response to an appeal will automatically be adjusted for the time needed, if any, to provide reasonable accommodations

5. Scope of Review. The CO appeal review shall be limited in scope to determining whether the sanction is reasonable under the facts and circumstances as determined by the investigation and whether any prejudicial procedural errors occurred during the hearing. The CO appeal review will not involve a new investigation and will not consider evidence that was not introduced during the investigation or hearing. The record will be limited to the record at the hearing.

6. CO Appeal Response. The CO shall issue a final appeal response to the parties, the DHR Administrator or Title IX Coordinator, and the campus president (or designee) no later than **10 Working Days** after receipt of the written appeal unless the timeline has been extended under Article V. E of Executive Orders 1096 or 1097.

7. The CO Appeal Response shall include a summary of the issues raised on appeal, a summary of the evidence considered, the determination(s) reached regarding the issues identified within the written appeal, a decision about whether the president's sanction decision is reasonable, and, where applicable, a decision regarding the final sanction.

8. Notification of CO Appeal Response. A copy of the CO final appeal response shall be forwarded to the Complainant and Student charged, the DHR Administrator or Title IX Coordinator, and the president (or designee).

K. **Other Student Conduct Code Violations Related to Incidents of Sexual Misconduct, Dating or Domestic Violence, or Stalking**

Alleged victims and witnesses should not be deterred from reporting any incidents of Sexual Misconduct, Dating or Domestic Violence, or Stalking out of a concern that they might be disciplined for related violations of drug, alcohol, or other University policies. The University's primary concern is the safety of the Campus community; therefore, a person who participates as a Complainant or witness in investigations or proceedings involving Sexual Misconduct, Dating or Domestic Violence, or Stalking shall not be subject to discipline for related violations of the Student Conduct Code at or near the time of the incident unless the University determines the violation was egregious, including but not limited to plagiarism, cheating, academic dishonesty, or conduct that places the health and safety of another person at risk.

# Article V. Sanctions

A. The following sanctions may be imposed for violation of the Student Conduct Code:

1. **Restitution**. Compensation for loss, damages or injury. This may include appropriate service and/or monetary material replacement.

2. **Loss of Financial Aid**. Scholarships, loans, grants, fellowships and any other types of state financial aid given or guaranteed for the purposes of academic assistance can be conditioned, limited, canceled or denied.[8]

3. **Educational and Remedial Sanctions**. Assignments, such as work, research, essays, service to the University or the community, training, counseling, removal from participation in recognized student clubs and organizations (e.g., fraternities and sororities), and/or University events, or other remedies intended to discourage similar misconduct or as deemed appropriate based upon the nature of the violation.

4. **Denial of Access to Campus or Persons**. A designated period of time during which the Student is not permitted: (i) on University Property or specified areas of Campus,[9] or (ii) to have contact (physical or otherwise) with the Complainant, witnesses or other specified persons.

5. **Disciplinary Probation**. A designated period of time during which privileges of continuing in Student status are conditioned upon future behavior. Conditions may include the potential loss of specified privileges to which a current Student would otherwise be entitled, or the probability of more severe disciplinary sanctions if the Student is found to violate the Student Conduct Code or any University policy during the probationary period.

6. **Suspension**. Temporary separation of the Student from active Student status or Student status.

    a. A Student who is suspended for less than one academic year shall be placed on inactive Student (or equivalent) status (subject to individual Campus policies) and remains eligible to re-enroll at the University (subject to individual Campus enrollment policies) once the suspension has been served. Conditions for re-enrollment may be specified.

    b. A Student who is suspended for one academic year or more shall be separated from Student status but remains eligible to reapply to the University (subject to individual Campus application polices) once the suspension has been served. Conditions for readmission may be specified.

    c. Suspension of one academic year or more, withdrawals in lieu of suspension, and withdrawals with pending misconduct investigations or disciplinary proceedings shall be entered on the Student's transcript permanently without exception; this requirement shall not be waived in connection with a resolution agreement.

7. **Expulsion**. Permanent separation of the Student from Student status from the California State University system. Expulsion, withdrawal in lieu of expulsion, and withdrawal with pending misconduct investigation or disciplinary proceeding shall be entered on the Student's transcript permanently, without exception; this requirement shall not be waived in connection with a resolution agreement.

B. **Multiple Sanctions**

More than one sanction may be imposed for a single violation.

C. **Good Standing**

A Student is not considered to be in good standing for purposes of admission to the University while under a sanction of suspension or expulsion, or while his or her admission or re-admission has been qualified.[10]

D. **Administrative Hold and Withholding a Degree**

The University may place an administrative hold on registration transactions and release of records and transcripts of a Student who has been sent written notice of a pending investigation or disciplinary case concerning that Student, and may withhold awarding a degree otherwise earned until the completion of the process set forth herein, including the completion of all sanctions imposed.

E. **Record of Discipline**

A record of disciplinary probation or suspension is entered on a Student's transcript, with beginning and end date, for the duration of the sanction. A record of expulsion or suspension for one academic year or more shall note the effective date of discipline and remains on the transcript permanently, without exception. A record of withdrawal in lieu of suspension or expulsion and withdrawal with pending misconduct investigation or disciplinary proceeding remains on the transcript permanently, without exception. These requirements shall not be waived in connection with any resolution agreement.

# Article VI. Interim Suspension

A. **Grounds**

A president may impose an interim suspension pursuant to Title 5, California Code of Regulations section

41302 where there is reasonable cause to believe that separation of a Student is necessary to protect the personal safety of persons within the University community or University Property, and to ensure the maintenance of order.

An investigative finding of a violation of Executive Orders 1096 or 1097 standing alone may be sufficient to constitute reasonable cause to believe that an interim suspension is necessary to protect the personal safety of persons within the University community or University Property, and to ensure the maintenance of order.

B. **Notice and Opportunity for Hearing**

A Student placed on interim suspension shall be given prompt notice of the charges pending against him or her as enumerated in Title 5, California Code of Regulations section 41302 and a factual description of the conduct alleged to form the basis for the charges. The Student may request a hearing to determine whether continued interim suspension is appropriate by filing a request with the Student Conduct Administrator. The Student Conduct Administrator will notify the Hearing Officer.

In matters subject to Article IV, the Student Conduct Administrator will also notify the Complainant and the Title IX Coordinator or DHR Administrator. The Complainant may participate in any hearing conducted pursuant to this section.

Within **10 Working Days** of the request, the Hearing Officer shall conduct a hearing to determine whether there is reasonable cause to believe that the continued interim separation of the Student is necessary to protect the personal safety of persons within the University community or University Property, and to ensure the maintenance of order. [11]

The hearing is conducted pursuant to the provisions of Article III. D or Article IV. H of these procedures, as appropriate.

The president shall review the Hearing Officer's report and shall promptly issue a final decision regarding interim suspension. Notice to the Student charged and to the Complainant (in matters subject to Article IV) shall be sent to the University-assigned or other primary e-mail address linked to the party's University account. The final decision shall also be provided to the DHR Administrator or the Title IX Coordinator where appropriate.

If the University establishes that there is reasonable cause for the interim suspension to continue, it shall remain in effect until the University closes the disciplinary matter, whether by resolution agreement, final decision or dropped charges, but in no case longer than the president has determined is required to protect the personal safety of persons within the University community or University Property, and to ensure the maintenance of order.

C. **Denial of Presence on Campus**

During the period of an interim suspension, the Student charged may not, without prior written permission from the Campus president, enter any Campus of the California State University other than to attend the hearing regarding the merits of his or her interim suspension and any disciplinary hearing. The president may also restrict the Student's participation in University-related activities on a case-by-case basis, such as attending off-Campus activities and/or participating in on-line classes. Violation of any condition of

interim suspension shall be grounds for expulsion.[12]

# Article VII. Admission or Readmission

Applicants for admission or readmission into any University program are subject to appropriate sanctions for violations of the Student Conduct Code, including qualification, revocation or denial of admission or readmission. Any such sanction shall be determined by a hearing held pursuant to Article III or Article IV, as appropriate. For Students who withdraw while a disciplinary matter is proceeding, the Campus has discretion whether to continue proceedings or hold proceedings in abeyance.

# Article VIII. Definitions

For purposes of this Executive Order, the following definitions apply:

1096 and 1097 for a more detailed description of Affirmative Consent.

