CORRIE J. KLEKOWSKI (SBN 251338)
cklekowski@paulplevin.com
HEATHER C. DAVIS (SBN 307850)
hdavis@paulplevin.com
**PAUL, PLEVIN, SULLIVAN & CONNAUGHTON LLP**
101 West Broadway, Ninth Floor
San Diego, California 92101-8285
Telephone: 619-237-5200
Facsimile: 619-615-0700

Attorneys for Defendants The Board of Trustees of the California State University; Andrea Parashos; and Lee Mintz

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| John Lema,<br><br>    Plaintiff,<br><br>    v.<br><br>The Board of Trustees of the California State University System, through its subdivision San Diego State University, Andrea Parashos (in her Individual Capacity), Lee Mintz (in her Individual Capacity), and Does 1-20 (in Their Individual Capacities),<br><br>    Defendants. | Case No. 21CV2131 JAH KSC<br><br>**DECLARATION OF LEE MINTZ IN SUPPORT OF DEFENDANTS' SPECIAL MOTION TO STRIKE PLAINTIFF'S COMPLAINT [C.C.P. § 425.16] AND FOR ATTORNEYS' FEES**<br><br>Hearing Date: June 29, 2022<br>Time: 10:30 a.m.<br>District Judge: Hon. John A. Houston<br>Crtrm.: 13B<br><br>Mag. Judge: Hon. Karen S. Crawford<br>Crtrm: Suite 1010<br>Trial Date: Not Set<br><br>**EXEMPT FROM FEES<br>GOVT. CODE § 6103** |

Case No. 21CV2131 JAH KSC

I, Lee Mintz, declare as follows:

1. I am over 18 years of age, and I am a resident of the State of California. I am employed by defendant Board of Trustees of The California State University ("CSU" or the "University") as the Director of the Center for Student Rights and Responsibilities at San Diego State University ("SDSU"), a position I have held since March 2011. I have also been one of SDSU's Deputy Title IX Coordinators since 2012.

2. I have personal knowledge of the following facts and, if called as a witness to testify to them, I could and would testify competently and do so under oath.

3. As the Director of the Center for Student Rights and Responsibilities, I oversee all aspects of student discipline at SDSU, including receiving and reviewing reports of alleged student misconduct violations by students. I have worked in the field of student conduct for over 20 years and also have an extensive educational background regarding student behavior. I have a doctorate degree in educational leadership from the University of California, San Diego and a master's degree in college student personnel from Western Illinois University. I attend annual conferences specifically for CSU conduct officers and participate in other various trainings and conferences throughout the year.

4. The University's standards for student conduct is codified in Title 5, Section 41301 of the California Code of Regulations.

5. Reports of violations of the University's standards for student conduct are directed to the Center for Student Rights and Responsibilities. The University's response to alleged student conduct violations is governed by Executive Order 1098 ("EO 1098"). A true and correct copy of EO 1098 is attached to the Notice of Lodgment ("NOL") as Exhibit A. The University's Executive Orders, including EO 1098, are issued by CSU's Chancellor and apply to all CSU campuses.

///

6. During the 2019-2020 academic year, I was informed by the SDSU campus police of numerous reports of hazing practices involving the Phi Gamma Delta Fraternity during their investigation into the death of a student pledging the fraternity. The campus police referred the reports of hazing to the Center for Student Rights and Responsibilities (the "Center") for further investigation and an investigation was opened into the alleged student misconduct pursuant to EO 1098.

7. The Center's investigation reviewed reports of hazing at Phi Gamma Delta during the 2018-2019 and 2019-2020 academic years. We investigated the conduct of members of the fraternity from 2018 to 2020 who were currently enrolled at SDSU. This comprised of approximately 98 students. One of the fraternity members investigated was John Lema. To allow the Center to complete its investigation, graduation holds were issued, pursuant to EO 1098, to all students who were expected to graduate at the end of the 2019-2020 academic year, such as Mr. Lema.

