UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN LEMA,<br><br>                      Plaintiff,<br><br>v.<br><br>THE BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY SYSTEM, through its subdivision San Diego State University, ANDREA PARASHOS (in her individual capacity), LEE MINTZ (in her individual capacity), and DOES 1-20 (in their individual Capacities),<br><br>                      Defendants. | Case No.:  3:21-cv-02131-JAH-KSC<br><br>**ORDER GRANTING DEFENDANTS' SPECIAL MOTION TO STRIKE THE AMENDED COMPLAINT**<br><br>**ECF No. 18** |

## I. INTRODUCTION

Pending before the Court is Defendants Andrea Parashos and Lee Mintz's (collectively, "Defendants") Special Motion to Strike. ("Mot.," ECF No. 18). Plaintiff John Lema ("Lema" or "Plaintiff") filed a Response in Opposition to the Motion, ("Opp'n," ECF No. 22), and Defendants filed a Reply, ("Reply," ECF No. 23). The motion is decided on the submissions without oral argument pursuant to Civil Local Rule 7.1.d.1. Having considered the pleadings and the applicable law, and for the reasons set forth below, Defendants' Special Motion to Strike is **GRANTED**.

## II. BACKGROUND[1]

Plaintiff John Lema brings this action against Andrea Parashos ("Parashos"), San Diego State University's Title IX Investigator, and Lee Mintz ("Mintz"), Director for the Center of Student Rights and Responsibilities and Deputy Title IX Coordinator for San Diego State University, alleging Due Process violations under the Fifth[2] and Fourteenth[3] Amendments pursuant to 42 U.S.C. § 1983[4], and California state claims for negligence (as to Parashos and Mintz), negligent infliction of emotional distress (as to Parashos and Mintz), negligent misrepresentation (as to Parashos and Mintz), and fraudulent misrepresentation (as to Parashos only). ("FAC," ECF No. 15). In his amended complaint, Plaintiff asserts he suffered humiliation, mental anguish, and emotional distress when Defendants investigated him in connection with hazing allegations on San Diego State University's ("SDSU") campus, resulting in a delay to Lema's graduation date. (*Id.* at ¶¶ 25, 36, 47, 49).

While at SDSU, Plaintiff was a member of the Phi Gamma Delta Fraternity. (*Id.* at ¶ 17). However, Plaintiff contends his attendance and participation at fraternity sponsored

---

[1] Page numbers referenced herein refer to the page numbers generated by the CM/ECF system.

[2] The Fifth Amendment states that the federal government may not deprive a person of "life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V; *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005) ("The Fifth Amendment prohibits the federal government from depriving persons of due process, while the Fourteenth Amendment explicitly prohibits deprivations with due process by the several States[.]").

[3] The Fourteenth Amendment states in pertinent part, "nor shall any State deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. State action is required to trigger the protections afforded citizens by the Fourteenth Amendment. *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n.*, 531 U.S. 288, 295 (2001).

[4] Section 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

activities was infrequent. (*Id.*) Lema planned to graduate from SDSU in August 2020. (*Id.* at ¶ 18). In July 2020, Plaintiff was notified by Defendants that the University had opened a student misconduct investigation against him to investigate reports of hazing by members of the Phi Gamma Delta fraternity. (*Id.* at ¶¶ 20-21). Allegations against Lema included:

> provid[ing] alcohol to minors, physically assault[ing] members of the campus community, interfere[ing] with the orderly progress of a student disciplinary proceeding, attempt[ing] to influence impartiality of any participant in a student discipline matter, and encourag[ing], permit[ting], or assist[ing] another to do any act that could subject them to discipline.

(*Id.* at ¶ 21 (formatting altered)). Defendants also alleged Plaintiff violated subsections of Title V, section 41301 of the California Code of Regulations.[5] (*Id.* at ¶ 22).

---

[5]   According to the Complaint, the relevant regulations Defendants assert Plaintiff violated are:
> b.7.A – Conduct that threatens or endangers the health or safety of any person within or related to the University community, including physical abuse, threats, intimidation, or harassment;
>
> b.8 – Hazing, or conspiracy to haze;
>
> b.10 – Use, possession, manufacture, or distribution of alcoholic beverages . . . or public intoxication while on campus or at a university-related activity;
>
> b.16 – Violation of any published University policy, rule, regulation, or presidential order;
>
> b.19.B – Violations of the Student Conduct Procedures, including Disruption or interference with the orderly progress of a student discipline proceeding;
>
> b.20 – Encouraging, permitting, or assisting another to do any act that could subject him or her to discipline.