A. **Adverse Action** means an action that has a substantial and material adverse effect on the Complainant's ability to participate in a University program or activity free from Discrimination, Harassment or Retaliation, as those terms are defined below. Minor or trivial actions or conduct not reasonably likely to do more than anger or upset a Complainant does not constitute an Adverse Action.

B. **Advisor:** The Complainant and the Student charged may each elect to be accompanied by an Advisor of their choice to any meeting, interview or hearing regarding the allegations, subject to the limitations set forth above in Article II. C. The Advisor may be anyone, including, for Complainants, a Sexual Assault Victim's Advocate (defined below), provided the Advisor is not a person with information relevant to the allegations who may be interviewed or testify during any related investigation or hearing. The Advisor may not answer questions regarding the subject matter of the investigation for the Complainant or the Student charged. Where attorneys are permitted, the Complainant and the Student charged may each elect an attorney as an Advisor. Any person who has a license (active or inactive) to practice law is considered an attorney for purposes of this Executive Order.

C. **Affirmative Consent** means an informed, affirmative, conscious, voluntary and mutual agreement to engage in sexual activity. It is the responsibility of each person involved in the sexual activity to ensure that he or she has the Affirmative Consent of the other participant(s) to engage in the sexual activity. Lack of protest or resistance does not mean consent, nor does silence mean consent.

Affirmative Consent can be withdrawn or revoked. Affirmative Consent cannot be given by a person who is incapacitated.

A person with a medical or mental Disability may also lack the capacity to give consent. Sexual activity with a minor (under 18 years old) is never consensual because a minor is considered incapable of giving legal consent due to age.

See Executive Orders 1096 and 1097 for a more detailed description of Affirmative Consent.

D. **Age** means how old a person is, or the number of years for the date of a person's birth and is a Protected Status.[13]

E. **California State University (CSU)** means the 23 campus system of the California State

University, including the Chancellor's Office (CO).

F.   **Campus or University** means any of the 23 campuses of the CSU or the CO.

G.   **CO Appeal Response** refers to the decision provided to the Complainant and the Student charged upon completion of the Appeal Process.

H.   **Complainant** means an individual who is eligible to file a Complaint to report a violation of Executive Orders 1096 or 1097. It also includes any person who is reported to have experienced a violation of Executive Orders 1096 or 1097 in cases where some other person has made a report on that person's behalf. A Complainant may also be referred to as a party to the Complaint.

I.   **Complaint** means a report of a violation of Executive Orders 1096 or 1097 alleging Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating Violence, Domestic Violence, or Stalking or a report under 5 California Code of Regulations Section 41301.

J.   **Dating Violence** is abuse committed by a person who is or has been in a social or dating relationship of a romantic or intimate nature with the victim.[14] This may include someone the victim just met; i.e., at a party, introduced through a friend, or on a social networking website. For purposes of this definition, "abuse" means intentionally or recklessly causing or attempting to cause bodily injury or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another. Abuse does not include non-physical, emotional distress or injury.

K.   **DHR (Discrimination, Harassment, and Retaliation) Administrator** means the MPP employee at each Campus who is designated to administer portions of this Executive Order and coordinate compliance with the laws prohibiting Discrimination, Harassment and Retaliation for all Protected Statuses except Gender. The DHR Administrator may delegate tasks to one or more designees. The Campus president may assign the roles of the DHR Administrator and Title IX Coordinator (defined below) to the same person.

L.   **Disability** means mental or physical disability as defined in California Education Code § 66260.5 and California Government Code § 12926, and is a Protected Status.

M.   **Discrimination** means Adverse Action taken against a Student by the CSU, a CSU employee, another Student, or a Third Party because of a Protected Status.

N.   **Domestic Violence** is abuse committed against someone who is a current or former spouse; current or former cohabitant; someone with whom the abuser has a child; someone with whom the abuser has or had a dating or engagement relationship; or a person similarly situated under California domestic or family violence law. Cohabitant means two unrelated persons living together for a substantial period of time, resulting in some permanency of relationship. Factors that may determine whether persons are cohabiting include, but are not limited to: (1) sexual relations between the parties while sharing the same living quarters; (2) sharing of income or expenses; (3) joint use or ownership of property; (4) whether the parties hold themselves out as husband and wife; (5) the continuity of the relationship; and, (6) the length of the relationship. For purposes of this definition, "abuse" means intentionally or recklessly causing or attempting to cause bodily injury or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another.[15] Abuse does not include non-physical, emotional distress or injury.

O.   **Gender** means sex, and includes a person's gender identity and gender expression.[16] Gender expression means a person's gender-related appearance and behavior whether or not

stereotypically associated with the person's assigned sex at birth. Sex includes but is not limited to pregnancy, childbirth or associated medical condition(s).[17] They are Protected Statuses.

P.   **Genetic Information** is a Protected Status and means[17]:
   - The Student's genetic tests.
   - The genetic tests of the Student's family members.
   - The manifestation of a disease or disorder in the Student's family members.
   - Any request for, or receipt of genetic services, or participation in clinical research that includes genetic services, by a Student or any Student's family member.
   - Genetic Information does not include information about any Student's sex or age.

Q.   **Harassment** means unwelcome conduct that is sufficiently severe, persistent or pervasive that its effect, whether or not intended, could be considered by a reasonable person in the shoes of the Complainant, and is in fact considered by the Complainant, because of the Complainant's Protected Status, as limiting the Complainant's ability to participate in or benefit from the services, activities or opportunities offered by the University.

R.   **Investigator** means the person tasked by a Campus with investigating a Complaint. All investigators shall receive annual training regarding such issues as the laws governing Discrimination, Harassment and Retaliation; Title IX and VAWA/Campus SaVE Act (as defined below); as well as other related state and federal laws prohibiting Discrimination, Harassment and Retaliation based on Gender or Sex, including Sex Discrimination, Sexual Harassment, Sexual Misconduct, Domestic Violence, Dating Violence, and Stalking; Complainant, Student, Employee, and witness privacy rights; and the Family Educational Rights and Privacy Act of 1974 (FERPA). For matters involving Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating or Domestic Violence, or Stalking, the Investigator shall also receive annual training on how to conduct an investigation process that protects the safety of the Complainant(s)/victim(s) and the University community. (See also Executive Order 1095 Revised regarding required training for Sexual Harassment and Sexual Misconduct investigations.)

If delegated, the DHR Administrator or the Title IX Coordinator (for Complaints alleging Sex Discrimination, Sexual Harassment, Sexual Misconduct, Dating or Domestic Violence, or Stalking) shall monitor, supervise, and oversee the investigation to ensure that it is conducted in accordance with the standards, procedures and timelines set forth in Executive Orders 1096 and 1097 Revised.

The Investigator may be the DHR Administrator, the Title IX Coordinator, or their designee, provided that the person shall be an MPP Employee or an external consultant.

S.   **MPP Employee** means a Management Personnel Plan employee who has been designated as a "management" or "supervisory" employee under the provisions of the Higher Education Employer-Employee Relations Act.[19]

T.   **Nationality** includes citizenship, country of origin, and national origin and is a Protected Status.[20]

U.   **Parties** to a Complaint are the Complainant(s) and the Student(s) charged.

V.   **Preponderance of the Evidence** means the greater weight of the evidence; i.e., that the evidence on one side outweighs, preponderates over, or is more than, the evidence on the other side. The Preponderance of the Evidence is the applicable standard for demonstrating facts and reaching conclusions in an investigation conducted pursuant to this Executive Order or Executive Orders 1096 and 1097.

W.  **Protected Status** includes Age, Disability, Gender, Genetic Information, Nationality, Race or Ethnicity, Religion, Sexual Orientation, and Veteran or Military Status.

X.  **Race or Ethnicity** includes ancestry, color, ethnic group identification, and ethnic background and is a Protected Status.[21]

Y.  **Religion** is a Protected Status and includes all aspects of religious belief, observance, and practice, and includes agnosticism and atheism. Religious dress and grooming practices, such as wearing religious clothing, head or face covering, jewelry, and artifacts, are part of a Complainant's religious observance or belief.[22]

Z.  **Remedies** mean actions taken to correct allegations and/or reported violations of Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating Violence, Domestic Violence, or Stalking. Remedies can include discipline of the perpetrator.