8. I was tasked with notifying Mr. Lema of the Center's investigation and interviewing him. On July 8, 2020, I sent Mr. Lema a letter informing him that he and other members of his fraternity were reported to have participated in hazing activities which endangered the health and safety of CSU students and violated the standards for student conduct. My letter asked Mr. Lema to attend a mandatory investigative meeting on July 21, 2020, and informed him that if he should not attend the meeting, a decision could be rendered in his case without his input. A true and correct copy of the July 8, 2020 letter I sent to Mr. Lema is attached to the NOL as Exhibit B.

9. On July 13, 2020, the Center sent Mr. Lema a scheduling email reminding him to attend the investigative meeting with me on July 21, 2020. However, he did not attend the meeting or respond to the July 8, 2020 letter or the July 21, 2020 email.

///

10. On July 28, 2020, I sent Mr. Lema a second letter indicating he had failed to attend his scheduled investigatory meeting and stating that his meeting had been rescheduled for July 31, 2020. Again, my letter informed Mr. Lema that failing to attend the meeting could result in a decision being made without his input. A true and correct copy of the July 28, 2020 letter I sent to Mr. Lema is attached to the NOL as Exhibit C.

11. Mr. Lema did not attend the July 28, 2020 investigative meeting with me. As a result, he did not have an investigative interview.

12. The Center was able to interview many other members of Mr. Lema's fraternity. Many of those interviewed described historic hazing practices that had been used during the pledging process and which had been passed down to each pledge class, including Mr. Lema's pledge class. This had also been corroborated by information gathered and provided to the Center by the campus police.

13. By the end of September 2020, the Center had completed the interview process and began issuing charges. Fraternity members who had either been hazed or participated in hazing others were charged with violating the student conduct standards. (Cal. Code of Reg. 5 § 41301 (b)(8).) The standards for student conduct explicitly state that "[n]either the express or implied consent of a victim of hazing, nor the lack of active participation in a particular hazing incident is a defense. Apathy or acquiescence in the presence of hazing is not a neutral act, and is also a violation of this section." (*Id.*)

14. It was not until October 1, 2020, that Mr. Lema first reached out to me about the investigation by email. Mr. Lema wrote that he was not at the fraternity event investigated by campus police and did not know the student who passed away following the event. He asked about the status of his graduation hold and whether there was anything he could do to rectify the situation.

15. Andrea Parashos, one of the Center's Student Conduct Investigators assisting with the hazing investigation, responded to Mr. Lema's email on October

7, 2020 and offered to meet with him regarding his graduation hold and the Center's investigation. They subsequently met over video-conferencing, and Ms. Parashos explained that the fact-finding stage of the investigation had closed and charges against students would be issued soon. Mr. Lema indicated he would wait for the outcome of the investigation.

16. Mr. Lema was charged with violating CSU's standards for student conduct based on the information the Center had received during the investigation. On November 23, 2020, the Center gave Mr. Lema a letter detailing its investigative finding and the charges against him. The letter offered Mr. Lema the opportunity to settle the charges for a proposed disciplinary action and included a copy of a settlement agreement and notice of his rights. The letter specified that Mr. Lema's proposed discipline, should he choose to settle his charge, was suspension in abeyance. A suspension in abeyance was a minor discipline. A true and correct copy of the Center's November 23, 2020 letter to Mr. Lema is attached to the NOL as Exhibit D.

17. Mr. Lema requested an informal conference with the Center to discuss its finding and the proposed discipline offered in the settlement agreement. The Center agreed and Ms. Parashos held the informal conference with Mr. Lema and his mother on November 30, 2020. Following the conference, Mr. Lema requested a copy of his investigation file, which was provided to him on December 18, 2020.

18. After the Center's investigation ended, the University lifted Mr. Lema's graduation hold. Mr. Lema received his bachelor's degree on December 31, 2020. Mr. Lema never signed the settlement agreement and so the proposed discipline in the settlement agreement was never issued. Because Mr. Lema had graduated, the University elected to dismiss the charge against him. As a result, Mr. Lema did not have a hearing related to his charge and no final discipline decision was ever issued for him. Mr. Lema's academic record does not reflect any disciplinary charges or any other references to the hazing investigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 18th day of April, 2022, at San Diego, California.

_____
Lee Mintz