On July 10, 2020, Defendants notified Plaintiff that he would not graduate in August 2020 as planned. (*Id.* at ¶ 25). Around this time, Lema retained counsel to assist him with the pending disciplinary proceedings. (*Id.* at ¶ 26). On August 20, 2020, Parashos called Plaintiff to further discuss the disciplinary investigation that was being conducted. (*Id.* at ¶ 27). During this phone call, Parashos informed Lema that the investigation was predicated on his association with the Phi Gamma Delta Fraternity. (*Id.*)

On November 23, 2020, Plaintiff received an email asking him to sign a settlement agreement ("Agreement") acknowledging responsibility for the alleged disciplinary charges. (*Id.* at ¶ 28). The Agreement solicited admissions from Lema for:

> (A) compel[ing] physically demanding activities; . . . (B) compel[ing] forced alcohol consumption; (C) compel[ing] individuals to drink foreign or unusual substances; (D) compel[ing] acts of servitude; (E) blindfolding; (F) paddling; (G) bullying; (H) intimidation; (I) physical and emotional degradation and humiliation of other students; (J) compel[ing] pledges to contribute money to pay for alcohol that would be consumed during events.

(*Id.* at ¶ 29 (formatting altered)). Additionally, the Agreement concluded Plaintiff violated the aforementioned subsections from the California Code of Regulations, *supra* fn. 5. (*Id.* at ¶ 30).[6] The Agreement sought to compel Lema into accepting punishment, in the form of counseling and suspension, for his purported involvement in the fraternity hazing. (*Id.* at ¶ 32).

On December 19, 2020, Defendant Parashos sent Lema a prepared report containing specific accounts of Phi Gamma Delta hazing. (*Id.* at ¶ 35). Plaintiff's name is not explicitly mentioned in this report. (*Id.*) After pressure from Lema's retained counsel, the

---

[6] The Complaint does not state Lema signed the Agreement.

disciplinary proceedings against Plaintiff were abandoned.[7] (*Id.* at ¶ 36). Lema graduated from SDSU in May of 2021. (*Id.*)

### III.   DISCUSSION

**A.   Legal Standard**

Defendants filed a special motion to strike Plaintiff's state law claims, pursuant to California Code of Civil Procedure section 425.16, California's anti-SLAPP ("Strategic Lawsuit Against Public Participation") statute. *New Net, Inc. v. Lavasoft,* 356 F.Supp.2d 1090, 1099 (C.D. Cal. 2004) ("Defendant properly directs its anti-SLAPP motion only to the pendant state law claims set out in the Complaint.").

SLAPP lawsuits are "civil lawsuits . . . aimed at preventing citizens from exercising their political rights or punishing those who have done so." *Church of Scientology v. Wollersheim,* 42 Cal.App.4th 628, 645 (1996). The anti-SLAPP statute's purpose is "to allow early dismissal of meritless first amendment cases aimed at chilling expression through costly, time-consuming litigation." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1109 (9th Cir. 2003) (quoting *Metabolife Intern., Inc. v. Wornick*, 264 F.3d 832, 839 (9th Cir. 2001)). In furtherance of that purpose, California law provides that a prevailing defendant shall be entitled to recover attorney's fees and costs. Cal. Civ. P. Code § 425.16(c)(1). When, as here, "an anti-SLAPP motion to strike challenges only the legal sufficiency of a claim, a district court should apply the Federal Rules of Civil Procedure 12(b)(6) standard and consider whether a claim is properly stated." *Planned Parenthood Fed'n of Am. Inc. v. Ctr. For Med. Progress*, 890 F.3d 828, 834 (9th Cir. 2018). A party may still be considered a prevailing party for purposes of the anti-SLAPP motion, even if unsuccessful in striking every claim. *Mann v. Quality Old Time Serv., Inc.*, 139 Cal.App.4th 328, 333-34 (2006).

---

[7]   The Complaint does not indicate the date Defendants dropped the disciplinary charges nor how the finalization of the investigation was communicated to Plaintiff.

The analysis of an anti-SLAPP motion is a two-step burden-shifting process. *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002). First, the defendant has the initial burden of making a showing that the plaintiff's claims arise from protected activity under the anti-SLAPP statute. *Id.* "[I]f the defendant meets its initial burden, the plaintiff is then charged with the burden of establishing, by competent and admissible evidence, a probability of prevailing on his or her claims at trial." *Robinson v. Alameda Cnty.*, 875 F.Supp.2d 1029, 1048 (N.D. Cal. 2012) (citation omitted).