**Interim Remedies** shall be offered prior to the conclusion of an investigation in order to immediately stop any wrongdoing and/or reduce or eliminate any negative impact, when appropriate. Persons reporting that they have been the victim of Discrimination, Harassment, Retaliation, Sexual Misconduct, Domestic Violence, Dating Violence, or Stalking must be provided reasonable and available Interim Remedies, if requested, regardless of whether the person chooses to report the conduct to Campus police or local law enforcement, and regardless of whether an investigation is conducted under Executive Order 1096 or 1097. Examples may include offering the option of psychological counseling services, changes to academic or living situations, completing a course and/or courses on-line (if otherwise appropriate), academic tutoring, arranging for the re-taking of a class or withdrawal from a class without penalty, and/or any measure as appropriate to stop further alleged harm until an investigation is concluded or a resolution is reached. The DHR Administrator or Title IX Coordinator shall assist and provide the person with reasonable Remedies as requested throughout the reporting, investigative, and disciplinary processes, and thereafter.

AA.  **Retaliation** means Adverse Action taken against a Student because the Student has or is believed to have:

1.  Exercised rights under Executive Orders 1096 or 1097, or Title V of the California Code of Regulations;

2.  Reported or opposed conduct which the Student reasonably and in good faith believes is in violation of Executive Orders 1096 or 1097, or Title V of the California Code of Regulations;

3.  Assisted or participated in a related investigation/proceeding regardless of whether the Complaint was substantiated; or

4.  Assisted someone in reporting or opposing a violation of Executive Orders 1096 or 1097, or Title V of the California Code of Regulations, or assisted someone in reporting or opposing Retaliation under Executive Orders 1096 or 1097, or Title V of the California Code of Regulations.

Retaliation may occur whether or not there is a power or authority differential between the individuals involved.

BB.  **Sexual Assault Victim's Advocate** refers to employees or third party professionals appointed to support victims/survivors/Complainants of Sexual Misconduct. They must be certified and have received specialized training to provide advice and assistance, including but not limited to the

provision of information about available options in the Complaint, law enforcement, legal, and medical processes and with emotional and decision making support. Sexual Assault Victim's Advocates may accompany victims/survivors/Complainants as a support person and assist in seeking services. They are committed to maintain the highest possible level of confidentiality permissible under state and federal law in their communications with the persons they assist.[23] Sexual Assault Victim's Advocates are appointed based on experience and demonstrated ability to effectively provide services to victims/survivors/Complaints. See Executive Order 1095 for more detailed information.

CC.  **Sexual Harassment**, a form of Sex Discrimination, is unwelcome verbal, nonverbal or physical conduct of a sexual nature that includes, but is not limited to, sexual advances, requests for sexual favors, and any other conduct of a sexual nature where:

1. Submission to, or rejection of, the conduct is explicitly or implicitly used as the basis for any decision affecting a Complainant's academic status or progress, or access to benefits and services, honors, programs, or activities available at or through the University; **or**

2. The conduct is sufficiently severe, persistent or pervasive that its effect, whether or not intended, could be considered by a reasonable person in the shoes of the Complainant, and is in fact considered by the Complainant, as limiting his or her ability to participate in or benefit from the services, activities or opportunities offered by the University; **or**

3. The conduct is sufficiently severe, persistent or pervasive that its effect, whether or not intended, could be considered by a reasonable person in the shoes of the Complainant, and is in fact considered by the Complainant, as creating an intimidating, hostile or offensive environment.

For example, it would include being forced to engage in unwanted sexual contact as a condition of membership in a student organization or frequently being exposed to unwanted images of a sexual nature in a classroom that are unrelated to the coursework.

Sexual Harassment also includes acts of verbal, non-verbal or physical aggression, intimidation or hostility based on Gender or sex-stereotyping, even if those acts do not involve conduct of a sexual nature.

Sexual Harassment is unwelcome conduct of a sexual nature. While romantic and/or social relationships between members of the University community may begin as consensual, they may evolve into situations that lead to charges of Sexual Harassment or Sexual Misconduct, including Domestic Violence, Dating Violence, or Stalking.

Conduct that does not amount to Sexual Harassment may still be unprofessional or violate other University policies.

DD.  **Sexual Misconduct**: All sexual activity between members of the CSU community must be based on Affirmative Consent. Engaging in any sexual activity without first obtaining Affirmative Consent to the specific activity is Sexual Misconduct, whether or not the conduct violates any civil or criminal law.

Sexual activity includes, but is not limited to, kissing, touching intimate body parts, fondling, intercourse, penetration of any body part, and oral sex. It also includes any unwelcome physical sexual acts, such as unwelcome sexual touching, Sexual Assault, Sexual Battery, Rape, and Dating Violence. When it is based on Gender, Domestic Violence and Stalking also constitute

Sexual Misconduct. Sexual Misconduct may include physical force, violence, threat, or intimidation, ignoring the objections of the other person, causing the other person's intoxication or incapacitation through the use of drugs or alcohol, or taking advantage of the other person's incapacitation (including voluntary intoxication). Men as well as women can be victims of these forms of Sexual Misconduct. Sexual activity with a minor is never consensual when the Complainant is under 18 years old, because the minor is considered incapable of giving legal consent due to age

1. **Sexual Assault** is a form of Sexual Misconduct and is an attempt, coupled with the ability, to commit a violent injury on the person of another because of that person's Gender or sex.[24]

2. **Sexual Battery** is a form of Sexual Misconduct and is any willful and unlawful use of force or violence upon the person of another because of that person's gender or sex as well as touching an intimate part of another person against that person's will and for the purpose of sexual arousal, gratification, or abuse.[25]

3. **Rape** is a form of Sexual Misconduct and is non-consensual sexual intercourse that may also involve the use of threat of force, violence, or immediate and unlawful bodily injury or threats of future retaliation and duress. Any sexual penetration, however slight, is sufficient to constitute Rape. Sexual acts including intercourse are considered non-consensual when a person is incapable of giving consent because that person is incapacitated from alcohol and/or drugs, is under 18 years old, or if a mental disorder or developmental or physical Disability renders a person incapable of giving consent. The Complainant's relationship to the person (such as family member, spouse, friend, acquaintance or stranger) is irrelevant. (See complete definition of Affirmative Consent above.)[26]

4. **Acquaintance Rape** is a form of Sexual Misconduct committed by an individual known to the victim. This includes a person the victim may have just met; i.e., at a party, introduced through a friend, or on a social networking website. (See above for definition of Rape.)

EE.  **Sexual Orientation** means one's preference in sexual partners and includes heterosexuality, homosexuality, or bisexuality and is a Protected Status.[27]

FF.  **Stalking** means engaging in a repeated Course of Conduct directed at a specific person that would cause a Reasonable Person to fear for his/her or others' safety or to suffer Substantial Emotional Distress.[28] For purposes of this definition:

1. **Course of Conduct** means two or more acts, including but not limited to, acts in which the stalker directly, indirectly, or through third parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property;

2. **Reasonable Person** means a reasonable person under similar circumstances and with the same Protected Statuses as the Complainant;

3. **Substantial Emotional Distress** means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

GG.  **Student** means an applicant for admission to the CSU, an admitted CSU student, an enrolled CSU student, a CSU extended education student, a CSU student between academic terms, a CSU graduate awaiting a degree, a CSU student currently serving a suspension or interim suspension, and a CSU student who withdraws from the University while a disciplinary matter

(including investigation) is pending.

HH. **Student Conduct Code** means 5 California Code of Regulations Section 41301 et seq.

II. **Third Party** means a person other than an employee or a Student. Examples include employees of auxiliary organizations[29], volunteers, independent contractors, vendors and their employees, and visitors.

JJ. **Title IX** means Title IX of the Education Amendments of 1972.

KK. **Title IX Coordinator** means the Campus MPP Employee appointed by the Campus president to coordinate compliance with Title IX; VAWA/Campus SaVE Act; and other related state and federal laws prohibiting Discrimination, Harassment and Retaliation based on Gender or sex, including Sex Discrimination, Sexual Harassment, Sexual Misconduct, Domestic Violence, Dating Violence, and Stalking. (See Executive Order 1095 Revised).

LL. **University Property** means:

1. Real or personal property in the possession or under the ownership or control of the University; and

2. All University facilities whether utilized by a Campus or a Campus auxiliary organization.

MM. **VAWA** means the Violence Against Women Reauthorization Act of 2013 (which amends the Jeanne Clery Disclosure of Campus Crimes Statistics Act, commonly known as the Clery Act) (20 U.S.C. 1092(f)), under its Campus Sexual Violence Elimination Act provision (Campus SaVE Act).

NN. **Veteran or Military Status** may be Protected Statuses and means service in the uniformed services.