**B.     Analysis**

***1.     Step One: Arising from Protected Activity***

To satisfy step one, the Court determines "(1) whether the Complaint alleges activity protected by section 425.16 and (2) whether the cause or causes of action alleged arise from those activities." *Gunn v. Drage*, 65 F.4th 1109, 1120-21 (9th Cir. 2023) (citations omitted).

a.     <u>The Complaint Alleges Activity Protected by Section 425.16</u>

Defendants argue that their actions fall within subsections (e)(1), (2), and (4) in section 425.16, which apply to: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law," "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law,"[8] and "(4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (Mot. at 12).

---

[8]     Subparagraphs (1) and (2), "both defining acts in furtherance of the rights of petition and of free speech[,] differ in that subparagraph (1) is limited to oral and written statements and writings actually made in the course of certain specified proceedings, while subparagraph (2) includes statements made 'in connection with' those proceedings." *Kibler v. N. Inyo Cnty. Local Hosp. Dist.*, 39 Cal.4th 192, 198 (2006).

    Defendants assert that the university's discipline proceedings are quasi-judicial proceedings that are covered by the "other official proceedings" clause in the subsections (e)(1) and (2), arguing that "all aspects of the [CSU Executive Order] 1098 proceeding of which [Plaintiff] complains are protected," including the decision to investigate Plaintiff as part of the official hazing investigations, the communications with Plaintiff about the investigation process, and the findings and proposed compromised discipline as part of a settlement agreement. (*Id.* at 20). Defendants further assert "Dr. Mintz's July 8, 2020 email providing [Plaintiff] with notice of the hazing allegations and Ms. Parashos' November 23, 2020 letter informing [Plaintiff] of the investigation findings and charges are both protected communications made in connection with an official proceeding authorized by law." (*Id.*)

    Plaintiff's sole argument is that he is unaware of any authority that shows this type of investigation, and its accompanying communications, is a matter of public concern, and accordingly, Defendants have failed to make a prima facie showing that the conduct arises under protected First Amendment activity. (Opp'n at 10).

    An "official proceeding authorized by law" under subsections (e)(1) and (2) includes proceedings required by law, even if conducted by private parties. *Kibler*, 39 Cal.4th at 199 (holding that "a hospital's peer review procedure qualifies as 'an official proceeding authorized by law' under section 425.16, subdivision (e)(2) because that procedure is required under Business and Professions Code section 805[.]"). "These first two clauses of subdivision (e) of section 425.16 safeguard free speech and petition conduct aimed at advancing self-government, as well as conduct aimed at more mundane pursuits." *Laker v. Bd. of Trs. of Cal. State Univ.*, 32 Cal.App.5th 745, 764 (2019) (citation omitted). Furthermore, courts have routinely found that internal university investigations made pursuant to university policy are considered "official proceedings authorized by law." *See Laker*, 32 Cal.App.5th at 764 (a university investigation into claims of harassment based on sex and race qualified as an official proceeding within the meaning of the anti-SLAPP statute because the investigation was statutorily authorized by section 89030 of the

California Education Code); *Ross v. Seyfarth Shaw LLP*, 96 Cal.App.5th 722 (2023) (statements made during an internal CSU investigation is an "official proceeding authorized by law" under California Civil Procedure Code sections (e)(1) and (2)).

Here, section 41301 sets the standards for student conduct, and enumerates various grounds for student discipline, including hazing. Cal. Code Reg., tit. 5, § 41301(b)(8). The enforcement mechanism under this statute, and thereby Defendants' authority to implement disciplinary measures, is expressly promulgated to the Chancellor pursuant to section 41301(c) of the California Code of Regulations vis-à-vis Executive Order 1098. Defendants Mintz and Parashos' allegedly infringing communications and investigation occurred while acting pursuant to the authority provided by Executive Order 1098. *See* EO 1098 III.A.-B. For these reasons, the Court finds that the investigation and communications at issue occurred during the course of an official proceeding authorized by law. Because Defendants have properly invoked subsections (e)(1) and (2), they "need not separately demonstrate that the statement concerned an issue of public significance." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal.4th 1106,1123 (1999) (italics in original).