OO. **Working Days** are defined as Monday through Friday, excluding all official holidays or Campus closures at the Campus where the Complaint originated or at the CO where an Appeal is reviewed.

# ADDENDUM TO CSU EXECUTIVE ORDERS

1096, 1097 & 1098 (Revised March 29, 2019)

**INVESTIGATION AND HEARING PROCESS – FOR STUDENTS ACCUSED OF SEXUAL MISCONDUCT**

This Addendum, entitled "Investigation and Hearing Process — For Students Accused of Sexual Misconduct," **supersedes Article III.C.7-9 and Article IV of California State University Executive Order 1096 (Revised October 5, 2016); Article III.B.7-9 and Article IV of California State University Executive Order 1097 (Revised October 5, 2016); and Article IV of California State University Executive Order 1098 (Revised June 23, 2015), and applies to Complaints alleging Sexual Misconduct committed by a Student Respondent.**[30]

# Article I. Scope of this Addendum

This Addendum **supersedes** the existing investigation and resolution process under Article III.C.7-9 and Article IV of EO 1096 (Revised March 29, 2019); Article III.B.7-9 and Article IV of EO 1097 (Revised March 29, 2019); and Article IV of EO 1098 (Revised March 29, 2019) (sanctions) for cases (i) alleging Sexual Misconduct by a Student that, (ii) if substantiated, could result in a severe sanction (suspension or expulsion), **and** (iii) where credibility of any Party or witness is central to the finding.[31] Allegations of other misconduct set forth in the same Complaint that arise out of the same facts and/or incidents will also be investigated and resolved (including sanctions) in accordance with this Addendum.

# Article II. Investigation Procedure

The Title IX Coordinator will either promptly investigate the Complaint or assign this task to another Investigator. If assigned to another Investigator, the Title IX Coordinator will monitor, supervise, and oversee all such delegated tasks, including reviewing all investigation draft reports before they are final to ensure that the investigation is sufficient, appropriate, impartial, and in compliance with the relevant Executive Order, including this Addendum.

At the onset of the investigation, the Title IX Coordinator will simultaneously provide both Parties a Notice of Investigation. The Notice of Investigation will include:

A. a summary of the Complaint (e.g., "who," "what," "when," and "where");

B. a copy of, or internet link to, the relevant Executive Order, including this Addendum;

C. a description of the investigation and resolution procedure (including the right to hearing and appeal);

D. the estimated timeline for completion of the investigation;

E. a description of the University's policy against Retaliation; and

F. information about the Parties' right to an Advisor. The Complainant and Respondent will have equal opportunities to present relevant witnesses and evidence in connection with the investigation and at any hearing. Upon request, the Complainant and Respondent will be advised of the status of the investigation. If new allegations are raised during the investigation that are materially different from those described in the Notice of Investigation, a revised Notice of Investigation will be issued to the Parties.

# Article III. Evidence

**A. Gathering of Evidence.** The Investigator will take reasonable steps to gather all relevant evidence from the

Parties, other witnesses or other sources. The Investigator will document the steps taken to gather evidence, even when those efforts are not successful.

The Investigator will notify the Parties in writing that they may:

A. submit documentary information to the Investigator;

B. submit a list of potential witnesses to the Investigator; and/or

C. request that the Investigator attempt to collect documents and other information that are not reasonably accessible to the requesting Party.

**B. Basis for Declining Request.** The Investigator may decline a Party's request to gather information if:

A. the request seeks information about the Complainant's sexual history with anyone other than the Respondent (unless such evidence about the Complainant's sexual behavior is offered to prove that someone other than the Respondent committed the alleged misconduct, or if the evidence concerns specific incidents of the Complainant's sexual behavior with respect to the Respondent and is offered to prove consent);

B. the request seeks information about the Respondent's sexual history with anyone other than the Complainant unless such information is used to prove motive or pattern of conduct;

C. the request seeks information that is unreasonably duplicative of evidence in the Investigator's possession;

D. the Investigator determines that the information is not relevant to disputed issues;

E. the request seeks information that can be reasonably and adequately obtained by the requesting Party from other independent or publicly available sources;

F. the burden of obtaining the information is likely to substantially outweigh the benefit that the evidence bears on a disputed issue; or

G. the requested information can be reasonably obtained through other means less likely to intrude on a person's privacy.

In determining the relevance of evidence, consent to one form of sexual activity (or one sexual act) does not constitute consent to other forms of sexual activity, and consent given to sexual activity on one occasion does not constitute consent on another occasion.

# Article IV. Review of Evidence

Before issuing a final investigation report (Final Investigation Report), the Investigator will share with the Complainant and Respondent a preliminary report of the evidence, along with all relevant evidence gathered as described above (Preliminary Investigation Report), redacted if and to the extent required by law. The Preliminary Investigation Report will: (a) describe the allegations; (b) identify the material facts – undisputed and disputed – with explanations as to why any material fact is disputed; and (c) describe the evidence presented and considered.

The Investigator may use discretion in determining how to provide access to the Preliminary Investigation Report with the Parties in light of the particular circumstances and any Party or witness privacy concerns. The Preliminary Investigation Report will also identify any evidence offered by the Parties or any other witnesses that the Investigator concluded is not relevant to a material disputed fact, and will briefly explain why it is not relevant. Such evidence need not be attached to the report, but will be available for reasonable review upon request during the review of evidence process.

This process is collectively referred to as the "Review of Evidence."

Each Party will be given a reasonable opportunity to respond to the list of disputed facts and evidence and ask questions. In particular, each Party may:

A. meet again with the Investigator;

B. identify additional disputed facts;

C. respond to the evidence in writing;

D. request that the Investigator ask specific questions to the other Party and other witnesses;

E. identify additional witnesses; and

F. request that the Investigator gather additional evidence.

The Investigator will share with the Parties the answers to questions posed during the Review of Evidence. If additional disputed material facts are identified or relevant evidence is gathered, it will be included in the Preliminary Investigation Report (or in a separate addendum) and shared with all Parties, who will be given a reasonable opportunity to respond to the new evidence and ask questions. The Investigator determines when it is appropriate to conclude the Review of Evidence.

# Article V. Investigation Report, Pre-Hearing Disposition, and Scheduling of Hearing

A. The Final Investigation Report will include all of the information included in the Preliminary Investigation Report as well as additional relevant evidence received during the Review of Evidence. Any relevant documentary or other tangible evidence provided by the Parties or witnesses, or otherwise gathered by the Investigator will be attached to the Final Investigation Report as exhibits or otherwise made available for reasonable review by the Parties and at the hearing. Evidence offered by the Parties or any other witnesses that the Investigator concluded is not relevant to a material disputed fact will also be accessible to the Hearing Officer during the hearing.

B. Absent good cause (of which the Parties will receive written notice): (i) the investigation should be concluded within **90 Working Days** from the date that Notice of Investigation is provided to the Parties; and (ii) the Final Investigation Report should be completed and provided to the Parties within **10 Working Days** after the Review of Evidence has concluded. Any extensions will be granted, and notice to the Parties given, as set forth in Article V. E. of EO 1096 and EO 1097.

C. If assigned to another Investigator, the Title IX Coordinator will monitor, supervise, and oversee all delegated tasks, including reviewing all draft reports before they are finalized to ensure that the investigation was sufficient, appropriate, impartial, and in compliance with the relevant Executive Order, including this Addendum.

D. Within **10 Working Days** after the Parties have been provided the Final Investigation Report, the Parties will be informed of the timelines that will apply to the pre-hearing and hearing processes described in Article VII below.

# Article VI. Early Resolution[32]

If the Title IX Coordinator or either Party believes that it may be possible to resolve the Complaint in a prompt, fair, and reasonable manner without a hearing, the Title IX Coordinator may suggest that the Parties consider an Early Resolution subject to the following:

A.  both Parties must agree to engage in the Early Resolution process;

B.  any agreed-upon remedies and disciplinary sanctions will have the force and effect of sanctions imposed following a Hearing;

C.  the terms of any resolution must be memorialized in writing and signed by the Parties and the Title IX Coordinator; and

D.  the resolution will be final and not appealable by either Party.

# Article VII. Pre-Hearing and Hearing Processes

1. The Student Conduct Administrator, Title IX Coordinator, or other appropriate Administrator (Hearing Coordinator) will be responsible for coordinating the hearing process. The Hearing Coordinator's duties will include: scheduling the hearing; notifying witnesses of the hearing; ensuring that the Hearing Officer is provided with appropriate materials including a copy of the report and any exhibits; coordinating videoconferencing (if necessary); and securing a location for the hearing. The Hearing Coordinator will also act as liaison between the Parties and the Hearing Officer on procedural matters.