      b.    <u>The Causes of Action Alleged Arise From Those Activities</u>

Defendants must make a prima facie case to "identify what acts each challenged claim rests on[.]" *Gunn*, 65 F.4th at 1121. Here, Defendants Mintz and Parashos' investigation and communications during the investigation underpin Plaintiff's claims for negligence, negligent infliction of emotional distress, negligent misrepresentation, and fraudulent misrepresentation. *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal.5th, 1057, 1062 (2017) ("A claim arises from protected activity when that activity underlies or forms the basis for the claim."); *cf. Heineke v. Santa Clara Univ.*, No. 17-CV-05285-LHK, 2017 WL 6026248, *7 (N.D. Cal. Dec. 5, 2017) (denying anti-SLAPP where defendants' alleged actions, not protected speech, form the basis of plaintiff's claim). The critical primary conduct here that forms the basis of Plaintiff's complaints includes the investigation; the July 8, 2020 email from Mintz to Lema; the phone call on or about August 30, 2020

1  between Parashos and Lema; the November 23, 2020 email containing the Agreement; the
2  December 19, 2020 report from Parashos to Lema, and the investigation itself. (FAC ¶¶
3  20-35). As such, the investigation and communications "at issue [here] is explicitly alleged
4  to be the injury-producing conduct." *Okorie v. Los Angeles Unified Sch. Dist.*, 14
5  Cal.App.5th 574, 491 (2017).
6      Accordingly, the Court finds the challenged claims arise from the official protected
7  activity described above, and the burden now shifts to Plaintiff to demonstrate a probability
8  of success on the merits of his claims.
9  **2. Step Two: Probability of Prevailing on the Merits**
10      a. <u>Evidentiary Objections</u>
11      Defendants object to Exhibits A and B attached to Plaintiff's opposition to
12  Defendant's special motion to strike. ("Evid. Obj.", ECF No. 23-1 at 2). The Court must
13  first rule on evidentiary objections before considering whether the admissible evidence
14  demonstrates a probability of Plaintiff prevailing on the merits of his claims. *Martin v.*
15  *Inland Empire Utilities Agency*, 198 Cal.App.4th 611, 630 (2011) (quoting *Hall v. Time*
16  *Warner, Inc.*, 153 Cal.App.4th 1337, 1347-48 (2007)). In fact, "the plaintiff cannot rely
17  on the allegations of the complaint, but must produce evidence that would be admissible at
18  trial." *Nguyen-Lam v. Cao*, 171 Cal.App.4th 858, 866-67 (2009) (quoting *Integrated*
19  *Healthcare Holdings, Inc. v. Fitzgibbons*, 140 Cal.App.4th 515, 527 (2006)); *Cross v.*
20  *Cooper*, 197 Cal.App.4th 357, 370 (2011) (quoting *Hall v. Time Warner, Inc.*, 153
21  Cal.App.4th 1337, 1346 (2007)).
22      In this case, Plaintiff submits two exhibits: Exhibit A is entitled Case Notes,
23  purportedly drafted by Defendants Mintz and Parashos and appears to contain information
24  gathered from individual pledges or members from Phi Gamma Delta Fraternity. Exhibit
25  B appears to be the Settlement Agreement addressed to Plaintiff and signed by Defendant
26  Parashos. Plaintiff cites Exhibit A to illustrate Plaintiff's culpability by arguing that
27  Plaintiff's name, which for an unexplained reason appears as "Travis" in the Exhibit, only
28  appears in the investigate report once. (Opp'n at 7). Exhibit B is used to detail the specific

violative conduct Plaintiff was alleged to have participated in. (*Id.* at 14-15). Defendants object to both exhibits on the basis that they were not properly authenticated, are inadmissible hearsay, and because they lack foundation. (Evid. Obj. at ¶¶ 1-2). Although the Court does not rely on the Exhibits attached to Plaintiff's opposition, the Court notes that the evidentiary objections are unpersuasive. *See e.g., Stewart v. Kodiak Cakes, LLC*, 537 F.Supp.3d 1103, 1119 (S.D. Cal. 2021) ("Plaintiffs raise the specter of an authenticity dispute ... [but] Plaintiffs do not detail how [the disputed documents] are inauthentic, inaccurate, or disputed; instead, they merely question the manner in which they are presented before the Court. Therefore, Plaintiffs do not genuinely question the authenticity of the exhibits."). However, because the Court does not rely on Plaintiff's exhibits, the evidentiary objections are denied as moot.

b. <u>Legal Standard</u>

In the second step of the anti-SLAPP analysis, the burden shifts to the plaintiff to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated. *Baral v. Schnitt*, 1 Cal.5th 376, 396 (2016). The plaintiff must demonstrate this probability of success with admissible evidence. *Sheley v. Harrop*, 9 Cal.App.5th 1147, 1162 (2017). Moreover, in supporting those claims, "[t]he plaintiff may not rely solely on its complaint, even if verified[.]" *Paiva v. Nichols*, 168 Cal.App.4th 1007, 1017 (2008) (quoting *ComputerXpress, Inc. v. Jackson*, 93 Cal.App.4th 993, 1010 (2001)).