2. The Parties will be given written notice of the date, time, and location of the hearing as well as the identity of the Hearing Officer. Notification of the hearing will be sent to the designated CSU campus e-mail address, unless the recipient has specifically requested in writing to the Hearing Coordinator that notice be given to a different e-mail address. Communications will be deemed received on the date sent. The hearing will not be set sooner than **15 Working Days** after the date of notice of hearing.

3. Timelines:

Hearing Officer

Any objections to an appointed Hearing Officer will be made in writing to the Hearing Coordinator within **5 Working Days** after notice of the identity of the Hearing Officer has been provided.

The objection must be based on an actual conflict of interest. A conflict of interest exists if the Hearing Officer has a personal relationship with one of the

Parties or witnesses or has demonstrated actual bias towards a Party or witness. The fact that a Hearing Officer has previously served as a Hearing Officer in university proceedings will not constitute a conflict of interest. The Hearing Coordinator will determine if a conflict of interest exists. In that event, the Parties will be notified in writing of the name of the new Hearing Officer. The date for the hearing may need to be rescheduled. Any objection to the new Hearing Officer will be made in accordance with this section.

Hearing Process

No later than **10 Working Days** before the hearing, each Party will:

A.  Provide to the Hearing Coordinator the name of, and contact information for, the Party's advisor and support person (if any);

B.  Make any requests to the Hearing Coordinator to consolidate pending cases for hearing;

C.  Provide to the Hearing Coordinator a proposed witness list that includes the names of, and current contact information for, that Party's proposed witnesses as well as an explanation of the relevance of each proposed witness's testimony and the disputed issue to which the witness's testimony relates. Absent extenuating circumstances, such witnesses should have been identified to the investigator during the investigation process, and referenced in the investigation report.

The Hearing Officer will make all determinations regarding pre-hearing matters, including witness participation and questions, and will promptly notify the Hearing Coordinator who, in turn, will promptly notify the Parties.

No later than **5 Working Days** before the hearing, the Hearing Coordinator will:

A.  Share a final witness list with the Parties.

B.  Notify each witness of the date, time and location of the hearing. Witnesses will be instructed to attend the hearing and to promptly direct any questions or concerns about their attendance at the hearing to the Hearing Coordinator.

No later than **5 Working Days** prior to the hearing, the Parties will submit a list of proposed questions to the Hearing Coordinator.

No later than **3 Working Days** before the hearing, the Parties will submit to the Hearing Coordinator any: (i) objections to, or questions about, the witness list or (ii) requests for permission to participate in the hearing remotely or out of the physical presence of the other Party. All communications will be in writing.

No later than **1 Working Day** before the hearing, the Hearing Officer will resolve all pending requests regarding participation at the hearing. The Hearing Coordinator will give prompt notice to the Parties (and witnesses) as appropriate.

The hearing is closed to all persons except the Parties; the Parties' respective Advisors; one support person per Party; appropriate witnesses while they are testifying; the Student Conduct Administrator; Title IX Coordinator; Hearing Officer; and Hearing Coordinator. A CSU administrator may also be present, but will not participate in the hearing. Campus police or a security officer may also be present if deemed appropriate or necessary by the Vice President for Student Affairs, Hearing Coordinator or Hearing Officer. The University will take reasonable steps to instruct witnesses employed by the University to attend the hearing, and to arrange for such witnesses to be available to attend, provided that such employee witnesses are timely identified to the Hearing Coordinator in accordance with this Executive Order.

4. The University will instruct Student witnesses to attend the hearing, provided that such Student witnesses are timely identified to the Hearing Coordinator in accordance with this Executive Order. Students who fail to comply may be subject to discipline, depending on the circumstances. The University will take reasonable steps to accommodate Student witnesses including arranging for them to be excused from class attendance, if necessary.

5. The hearing will commence with an overview of the hearing process given by the Hearing Officer, after which the Parties will be given an opportunity to ask questions about the hearing process. Generally, the Investigator or the Title IX Coordinator (if not the Investigator) will be the first witness and will describe the complaint, investigation process, and summarize the evidence. Each Party will be given an opportunity to make an opening statement that will last no longer than 10 minutes. The Advisor and any support person are not permitted to make the opening statement or speak during the hearing. The Parties will not make closing statements.

6. The Hearing Officer may ask questions of the Complainant, Respondent, Investigator, any University official (e.g., Title IX Coordinator or Student Conduct Administrator), and any witness.

A.  The Complainant and Respondent may be present at all times during the hearing unless the Hearing Officer determines that a Party should be excused for extraordinary circumstances.

B.  As set forth above, the Parties will give the Hearing Coordinator a written list of any questions that they would like the Hearing Officer to ask the witnesses. The Parties may also propose follow-up questions to the Hearing Officer during the hearing, at appropriate times designated by the Hearing Officer.

C.  The Hearing Officer will ask the questions proposed by the Parties except for questions that:

1.  seek information about the Complainant's sexual history with anyone other than the Respondent (unless such evidence about the Complainant's sexual behavior is offered to prove that someone other than the Respondent committed the alleged misconduct);

2.  seek information about the Respondent's sexual history with anyone other than the Complainant, unless such information is used to prove motive or pattern of conduct;

3.  seek information that is unreasonably duplicative of evidence in the Hearing Officer's possession; or

4.  the Hearing Officer determines are not relevant to material disputed issues, are argumentative or harassing or unduly intrude on a witness's privacy.

D.  The Hearing Officer has discretion to modify or change the wording of a question proposed by a Party (for example, when a question is unclear or inappropriate in tone) as long as the substance of the question is preserved.

E.  The Parties will address any questions, concerns or objections about a question (or line of questioning) to the Hearing Officer who will use their discretion to resolve any issues consistent with the Executive Order. Advisors may not speak on behalf of a Party.

F.  Formal rules of evidence applied in courtroom proceedings (e.g., California Evidence Code) do not apply in the hearing. All information that responsible persons are accustomed to rely upon in the conduct of serious affairs is considered.

7. Heresay may be considered, but will only be given the weight appropriate under all of the circumstances, with due consideration given to the importance of credibility assessment. Absent extenuating circumstances, the Hearing Officer will not rely on prior statements made by the Parties or witnesses during the investigation whose credibility is central to the determination unless those Parties or witnesses make themselves available for examination by the Hearing Officer.

8. The Hearing Officer will not, prior to preparing the Hearing Officer's Report (described below), have substantive communications about the facts of the case with either Party or the Investigator unless in the presence of both Parties and a University official (e.g., Hearing Coordinator, Title IX Coordinator or Student Conduct Administrator).

9. New evidence not reasonably available at the time of the investigation to the Party seeking to introduce the evidence may be considered in the Hearing Officer's discretion.

10. The Hearing Officer will make an official audio recording of the hearing. The recording is University property. No other recording of the hearing is permitted. The audio recording will be retained by the Hearing Coordinator or designee in accordance with the Campus records/information retention and disposition schedule.

11. If either Party fails to appear at the hearing without good cause the hearing will nevertheless proceed. Whether good cause exists is determined by the Hearing Officer.

12. The Respondent will not be found to have violated University policy solely because the Respondent failed to appear at the hearing. Nor will the Respondent be found not to have violated the University policy solely because a Complainant or other witness failed to appear at the hearing.

13. Abusive or otherwise disorderly behavior that causes a material disruption is not tolerated. The Hearing Officer may eject or exclude anyone (including either Party, their advisors, and support persons) whose behavior causes a material disruption.

14. The Hearing Officer controls the hearing, is responsible for maintaining order during the hearing, and makes whatever rulings are necessary to ensure a fair hearing. The Hearing Officer's decisions in this regard are final.

15. Where there is more than one Respondent or Complainant in connection with a single occurrence or related multiple occurrences, the Hearing Officer and the Parties may agree to a single hearing. A Party may request consolidation with other cases, or the Student Conduct Administrator may initiate the consolidation (subject to FERPA and other applicable privacy laws). All such requests will be made in accordance with timelines set forth in this section. The Hearing Officer makes consolidation decisions, which are subject to review by the Vice President of Student Affairs or designee.