Here, Plaintiff alleges claims against Defendants for negligence (as to Parashos and Mintz), negligent infliction of emotional distress (as to Parashos and Mintz), negligent misrepresentation (as to Parashos and Mintz), and fraudulent misrepresentation (as to Parashos only). Plaintiff argues Defendants actions are not immunized for their discretionary acts or from the misrepresentation claims because their actions were "willful and wonton" and done with deliberate malice. (Opp'n at 12-13). Plaintiff further claims he is likely to succeed on his claims because Defendants "intentionally and willfully went outside of the judicial investigation, misrepresented the judicial process and investigation

to Plaintiff and sought discipline against the Plaintiff with the intention of causing injury to Plaintiff." (Opp'n at 22). Each argument will be discussed in turn.

    c.    <u>Analysis</u>

        i.    *Discretionary Immunity Pursuant to California Government Code § 820.2*

Without citing to authority, Plaintiff argues Defendants actions were not discretionary, but were willful and wanton, and Defendants were aware there was no evidence of Plaintiff's involvement in any hazing activity. (Opp'n at 13). Plaintiff avers that "[w]hether the Defendants actions were discretionary is a question for the Court." (*Id.*) Defendants assert that they are immune from all claims for their discretionary acts because they were vested with authority under EO 1098 to "discipline students and investigate complaints." (Mot. at 23). Furthermore, Defendants argue Mintz notifying Plaintiff of the hazing allegations, and Parashos notifying Plaintiff of the proposed charges and offering a settlement "directly arise" from the discretion vested in them under EO 1098. (*Id.*)

Section 820.2 creates immunity for public employees acting within discretion vested in them through their office:

> "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

Cal. Gov't Code § 820.2. Public employees are entitled to immunity for discretionary acts that constitute "basic policy decisions," but they are not entitled to immunity if those acts are purely "ministerial." *Caldwell v. Montoya*, 10 Cal.4th 972, 981 (1995). Immunity for discretionary acts extends to basic governmental policy decisions entrusted to broad official judgment, (*id.* at 976), and a distinction is drawn between " 'planning' and 'operational' functions of government." *Id.* at 981 (citing *Johnson v. State of California*, 69 Cal. 2d 782, 793 (1968)). On the one hand, immunity applies where "the responsibility

for basic policy decisions has been committed to coordinate branches of government", *Johnson*, 69 Cal.2d at 783, and on the other hand, immunity is inapplicable to "lower-level, or ministerial, decisions that merely implement a basic policy already formulated." *Caldwell*, 10 Cal.4th at 981 (citations and quotation marks omitted). There is also no basis for immunizing decisions that are not actually "deliberate and considered." *Caldwell*, 10 Cal.4th at 981. But "to be entitled to immunity the state must make a showing that such a policy decision, consciously balancing risks and advantages, took place." *Johnson*, 69 Cal.2d at 794 n.8.

There is a breadth of case law that supports the general proposition that "[d]ecisions by a school's supervisory personnel regarding disciplinary matters are . . . considered discretionary and within the scope of section 820.2." *Walsh v. Tehachapi Unified Sch. Dist.*, 827 F.Supp.2d 1107, 1122 (E.D. Cal. 2011) (quotation marks omitted); *Clifford v. Regents of Univ. of Calif.*, No. 2:11–CV–02935–JAM–GGH, 2012 WL 1565702 (E.D. Cal. Apr. 20, 2012); *Thompson v. Sacramento City Unified Sch. Dist.*, 107 Cal.App.4th 1352, 1361 (2003); *Nicole M. v. Martinez Unified Sch. Dist.*, 964 F. Supp. 1369, 1389-90 (N.D. Cal. 1997). Plaintiff's conclusory allegations do not sufficiently demonstrate the inapplicability of section 820.2. On the other hand, Defendants cite to portions of EO 1098 in asserting their authority and discretion to investigate Lema, charge him with violations of the code of conduct, and offer him a settlement for his charge. (Mot. at 23). As such, Defendants are immune from the state law claims for their discretionary acts pursuant to California Government Code section 820.2. *See McCorkle v. City of Los Angeles*, 70 Cal.2d 252, 261 (1969) (the applicability of discretionary immunity requires "judicial determination of the category into which the particular act falls: i.e., whether it was ministerial because it amounted only to an obedience to orders, or the performance of a duty in which the officer is left no choice of his own, or discretionary because it required 'personal deliberation, decision and judgment.' ") (quotations omitted).