# Article VIII. Standard of Proof, Report, and Hearing Officer's Report

A. After the hearing, the Hearing Officer will make findings of fact and conclusions about whether the Respondent violated University Policy (Hearing Officer's Report). The standard of proof the Hearing Officer will use is whether each allegation is substantiated by a Preponderance of the Evidence. The Title IX Coordinator will review the Hearing Officer's Report to ensure compliance with this Executive Order. The Hearing Coordinator will transmit the Hearing Officer's Report promptly to the Parties, the Title IX Coordinator, and the Student Conduct Administrator, usually within **10 Working Days** of the close of the hearing. If no violation is found, the president (or designee) will also be notified.

B. If a violation is found, within **5 Working Days** of receiving such finding the Parties may submit to the Hearing Coordinator an impact statement or other statement regarding discipline that is no more than 2000 words in length. The document is an opportunity for the Parties to suggest disciplinary outcomes and to provide information that they believe is important for the Hearing Officer to consider. The Student Conduct Administrator and/or Title IX Coordinator may also submit a written statement regarding aggravating and mitigating factors, including whether the Respondent was previously found to have violated the Student Code of Conduct.

C. Within **5 Working Days** after receiving and considering any impact or other statements submitted by the Parties and other statements described above, the Hearing Officer will submit the Hearing Officer's Report to the president (or designee), including recommended sanctions (as defined in EO 1098) if a Respondent has been determined to have violated University policy. The Hearing Officer's Report will attach the Investigation Report and will include:

A. the factual allegations and alleged policy violations;

B. the Preponderance of the Evidence standard;

C. the evidence considered including an analysis of the credibility of the Parties and witnesses, when credibility assessments are required to resolve factual disputes;

D. any material evidence identified by the Parties or witnesses that the Hearing Officer determined was not relevant (or duplicative) and the reason why the evidence was not considered to be relevant;

E. a list of all questions proposed by the Parties at the hearing, and if any questions were not asked, why;

F. a summary of the procedural issues raised by the Parties before or during the hearing;

G. the factual findings and the evidence on which the factual findings are based;

H. to the extent that the factual findings required a determination concerning of the relative credibility or lack of credibility of the Parties or witnesses, an explanation as to how that determination was reached; and

I. a determination of whether the Executive Order was violated and an analysis of the basis for that determination.

# Article IX. Final Decision/Notification

In cases where the Hearing Officer has found a violation of policy, the president (or designee) will review the Investigation Report and the Hearing Officer's Report and issue a decision concerning the appropriate sanction within **10 Working Days** of receipt of the Hearing Officer's Report.

A. The president may impose the recommended sanctions, adopt a different sanction or sanctions, or reject sanctions altogether. If the president adopts a sanction other than what is recommended by the Hearing Officer, the president must set forth the reasons in the Decision Letter.

B. The president will simultaneously send the Decision Letter electronically to the Respondent and Complainant at the University-assigned or other primary e-mail address linked to their University accounts.[33] The decision will also be sent to the Student Conduct Administrator and the Hearing Officer.

C. The Decision Letter will include:

 1. the outcome of the hearing, including any sanction imposed, and the name of the Respondent(s);

 2. a copy of the Hearing Officer's Report, redacted as appropriate or as otherwise required by law; and

 3. notice of the Complainant's and Respondent's right to appeal to the CO.

D. The president will also send the Decision Letter to the Title IX Coordinator so that they may determine whether any additional Remedies (or other supportive measure) will be afforded or undertaken in order to maintain a safe and nondiscriminatory University environment.

E. Unless the CO notifies the campus and Parties that an appeal has been filed, the president's sanction decision becomes final **11 Working Days** after the date of the Decision Letter.

# Article X. Appeal of Decision

A. **Filing an Appeal to the CO.** Any Complainant or Respondent who is not satisfied with a Campus hearing outcome may file an appeal with the CO no later than **10 Working Days** after the date of the Decision Letter.

B. **Written Appeal.** The appeal will be in writing and will be based only on one or more of the appeal issues listed below:

 1. The hearing outcome is not supported by substantial evidence (in other words, there was no reasonable basis for such findings or conclusions);

 2. Prejudicial procedural errors impacted the hearing outcome to such a degree that the hearing did not comply with this Executive Order;

 3. New evidence that was not reasonably available at the time of the hearing and would have affected the Hearing Officer's decision about whether the Respondent violated CSU policy; or

 4. The sanction(s) imposed constituted an abuse of discretion based on the substantiated conduct.

C. **Issues and Evidence on Appeal.** The issues and evidence raised on appeal will be limited to those

raised and identified during the hearing, unless new evidence becomes available after the Campus hearing process and is made part of the appeal by the appealing party. The CO may conduct an interview, at the CO's discretion, with the appealing party and/or the Campus to clarify the written appeal. Appeals will be addressed to:

Equal Opportunity and Whistleblower Compliance Unit
Systemwide Human Resources
Office of the Chancellor
401 Golden Shore, 4th Floor
Long Beach, California 90802
**eo-wbappeals@calstate.edu**

D. **Acknowledgement of Appeal.** The CO will provide prompt written acknowledgement of the receipt of the appeal to the appealing Party, and will provide prompt written notification of the appeal, including a copy of the appeal, to the non-appealing Party and the Campus Title IX Coordinator. The notice will include the right of the non-appealing Party and the Campus to provide a response to the appeal within **10 Working Days** of the date of the notice.

E. **Reasonable Accommodation.** The CO will provide reasonable accommodations to any Party or witness in the appeal process with a qualified Disability upon request by the person needing the accommodation. A reasonable accommodation may include an extension under these procedures. The timeframe for the CO Appeal Response will automatically be adjusted for the time needed, if any, to provide reasonable accommodations.

F. **Scope of CO Review.** The CO review will not involve a new hearing by the CO and will not consider evidence that was not introduced during the Campus hearing, unless the new evidence was not reasonably available at the time of the Campus hearing process. The CO may make reasonable inquiries to determine if the new evidence could have affected the hearing determination. If the CO review determines the hearing should be reopened to cure any defects in the hearing and/or consider new evidence introduced for the first time on appeal (that could have affected the hearing determination), the matter will be remanded back to the Campus and the hearing reopened at the Campus level. Under very limited circumstances, the CO can reverse the Hearing Officer's decision, provided that the factual findings remain intact.

G. **Reopening a Campus Hearing.** The CO will return the matter to the Campus and will specify in writing the timeline by which a reopened hearing must be completed. The CO will simultaneously notify the Parties of the reopening of the hearing and the timeline for completion of the reopened hearing. The Campus will complete the reopened hearing and provide the CO with an amended Hearing Officer's Report. The Campus will also provide the Parties with amended Notices of Hearing Outcome, and such Notices will provide the Parties the opportunity to appeal any new or amended findings, in accordance with this Executive Order. Upon receipt of the amended hearing report, the CO will contact the appealing party to determine whether that Party wishes to continue with the appeal.

H. **Reversal by CO.** If the hearing outcome (determination regarding policy violation) is not supported by the facts as determined by the Hearing Officer, the CO may vacate and reverse the Hearing Officer's decision, but only with respect to whether University policy was violated.

I. **Timeline.** The CO will respond to the appealing Party no later than **30 Working Days** after receipt of the written appeal unless the timeline has been extended as specified in Article V, E. of EO 1096 and 1097.

J. **CO Appeal Response.** The CO Appeal Response will include a summary of the issues raised on appeal,

a summary of the evidence considered, the scope of review, and the determination(s) reached regarding the issue(s) identified within the written appeal. A copy of the final CO Appeal Response will be forwarded to the Complainant and Respondent, as well as the Campus Title IX Coordinator. The CO Appeal Response is final and concludes the Complaint and CO review process under this Executive Order.

K.  **Notifications to the Parties.** The Complainant and the Respondent will be simultaneously informed, in writing, whenever there is a change to the outcome of the proceedings (findings and/or sanctions).

# Supersedes

Executive Order 1098 (Revised June 23, 2015)

# Issued by

Timothy P. White, Chancellor

# Endnotes

[1] See John Doe v. Kegan Allee, Ph.D., et al., California Court of Appeal (January 2019): http://www.courts.ca.gov/opinions/documents/B283406.PDF

[2] Key capitalized terms are defined in Article VIII. Terms contained within this Executive Order are intended to be gender neutral.

[3] See Cal. Penal Code § 626.4.

[4] See Cal. Penal Code § 626.4.

[5] See Cal. Penal Code § 626.4.

[6] See Cal. Penal Code § 626.4.

[7] See Cal. Penal Code § 626.4.

[8] See Cal. Educ. Code § 69810 *et seq*.