///

///

      *ii.*  *Immunity from Misrepresentation Claims Pursuant to California Government Code § 822.2*

Plaintiff contends Defendants' investigation "was maliciously conducted to harm all students that chose to be part of the fraternity," and Plaintiff was offered a settlement despite the University having no evidence linking him to the hazing incident. (Opp'n at 13-14). First, Defendants argue that they are entitled to immunity pursuant to California Government Code section 822.2 because Plaintiff's misrepresentation claims involve "interference with financial or commercial interest." (Mot. at 24). Second, Defendants argue that Plaintiff cannot demonstrate any "actual fraud, corruption, or actual malice" against them to defeat immunity. (*Id.*)

Section 822.2 provides,

> A public employee acting in the scope of his employment is not liable for an injury caused by his misrepresentation, whether or not such misrepresentation be negligent or intentional, unless he is guilty of actual fraud, corruption or actual malice.

Cal. Gov't Code § 822.2. Immunity under section 822.2 is limited to causes of action that "are forms of the common law tort of deceit . . . and involve interferences with financial or commercial interests." *Doe 1 v. Manhattan Beach Unified Sch. Dist.*, 2020 WL 2556356 (C.D. Cal. May 19, 2020) (citing *Finch Aerospace Corp. v. City of San Diego*, 8 Cal.App.5th 1248, 1252 (2017) (citations omitted)). "California law generally recognizes four forms of deceit: intentional misrepresentation, negligent misrepresentation, concealment, and failure to perform a promise." *Id*. For Plaintiff's negligent misrepresentation claim to survive, he must allege actual malice—that is, "a conscious intent to deceive, vex, annoy or harm the injured party in his business." *Curcini v. Cnty. of Alameda*, 164 Cal.App.4th 629, 649 (2008) (explaining that a claimant must plead specific facts showing that the misrepresentation was motivated by actual malice).

Plaintiff's general allegations that the investigation was conducted to harm all members of the fraternity, and Defendants continued to harm Plaintiff despite awareness

that he did not participate in any hazing activities is insufficient to support malice and overcome immunity under section 822.2 at this juncture. *See California Pub. Emps.' Ret. Sys. v. Moody's Invs. Serv., Inc.*, 226 Cal.App.4th 643, 677 (2014).

                iii.       *Merits of the Claims*

Notwithstanding the applicability of statutory immunity under California Government Code sections 820.2 and 822.2 to all of the state law claims, Plaintiff also fails to meet his burden of showing a likelihood of success on the merits.

**A.    Negligence**

In order to sustain a claim for negligence, Plaintiff must plead duty, breach of duty, proximate cause, and damages. *Artiglio v. Corning, Inc.*, 18 Cal.4th 604, 614 (1998). Plaintiff's negligence claim is based on Defendants' investigation, which allegedly "lacked evidence." (FAC at ¶ 52). Plaintiff alleges Mintz was specifically culpable as Title IX Coordinator for the July 8, 2020, email, and for "allow[ing] Parashos to send Lema the settlement agreement[.]" (*Id*. at ¶ 53) (capitalization normalized). According to the Complaint, Parashos is similarly culpable for negligence for the settlement agreement, which not only failed to provide evidence of hazing conduct, but which Parashos knew there was no evidence of. (*Id.* at ¶ 54).

Plaintiff's Complaint only provides conclusory averments of the requisite elements, and his opposition to the instant motion fares no better. Without a single citation to support his theory, Plaintiff asserts "Defendants had a duty to not levy disciplinary charges against Plaintiff that Defendants knew or should have known lacked evidence." (Opp'n at 14). Plaintiff heavily relies on Defendants pursuit of the investigation despite the alleged lack of evidence as the basis for his negligence claim. (*Id.* at 14-15). Plaintiff fails to cite to any authority or even attempt to establish Defendants' have a duty to Plaintiff in the course of their investigation. *Cf. Regents of University of California v. Superior Court*, 4 Cal.5th 607, 626 (2018) (university has special relationship with students imposing duty to protect them from foreseeable violence during curricular activities). Notwithstanding the deficiencies stated above, Lema's opposition also fails to demonstrate any damages

stemming from Defendants' investigation or the statements beyond "extreme emotional distress." (Opp'n at 15).[9] Accordingly, Defendants' motion to strike the negligence claim is **GRANTED**.