[9] See Cal. Penal Code § 626.2.

[10] See 5 Cal. Code Regs. § 40601(g).

[11] See 5 Cal. Code Regs. § 41302.

[12] See 5 Cal. Code Regs. § 41302.

[13] See 34 C.F.R. § 110.3.

[14] See Cal. Penal Code § 13700 (b).

[15] See Cal. Penal Code § 13700(b) and Cal. Family Code § 6211.

[16] See Cal. Educ. Code § 66260.7.

[17] See 34 C.F.R. § 106.40.

[18] See Cal. Civ. Code § 51(2)(e).

[19] See 5 Cal. Code Regs. § 42720 et seq.

[20] See Cal. Educ. Code § 66261.5.

[21] See Cal. Educ. Code § 66261.7.

[22] See Cal. Educ. Code § 66262.

[23] See Cal. Evid. Code §§ 1035.2 and 1035.4.

[24] See Cal. Penal Code § 240.

[25] See Cal. Penal Code § 242.

[26] See Cal. Penal Code §§ 261-263.

[27] See Cal. Educ. Code § 66262.7.

[28] See Cal. Penal Code § 646.9.

[29] See 5 Cal. Code Regs. § 42406.

[30]Capitalized terms are defined in this Addendum and in CSU Executive Order 1096 (*Systemwide Policy Prohibiting Discrimination, Harassment, Retaliation, Sexual Misconduct, Dating and Domestic Violence, and Stalking against Employees and Third Parties and Systemwide Procedure for Addressing Such Complaints by Employees and Third Parties)* and CSU Executive Order 1097 (*Systemwide Policy Prohibiting Discrimination, Harassment and Retaliation, Sexual Misconduct, Dating and Domestic Violence, and Stalking against Students and Systemwide Procedure for Addressing Such Complaints by Students).*

[31]In most Sexual Misconduct cases, credibility will be central to the finding. Therefore, Parties should presume that this Addendum applies to all matters alleging Sexual Misconduct.

[32]The Early Resolution process is available at any time prior to the issuance of the Hearing Officer's Report.

[33]The copy of the Decision Letter issued to the Complainant will be redacted as to findings regarding conduct that does not constitute a "crime of violence," Sexual Misconduct, Dating Violence, Domestic Violence, or Stalking (34 C.F.R. § 99.31 et seq.).

All revision dates:     3/29/2019, 6/23/2015, 6/3/2014, 4/6/2012, 8/3/2009, 2/2/2006, 9/30/1994, 3/8/1972

## Attachments

Superseded Policy (EO 0148) Dated 03-08-1972.pdf
Superseded Policy (EO 0628) Dated 09-30-1994.pdf
Superseded Policy (EO 0970) Dated 02-02-2006.pdf
Superseded Policy (EO 1043) Dated 08-03-2009.pdf
Superseded Policy (EO 1073) Dated 04-06-2012.pdf
Superseded Policy (EO 1098 Revised) Dated 06-23-2015.pdf
Superseded Policy (EO 1098) Dated 06-03-2014.pdf

# EXHIBIT B



Center for Student Rights
& Responsibilities
San Diego State University
5500 Campanile Drive
San Diego, CA 92182-7443
Tel: 619.594.3069
Fax: 619.594.3081

### SAN DIEGO STATE UNIVERSITY

July 8, 2020

John Lema
Sent electronically to jlema@sdsu.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2019363922

Red ID: 820004673

Dear John,

The University is committed to maintaining a safe and healthy living and learning environment for students, faculty, and staff. Each member of the campus community must choose behaviors that contribute toward this end. Students are expected to be good citizens and to engage in responsible behaviors that reflect well upon their university, to be civil to one another and others in the campus community, and contribute positively to student and university life.

The Center for Student Rights and Responsibilities has received a report regarding your alleged misconduct that may violate Title 5, Section 41301 of the California Code of Regulations.

**Reportedly, during the 2018-2019 and 2019-2020 academic years, you engaged in and conspired to engage in hazing activities that endangered the health and safety of California State University students. In addition, reportedly, you provided alcohol to minors, physically assaulted members of the campus community, interfered with the orderly progress of a student discipline proceeding, attempted to influence the impartiality of any participant in a student discipline matter, and encouraged, permitted, or assisted another to do any act that could subject them to discipline.**

You are alleged to have violated the following violation(s) of Section 41301:

(b.7.A) Conduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, or harassment.

(b.8) Hazing, or conspiracy to haze.

(b.10) Use, possession, manufacture, or distribution of alcoholic beverages (except as expressly permitted by law and University regulations), or public intoxication while on campus or at a University related activity.

(b.16) Violation of any published University policy, rule, regulation or presidential order (e.g., computer policy, alcohol policy, campus residence halls rules, student organization policies, etc.)

(b.19.B) Violations of the Student Conduct Procedures, including: Disruption or interference with the orderly progress of a student discipline proceeding.

(b.20) Encouraging, permitting, or assisting another to do any act that could subject him or her to discipline.

Possible sanctions that may be enacted as a result of these policy violations include Restitution, Educational Sanctions, Denial of Access to Campus or Persons, Disciplinary Probation, Suspension, and Expulsion. Sanctioning for this violation is dependent on facts and circumstances of your case, including your response to the allegations, and your disciplinary

history.

**Your Responsibilities:**
It is your responsibility to attend an investigative meeting regarding this incident that has been scheduled for you on **Tuesday, July 21, 2020, at 1:00pm PST. Please use the following URL link at the time of your appointment in order to attend your meeting via Zoom video conference: https://SDSU.zoom.us/j/96285502019**

The Zoom application should automatically download, launch, and connect you to the meeting once you click the link. If the link does not automatically redirect you, please copy and paste the link into your browser. If you are unable to access Zoom, please contact your Judicial Officer via email no later than 24 hours prior to your appointment time.

You are required to attend this appointment. Appointments will be rescheduled only in emergency circumstances, and will be rescheduled at a time within 72 hours of the original appointment. If you need to reschedule your appointment, you must make this request no later than 24 hours prior to your initial appointment time by calling 619-594-3069, Monday through Friday between 8:30am and 4:30pm. You are responsible for receiving a verbal confirmation that your appointment has been rescheduled.

**Failure to attend your investigative meeting will result in a decision being rendered about your case without your input, a registration hold being placed on your record, and/or the scheduling of a formal disciplinary hearing.**

**Your Rights:**
You may choose to bring one person to your investigative meeting to serve in the capacity of advisor. Your advisor may provide you support and consultation, but may not speak on your behalf. Please review the Use of Attorneys policy linked below. For more information on the role of an advisor please review Article II, Section C of the California State University (CSU) Executive Order 1098 – Student Conduct Procedures.

You may view your discipline file in the Center for Student Rights and Responsibilities, Student Services West, 1604. You may not be able to access investigative documents or evidence related to this incident until the investigation into this matter is complete.

If you have any questions regarding the student conduct process please contact the Center for Student Rights and Responsibilities at (619) 594-3069. I look forward to speaking with you regarding this incident.

**Prior to attending this appointment, please complete the following:**
Review the Standards for Student Conduct, which are available online at http://go.sdsu.edu/student_affairs/srr/conduct.aspx.
Review Executive Order 1098, outlining the University's disciplinary procedures, which is available online at http://www.calstate.edu/eo/EO-1098-rev-3-29-19.pdf.
Review the Use of Attorneys policy which is available online at http://go.sdsu.edu/student_affairs/srr/attorneys.aspx.
Review Executive Order 1097, outlining the University's procedures related to Sexual Misconduct, Discrimination, Harassment, and Retaliation (if applicable), which is available online at http://www.calstate.edu/eo/EO-1097-rev-3-29-19.pdf.

Sincerely,



Lee Mintz, Ed.D.
Director, Center for Student Rights and Responsibilities and Deputy Title IX Coordinator

# EXHIBIT C



Center for Student Rights
& Responsibilities
San Diego State University
5500 Campanile Drive
San Diego, CA 92182-7443
Tel: 619.594.3069
Fax: 619.594.3081

**SAN DIEGO STATE
UNIVERSITY**

July 28, 2020

John Lema
Sent electronically to jlema@sdsu.edu

Regarding Case Number: 2019363922

**PERSONAL AND CONFIDENTIAL**

Red ID:820004673

Dear John,

According to our records, you failed to attend an investigative meeting to speak with a Judicial Officer on July 21, 2020.