B.  **Negligent Infliction of Emotional Distress**

"The negligent causing of emotional distress is not an independent tort but the tort of negligence, involving the usual duty and causation issues." *Hecimovich v. Encinal Sch. Parent Teacher Org.*, 203 Cal.App.4th 450, 477 (2012); *see also Lawson v. Management Activities, Inc.*, 69 Cal.App.4th 652, 656 (1999) ("[A]s our Supreme Court *has* made abundantly clear, there is no such thing as the independent tort of negligent infliction of emotional distress." (emphasis in original)). To maintain a cause of action for negligent infliction of emotional distress "where there is no accompanying personal, physical injury, the plaintiff must show that the emotional distress was 'serious[,]' . . . [Such that a reasonable person,] normally constituted, would be unable to adequately cope with the mental stress[.]" *Wong v. Jin*, 189 Cal.App.4th 1354, 1377-78 (2010) (citing *Molien v. Kaiser Foundation Hospitals*, 27 Cal.3d 916 (1980)).

As stated above, Plaintiff only provides the conclusory statement that he "suffered emotional distress[,]" as a result of Defendants' negligence. (Opp'n at 15).[10] Plaintiff's

---

[9]  Lema's Complaint asserts he "suffered from emotional injury and humiliation" and was forced to "expend a significant amount of money in attorney's fees" as a result of Defendants' actions. (FAC at ¶ 49). These allegations are insufficient to support a finding damages. *Zumbrun v. Univ. of S. Cal.*, 25 Cal.App.3d 1, 11-12 (1975) (holding, in a negligence cause of action, the pleading must inform the defendant of the causal connection between defendant's alleged conduct and damages, and damages must allege facts to support them or else they are conclusory and unsatisfactory) (citing *D'Andrea v. Pringle*, 243 Cal.App.2d 689, 696 (1966)); *Moore v. Centrelake Medical Grp., Inc.*, 83 Cal.App.5th 515, 523 (2022) (generally, the economic loss rule "bars recovery in negligence for purely economic losses, meaning financial harm unaccompanied by personal injury or property damage.").

[10]  Lema's Complaint alleges that it was foreseeable that Defendants hazing accusations would "cause him serious emotional distress" and would "cause an imminent threat to [his] future career plans as well as his personal reputation." (FAC at ¶¶ 59-60). Lema's assertion

allegations in support of this claim are perfunctory, and do not meet his burden in demonstrating any range of emotions that would indicate serious distress, such as "fright, nervousness, grief, anxiety, worry, mortification, shock, humiliation and indignity." *Thing. v. La Chusa*, 48 Cal.3d 644, 648-49 (1989); *see also San Joaquin Deputy Sheriffs' Ass'n. v. Cnty. of San Joaquin*, 898 F.Supp.2d 1177, 1192-93 (E.D. Cal. 2012) (dismissing conclusory allegations of severe emotional distress); *Brotherhood Mut. Ins. Co. v. Vinvok*, Case No.: EDCV 19-01821-CJC(SPx), 2020 WL 2735623, *5 (C.D. Cal. 2020) (same). Accordingly, Defendants' motion to strike the negligent infliction of emotion distress claim is **GRANTED**.

C.  **Negligent Misrepresentation**

Negligent misrepresentation requires a showing that (1) the defendant made a misrepresentation as to a past or existing material fact; (2) the defendant made the representation without reasonable ground for believing it to be true; (3) with the intention of deceiving the plaintiff; (4) the plaintiff justifiably relied on the representation; and (5) the plaintiff suffered damages. *West v. JPMorgan Chase Bank, N.A.*, 214 Cal.App.4th 792 (2013). A defendant who makes a statement without reasonable grounds, and honestly believes the misrepresentations are true can still be liable for negligent misrepresentation. *Apollo Cap. Fund, LLC v. Roth Cap. Partners, LLC*, 158 Cal.App.4th 226, 243 (2007).

As with the preceding claims, Plaintiff asserts that the email from Defendants Mintz' "clearly indicated to Plaintiff that there existed evidence that he had participated in hazing and that he was being accused of hazing based on this evidence." (Opp'n at 15). Plaintiff states, without further explanation, that he "detrimentally relied on the assertions of the Defendants resulting in injury[.]" Even accepting Plaintiff's conclusory statements that

---

that any emotional injury is foreseeable is not dispositive, or even supportive, of this claim. *See Krupnick v. Hartford Accident & Indemnity Co.*, 28 Cal.App.4th 185, 201 (1994) (finding that when a claim is based on purely emotional distress, "foreseeability is essentially useless. Emotional distress is always foreseeable.").