**Accordingly, a MANDATORY appointment for an investigative meeting has been scheduled for you on Friday, July 31, 2020, at 12:00 noon PST.  Please use the following URL link at the time of your appointment in order to attend your meeting via Zoom video conference: https://SDSU.zoom.us/j/96285502019**

**Please be advised that failure to attend this appointment will result in a decision being rendered without your input and/or a registration hold being placed on your academic record.**  You may view your discipline file in the Center for Student Rights and Responsibilities, Student Services West, 1604. You may not be able to access investigative documents or evidence related to this incident until the investigation into this matter is complete.

**Prior to attending this appointment, please complete the following:**
Review the Standards for Student Conduct, which are available online at
http://go.sdsu.edu/student_affairs/srr/conduct.aspx.
Review Executive Order 1098, outlining the University's disciplinary procedures, which is available online at http://www.calstate.edu/eo/EO-1098-rev-3-29-19.pdf.
Review the Use of Attorneys policy which is available online at
http://go.sdsu.edu/student_affairs/srr/attorneys.aspx.
Review Executive Order 1097, outlining the University's procedures related to Sexual Misconduct, Discrimination, Harassment, and Retaliation (if applicable), which is available online at
http://www.calstate.edu/eo/EO-1097-rev-3-29-19.pdf.

Sincerely,

Lee Mintz, Ed.D.
Director, Center for Student Rights and Responsibilities and Deputy Title IX Coordinator

# EXHIBIT D



**Center for Student Rights
& Responsibilities**
San Diego State University
5500 Campanile Drive
San Diego, CA 92182-7443
Tel: 619.594.3069
Fax: 619.594.3081

November 23, 2020

John Lema
Sent electronically to jlema@sdsu.edu

**PERSONAL AND CONFIDENTIAL**

Regarding Case Number: 2019363922

Red ID: 820004673

Dear John,

Contained in this email is a "Settlement Agreement" containing the following information:

**Description of Settlement Agreement:**

1. A statement that describes your rights, under Executive Order 1098, to a disciplinary hearing, and your option to waive those rights and accept the sanction as described in the Settlement Agreement.

2. A disciplinary sanction, along with any conditions of that sanction.

After carefully reading the Settlement Agreement, please do one of the following within ten (10) working days, but no later than **December 9, 2020**:

1. If you agree to waive your rights to a disciplinary hearing and accept the sanction set forth, please submit a signed copy of the Settlement Agreement to the Center for Student Rights and Responsibilities, or print, sign, and scan the Settlement Agreement via email to your Judicial Officer. Please retain a copy for your records. OR:

2. If you do not accept this Settlement Agreement, notify the Judicial Officer via email that you wish to have an informal conference to discuss this Settlement Agreement.

**You must either sign and return this Settlement Agreement or request an informal conference within ten (10) working days, but no later than December 9, 2020, or a formal hearing will be scheduled and/or a registration hold will be placed.**

**THE CALIFORNIA STATE UNIVERSITY** · BAKERSFIELD · CHANNEL ISLANDS · CHICO · DOMINGUEZ HILLS · EAST BAY · FRESNO · FULLERTON · HUMBOLDT · LONG BEACH · LOS ANGELES
MARITIME ACADEMY· MONTEREY BAY · NORTHRIDGE · POMONA · SACRAMENTO · SAN BERNARDINO · SAN DIEGO · SAN FRANCISCO · SAN JOSE · SAN LUIS OBISPO · SAN MARCOS· SONOMA · STANISLAUS

**Explanation of Decision:**

The basis for the disciplinary decision is the following:

The Center for Student Rights and Responsibilities has completed an investigation into allegations of hazing that occurred during the 2018-2019 and 2019-2020 academic years, while you were a member of Phi Gamma Delta. The investigation demonstrated you were involved in the following compelled hazing activities that occurred during the recruitment process: compelled physically demanding activities (including calisthenics and body-weight workouts), compelled physically demanding activities as a consequence, compelled forced alcohol consumption, compelled individuals to drink foreign or unusual substances, and compelled acts of servitude including personal servitude. In addition, information gathered during this investigation indicates you compelled the blindfolding, paddling, bullying, intimidation, and the physical and emotional degradation and humiliation of other students. Finally, information gathered indicates you compelled pledges to contribute money to pay for alcohol that would be/was consumed during events.

Per the Student Code of Conduct, "neither the express or implied consent of a victim of hazing, nor the lack of active participation in a particular hazing incident is a defense. Apathy or acquiescence in the presence of hazing is not a neutral act, and is also a violation of this section." The University's main concern is your health, physical and emotional, and well-being. In order to best address these policy violations, as well as the potential personal impacts of hazing, you have been found responsible for violating sections (b.7.A), (b.8), (b.10), (b.16), and (b.20) of Title V, Section 41301 of the California Code of Regulations. I hope the outcome of this investigation will support your continued success at San Diego State University.

Please contact me if you have any questions.

Sincerely,
Andréa Parashos, Title IX/Student Conduct Investigator
adparashos@sdsu.edu

Red ID: 820004673
John Lema

**PERSONAL AND CONFIDENTIAL**

**SETTLEMENT AGREEMENT**

(November 23, 2020)

I understand I was required to meet with a Judicial Officer at San Diego State University to discuss my alleged misconduct as detailed in the attached cover letter.

I hereby waive my right to a disciplinary hearing\*, as outlined in Executive Order 1098, which I have read and understand, and accept the following sanctions/stipulations:

**Suspension in Abeyance** at San Diego State University until November 4, 2022. I understand this sanction will be reflected on my academic transcript. I understand this sanction may affect my participation in other campus departments or organizations not associated with the Center for Student Rights and Responsibilities. I understand I may be ineligible to hold certain leadership positions (president, treasurer) in student organizations, including Greek organizations, and virtually all positions within Associated Students. I also understand that I will be unable to join a Greek organization for the duration of this sanction.

In addition to the above sanction, I agree to complete the following sanction(s):

**Mandatory participation in an Intervention Program sponsored by SDSU Counseling and Psychological Services (C&PS).**

At this time, I will attend the **SCL (Successful Community Living) Program**, however, I understand my counselor may mandate me to attend an alternative or additional program and that I am required to complete that program.

- I understand I must go to the Center for Student Rights and Responsibilities website at https://newscenter.sdsu.edu/student_affairs/srr/forms.aspx and click: **ASPIRE/SCL - Steps to Enroll in Program (PDF).**
- I understand I must read these instructions carefully and email my receipt for payment to psycserv@sdsu.edu in order to make my first appointment with C&PS.
- I understand C&PS will provide written proof of my participation in the program to the University Judicial Officer.
- I will pay for this program and provide proof of this payment to my Judicial Officer no later than **one week** after the date that I sign my Settlement Agreement.
- I will email C&PS at psycserv@sdsu.edu to schedule my initial appointment no later than **December 21, 2020.**
- I must complete the program in its entirety by **May 10, 2021.**
- **I understand at the conclusion of the program, I must write a 1-2 page reflection paper** on what I learned from this process and what steps I will take to ensure incidents for which I was sanctioned for do not occur in the future. This paper must be typed in a font size of 12 with one-inch margins. Furthermore, this paper must be emailed to the

Judicial Officer no later than one week from the conclusion of the program.

**<u>I understand failure to complete the program as required will result in my immediate suspension.</u>**

With respect to the information listed above, the following additional sanctions/stipulations apply:

- I understand I may not serve as the New Member Educator (or like position) in any organization during my time at San Diego State University.

I further understand that in the event of subsequent proceedings based on new charges, these current charges will be deemed true and that the appropriate sanction, should I be found to have committed a new violation, may include a more severe disciplinary action, up to and including suspension or expulsion from the University.

I understand this sanction will be on file in the Center for Student Rights and Responsibilities for seven years or, if I am expelled or suspended for more than one year, my record will be retained permanently. This record is protected under guidelines set forth in the Family Educational Rights and Privacy Act (FERPA).

I understand that probation or suspension will be placed on my transcript for the duration of the sanction, but will remain on my transcript permanently if the suspension exceeds one year or if I am expelled. Should this sanction be the result of academic misconduct, I am prevented from taking this class again for course forgiveness.

_____
John Lema

_____
Date

Before waiving any rights you may wish to consult an attorney. 619-231-8585 is the number of the Lawyer Referral Information Service of the San Diego County Bar Association.

_____
University Judicial Officer

_____
Date

Sincerely,


Andréa Parashos
Title IX/Student Conduct Investigator