Defendants made misrepresentations of material facts with the intention of deceiving Plaintiff and without reasonable grounds to believe it to be true, the Court strains to find how Plaintiff detrimentally relied on any of Defendants statements. In fact, the facts suggest the opposite. After Lema received the email from Defendant Mintz detailing the hazing allegations lodged against him, Plaintiff retained counsel. (FAC at ¶ 26). Plaintiff does not allege any further engagement with either Defendants Mintz or Parashos. Even after receiving the Settlement Agreement, Plaintiff does not allege he signed the Agreement, and was able to graduate in May of 2021. (*Id.* at 36). The disciplinary charges were dropped and Lema's academic record does not contain any disciplinary charges. (Declaration of Lee Mintz, "Mintz Decl.", ECF No. 18-2 at ¶ 20). It is difficult to extrapolate any reliance by Plaintiff upon Defendants' alleged misrepresentations.

Plaintiff's allegations to support reliance and damages under this claim are similarly conclusory, merely stating Plaintiff's reliance on Defendants' assertions resulted in injury. (Opp'n at 16). As stated, Plaintiff does not appear to suffer damages based on the investigation or the communications derived thereof, as disciplinary charges were dropped and he was able to graduate. Accordingly, Defendants' motion to strike the negligent misrepresentation claim is **GRANTED**.

**D.    Fraudulent Misrepresentation**

Under California law the elements of fraudulent misrepresentation are: "(1) the defendant misrepresents material facts; (2) with knowledge of the falsity of the representations or the duty of disclosure; (3) with intent to defraud or induce reliance; (4) which induces justifiable reliance by the plaintiff; (5) to his or her detriment." *Terra Ins. Co. v. N.Y. Life Inv. Mgmt. LLC*, 717 F.Supp.2d 883, 890 (N.D. Cal. 2010) (citing *Hahn v. Mirda*, 147 Cal.App.4th 740, 748 (2007)).

In support of this claim, Plaintiff relies on the contents of the email from Defendant Mintz, which "clearly indicated to Plaintiff that there existed evidence that he had participated in hazing and that he was being accused of hazing based on this evidence." (Opp'n at 16). Plaintiff also relies on the Settlement agreement as evidence of Defendants'

fraudulent misrepresentation because "Defendants knew or should have known that the settlement agreement was a misrepresentation of the facts and determination of the investigation." (*Id.*) Plaintiff asserts he detrimentally relied on these misrepresentations, resulting in injury.

Plaintiff only provides conclusory allegations to support his proposition that Defendants' conduct induced justifiable reliance to his detriment. As previously discussed, any disciplinary charges against Plaintiff were dropped with no negative remarks on his transcript, and he subsequently graduated. Accordingly, Defendants' motion to strike the fraudulent misrepresentation claim is **GRANTED**.

### 3. *Attorney's Fees and Costs*

Defendants request the Court award their fees and costs incurred in bringing this motion. Subdivision (c)(1) of section 425.16 provides in relevant part, "in any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorneys' fees and costs." Cal. Civ. P. Code § 425.16(c)(1).

As discussed, Defendants have demonstrated that Plaintiff's state law claims are based on protected activity, thereby falling within the anti-SLAPP statute, and Plaintiff has failed to demonstrate a probability of prevailing on those claims. Accordingly, Defendants are entitled to attorneys' fees and costs. *Barry v. State of California*, 2 Cal.5th 318, 327 (2017) ("A defendant that successfully moves to strike a plaintiff's cause of action, whether on merits or nonmerits grounds, has 'prevailed' on the motion, and therefore is entitled to attorney's fees and costs."). The Parties are **ordered** to confer as to the amount of attorneys' fees to be awarded and submit a stipulation within thirty (30) days from the date of this Order. Should the Parties be unable to reach an agreement, they shall file a joint status report to that effect within thirty (30 days) from the date of this Order and file a noticed motion.

///
///
///

## IV. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Special Motion to Strike Pursuant to California Code of Civil Procedure section 425.16 is **GRANTED**.

**IT IS SO ORDERED.**

DATED: March 28, 2024

_____
JOHN A. HOUSTON
UNITED STATES DISTRICT JUDGE